**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLANCA ZELAYA ) | |
| 655 Girard St. N.E. ) | |
| Washington, D.C. 20017 ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| UNICCO SERVICE COMPANY ) | |
| 275 Grove Street ) | |
| Suite 3-200 ) | |
| Auburndale, MA 02466 ) | |
| ) | |
| Serve: C T Corporation System ) | |
| 1015 15th Street, NW ) | |
| Suite 1000 ) | |
| Washington, DC  20005 ) | |
| ) | |
| CARLOS ALARCON ) | |
| C/o Vanessa A. Eustace, Esq. ) | |
| Associate Counsel ) | |
| UNICCO Service Company ) | Civil Action No._____ |
| 275 Grove Street ) | |
| Suite 3-200 ) | |
| Auburndale, MA 02466-2239 ) | |
| ) | |
| OSCAR ARGUETA ) | |
| C/o Vanessa A. Eustace, Esq. ) | |
| Associate Counsel ) | |
| UNICCO Service Company ) | |
| 275 Grove Street ) | |
| Suite 3-200 ) | |
| Auburndale, MA 02466-2239 ) | |
| ) | |
| CARLOS FERNANDEZ ) | |
| C/o Vanessa A. Eustace, Esq. ) | |
| Associate Counsel ) | |
| UNICCO Service Company ) | |
| 275 Grove Street ) | |
| Suite 3-200 ) | |
| Auburndale, MA 02466-2239 ) | |
| ) | |

Defendants.                    )
                               )
_____)

## COMPLAINT FOR DECLARATORY AND
## MONETARY RELIEF AND JURY DEMAND

### PRELIMINARY STATEMENT

1.     This is an action by Plaintiff Blanca Zelaya against Defendants UNICCO Service

Company ("UNICCO"), Carlos Alarcon, Oscar Argueta, and Carlos Fernandez for sexual

harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et. seq. ("Title VII"), and the District of Columbia Human Rights Act,

D.C. Code § 2-1402.11 et seq. ("D.C. Human Rights Act"). This is also an action against

defendant UNICCO for its intentional interference with plaintiff's contractual relations arising

from defendant UNICCO's wrongful interference with plaintiff's potential employment

relationship with another company, which refused to offer plaintiff employment after UNICCO

interfered by providing a negative reference based on plaintiff's complaints about sexual

harassment, sex discrimination and retaliation.

### JURISDICTION AND VENUE

2.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and this

court has supplemental jurisdiction over plaintiff's District of Columbia law claims under 28

U.S.C. § 1367.

3.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391.

### PARTIES

4.     Plaintiff Blanca Zelaya is a resident of the District of Columbia who resides at

655 Girard St. N.E., Washington, D.C. 20017. She worked for defendant UNICCO from

December 20, 2004 until April 23, 2007, and under the supervision of defendant Alarcon from

2

January 4, 2005 until November 2006.

5.      Defendant UNICCO is a corporation with its corporate headquarters at 275 Grove Street, Suite 3-200, Auburndale, MA 02466. UNICCO's registered agent is Associate Counsel Vanessa A. Eustice, Esq. UNICCO provides cleaning services to buildings throughout the country, including in Washington, D.C.

6.      Upon information and belief, defendant Carlos Alarcon is a resident of the District of Columbia. Defendant Alarcon was the manager of the UNICCO contract and employed by UNICCO at 1200 K Street, and supervised Ms. Zelaya, from December 2004 until November 2006.

7.      Upon information and belief, defendant Oscar Argueta is a resident of the District of Columbia. Defendant Argueta was the on-site manager employed by UNICCO at 1200 K Street until in or about the spring of 2005, and then the on-site manager employed by UNICCO, at 2550 M Street starting on or about April 23, 2007.

8.      Upon information and belief, defendant Carlos Fernandez is a resident of the District of Columbia. Defendant Fernandez was the on-site manager employed by UNICCO at 1200 K Street starting in or about the spring of 2006.

## FACTUAL ALLEGATIONS

9.      Ms. Zelaya began working as a custodian at the 1200 K Street N.W. building ("1200 K Street"), in Washington, D.C. in 2001. She cleaned offices and bathrooms in the building.

10.     On December 20, 2004, defendant UNICCO took over the cleaning contract at 1200 K Street and retained Ms. Zelaya as an employee.

11.     Before Ms. Zelaya retained legal counsel in May 2006, defendant UNICCO never

3

provided Ms. Zelaya with an employee handbook or informed her of the existence of its human resources department.

12.    Before Ms. Zelaya retained legal counsel in May 2006, defendant UNICCO never posted required information about her rights under Title VII or the D.C. Human Rights Act in the workplace, otherwise informed Ms. Zelaya of her right to be free from discrimination and harassment based on sex, or of how she could file a complaint to inform UNICCO of such discrimination or harassment.

13.    On or about January 4, 2005, defendant UNICCO made defendant Carlos Alarcon the Building Operations Manager at 1200 K Street. As Building Operations Manager, defendant Alarcon supervised Ms. Zelaya and Ramon Alberto Gaitan, the two employees responsible for cleaning the building.

14.    When defendant Alarcon became her supervisor on January 4, 2005, Ms. Zelaya was about four months pregnant.

15.    Almost immediately upon becoming Ms. Zelaya's supervisor on January 4, 2005, defendant Alarcon began making offensive and unwelcome sexually explicit comments and sexual advances toward her, including running his hands down her back or against her shoulders and repeatedly telling her she looked pretty.

16.    On at least two occasions in February 2005 and March 2005, defendant Alarcon directed Ms. Zelaya to enter a storage room with him on the pretense that he needed her help checking inventory. He then proceeded to hug her and put his hands on her body. On each of these occasions, Ms. Zelaya pulled away from defendant Alarcon and told him that she wanted him to stop touching her and making comments about her body, thereby making it clear that she found his sexual advances offensive and unwelcome.

4

17.    In March 2005, defendant Alarcon cornered Ms. Zelaya in a storage closet, and told her he found pregnant women "hot" and "horny," and that if she did not have someone who could satisfy her sexually that he would be happy to do it for her. He told her that his wife used to be beautiful before she had children, but then she became fat and ugly. Ms. Zelaya made clear to defendant that his sexual advances were offensive and unwelcome, and that if he did not stop touching her and making comments about her body, she would report him to UNICCO supervisors. Defendant Alarcon said he did not care and that the UNICCO attorneys would protect him.

18.    When defendant Alarcon arrived at 1200 K Street for work, he frequently stated to the building security manager and other security personnel, "Here I am, where is she?" or "I am looking for her ass," referring to Ms. Zelaya.

19.    Defendant Alarcon's sexual advances made Ms. Zelaya extremely uncomfortable, and fearful for her safety and the safety of her unborn child. As a result, she was forced to hide from him when he was in the building.

20.    Other UNICCO employees witnessed defendant Alarcon's behavior. On several occasions, the security guards at 1200 K Street warned Ms. Zelaya when defendant Alarcon was in the building so that she could hide from him.

21.    In spring 2005, defendant Alarcon enlisted defendant Oscar Argueta, UNICCO's on-site manager at 1200 K Street, to monitor Ms. Zelaya's actions and whereabouts.

22.    Defendant Argueta, in concert with defendant Alarcon, falsely accused Ms. Zelaya of lying about the availability of cleaning supplies, in an apparent effort to have her terminated.

23.    Defendant Argueta was removed from his own job when the building manager,

5

Tonia Serfatti, who was not a UNICCO employee, intervened on Ms. Zelaya's behalf.

24.    In March 2005, during the last trimester of Ms. Zelaya's pregnancy, her health insurance company informed her that she was no longer covered because UNICCO had stopped making her insurance payments.

25.    When Ms. Zelaya called defendant Alarcon to inform him that her health insurance had been cancelled, he said there was nothing he could do for her.

26.    On April 21, 2005, the Service Employees International Union, of which Ms. Zelaya was a member, wrote a memo to UNICCO which stated that she was entitled to health coverage and requested that it be restored immediately. However, UNICCO did not restore her health coverage.

27.    In May 2005, Ms. Zelaya again asked defendant Alarcon why her health insurance had been cancelled. He told her that her insurance had been cancelled because she did not accept his sexual propositions, and told her that he could not help her.

28.    The stress from defendant Alarcon's harassment and defendant Argueta's monitoring took a severe toll on Ms. Zelaya's health. She was forced to take two months unpaid maternity leave starting on May 18, 2005 and gave birth on May 25, 2005, four weeks before her expected due date, due to the harassment and intimidation directed against her by defendants Alarcon, Argueta, and UNICCO.

29.    Ms. Zelaya paid for most of her medical expenses out-of-pocket between March 2005 and May 2005, because UNICCO did not restore her health coverage.

30.    In August 2005, UNICCO finally restored Ms. Zelaya's health insurance coverage, nearly three months after her son was born.

31.    Upon Ms. Zelaya's return to work in August 2005, defendant Alarcon resumed

6

making comments about her body and her appearance. Ms. Zelaya again told defendant Alarcon that his comments were unwelcome and offensive, but defendant Alarcon continued to make the unwelcome sexual comments.

32.     In or about August 2005, defendant Alarcon told Ms. Zelaya that she was prettier when she kept her mouth shut.

33.     In or about August 2005, defendant Alarcon threatened to fire Ms. Zelaya if she reported him for making unwelcome and offensive sexual advances.

34.     Defendant Alarcon enlisted defendant Carlos Fernandez, who replaced defendant Argueta as the on-site manager, to monitor Ms. Zelaya's actions and whereabouts.

35.     On March 15, 2006, defendant Fernandez issued two disciplinary notices to Ms. Zelaya and told her that she would be fired if "anything else happened."

36.     The first notice stated falsely that a customer, Sharon Cheek, had complained that Ms. Zelaya had failed to clean glass doors in the lobby.

37.     The second notice claimed falsely that Ms. Zelaya had harassed Ms. Cheek by confronting her about the complaint.

38.     Ms. Zelaya had never before received a disciplinary notice or had a tenant file a complaint against her.

39.     On March 20, 2006, Ms. Cheek wrote a letter to the 1200 K Street Senior Property Manager, Robert Fuller, disavowing any statements attributed to her. Ms. Cheek wrote: "In closing, [Blanca Zelaya] has been very responsible with keep (sic) the double doors clean, she is always friendly, reliable and dependable and she has never approached me in a threatening or confrontational manner."

40.     Despite confirmation that Ms. Zelaya had done nothing improper, defendant

7

Fernandez refused to revoke the two disciplinary notices.

41.     On March 24, 2006, defendant Alarcon told Ms. Zelaya that he thought she had a "pretty ass" and it was "too bad" it was not his.

42.     In April 2006 defendant Alarcon threatened Ms. Zelaya and told her to keep her mouth shut about the harassment.

43.     In April 2006 defendant Alarcon directed defendant Fernandez to make false criticisms of Ms. Zelaya's performance.

44.     In April 2006 defendant Alarcon told Ms. Zelaya he would have her fired if she did not accede to his sexual advances.

45.     On April 14, 2006, Mr. Fernandez eliminated the one break period Ms. Zelaya received outside her lunch period.

46.     On April 14, 2006, defendant UNICCO's Human Resources employee, Iva Burwood, spoke to Ms. Zelaya about defendant Alarcon's actions.

47.     Ms. Burwood does not speak Spanish and Ms. Zelaya has limited English proficiency, so they were not able to communicate very well. Ms. Zelaya requested that someone be contacted to interpret for her, but Ms. Burwood refused.

48.     Ms. Zelaya asked to contact her attorney, but Ms. Burwood also refused to permit her to do so.

49.     Ms. Burwood repeatedly asked Ms. Zelaya if she were telling the truth about defendant Alarcon's harassment, and told Ms. Zelaya that she would get in trouble if she were lying.

50.     On April 18, 2006, Ms. Zelaya filed a discrimination complaint with the D.C. Office of Human Rights, through counsel. UNICCO's retaliation against Ms. Zelaya escalated

8

after she reported the harassment to UNICCO Human Resources.

51.    On May 3, 2006 Ms. Zelaya, through her counsel, notified UNICCO that she was represented by counsel, and that all communications regarding the case should be directed to Ms. Zelaya's attorneys.

52.    Ramon Gaitan, who was a co-worker of Ms. Zelaya's, corroborated her sexual harassment claims to UNICCO management.

53.    After Ms. Zelaya filed her charge of discrimination, and Mr. Gaitan corroborated Ms. Zelaya's claims of sexual harassment, UNICCO further retaliated against Ms. Zelaya, and against Mr. Gaitin, by transferring Mr. Gaitan to another building.

54.    On May 16, 2006, defendant Fernandez told Ms. Zelaya that he would be driving her to a mandatory meeting with UNICCO's human resources office. No one from UNICCO Human Resources had contacted Ms. Zelaya or her attorneys about this meeting. Ms. Zelaya refused to go with defendant Fernandez, as she was frightened to be alone in a car with him. Defendant Fernandez continued to pressure Ms. Zelaya to accompany him to the meeting.

55.    Ms. Zelaya contacted her attorneys, who sent UNICCO a letter stating that she would not accompany Mr. Fernandez to a meeting with UNICCO Human Resources and that UNICCO should contact her attorneys to arrange for an interview. The letter also stated that defendant Fernandez was named in Ms. Zelaya's complaint, which she filed with the DCOHR, and that UNICCO's actions and defendant Fernandez's actions constituted further retaliation against Ms. Zelaya.

56.    On May 19, 2006, a man approached Ms. Zelaya at 1200 K Street, introduced himself as "Felix," and told her that defendant Fernandez was outside waiting for her in his car. Ms. Zelaya told Felix she was not going to get into defendant's car, or go anywhere with him.

9

57.     UNICCO replaced Mr. Gaitan with an employee whose first name is Ruben. Immediately upon arrival, at the direction of UNICCO management, Ruben began monitoring Ms. Zelaya's every move and reporting back to defendant Fernandez and Ms. Castellani about her behavior.

58.     On or about July 11, 2006, in a further act of retaliation, defendant Fernandez denied Ms. Zelaya's request for time off to attend the D.C. Office of Human Rights sponsored mediation of her complaint, scheduled for July 18, 2006.

59.     In early November 2006, a worker in the 1200 K Street cafeteria asked Ms. Zelaya to deliver ice cream to Melki Arias, an engineer in the building. Ms. Zelaya agreed and brought the ice cream to Mr. Arias.

60.     The following day, Ruben reported Ms. Zelaya to Ms. Castellani and defendant Fernandez for delivering the ice cream to Mr. Arias.

61.     Mr. Machak warned Mr. Arias, "be careful with that lady - they have Ruben watching her."

62.     Despite Mr. Machak's warning, Mr. Arias went to Ruben and asked him, "what is your problem with Blanca [Zelaya]?" Ruben told Mr. Arias that defendant Fernandez and Ms. Castellani had promised him a supervisory position in exchange for monitoring Ms. Zelaya.

63.     On November 9, 2006, Ms. Castellani and defendant Fernandez told Ms. Zelaya that she was being transferred out of the 1200 K Street building. Ms. Castellani then escorted her out of the building.

64.     Thereafter, defendant UNICCO assigned Ms. Zelaya to a position at 2550 M Street, with the knowledge that UNICCO would soon lose the maintenance contract for that building.

10

65.   Two UNICCO employees who worked at 2550 M Street, Fredisvinda Saravia and Jose Ramos, told Ms. Zelaya that defendant UNICCO was about to lose its contract on the building.

66.   On April 23, 2007, UNICCO lost its contract on the building at 2550 M Street, and a new company, Cavalier, took over the contract.

67.   Cavalier hired defendant Argueta, the former UNICCO employee who defendant Alarcon enlisted to monitor Ms. Zelaya's actions at 1200 K Street, as the on-site manager for 2550 M Street.

68.   Although there were three daytime positions at 2550 M Street, Cavalier offered daytime schedules only to Ms. Saravia and Mr. Ramos, even though Ms. Zelaya had more seniority than them. Upon information and belief it did so based on defendant UNICCO and defendant Alarcon's false and defamatory statements made about Ms. Zelaya, a further act of retaliation.

69.   Cavalier offered Ms. Zelaya only a position with a schedule that was too late in the day to allow her to take care of her son, even though other positions were available. As a result, Ms. Zelaya became unemployed in late April 2007.

70.   On June 3, 2002, UNICCO entered into a Conciliation Agreement with the U.S. Equal Employment Opportunity Commission, the Commonwealth of Massachusetts Office of the Attorney General, and the Massachusetts Commission Against Discrimination.

71.   The Conciliation Agreement resulted from a "probable cause class finding of discrimination made by the EEOC that alleges that UNICCO violated Title VII by subjecting [redacted] and other similarly situated female cleaning employees to discrimination on the basis of their sex, female."

11

72.    The class of employees who formed the basis for the Conciliation Agreement
were subjected to sexual harassment, retaliation, and constructive discharge in their employment
with UNICCO.

73.    As part of the Conciliation Agreement, UNICCO paid $1.0 million in monetary
damages, and was compelled to develop and post anti-discrimination policies and discrimination
complaint policies. Despite the Conciliation Agreement, UNICCO failed to post anti-
discrimination and discrimination complaint policies in Ms. Zelaya's workplace until after she
retained legal counsel in May 2006.

74.    Plaintiff filed a complaint with the District of Columbia Office of Human Rights
(DCOHR), which was cross filed with the Equal Employment Opportunity Commission
(EEOC). The DCOHR complaint was closed administratively on November 14, 2007. The
EEOC issued a Notice of Right to Sue on December 5, 2007.

## COUNT ONE
### DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e et seq.,
AGAINST DEFENDANT UNICCO

75.    Plaintiff incorporates paragraphs 1 through 74, as though stated here.

76.    Under Title VII it is unlawful for an employer to "discriminate against any
individual with respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's... sex." 42 U.S.C. § 2000e-2(a).

77.    Defendant UNICCO ignored Ms. Zelaya's complaints about defendant Alarcon's
severe, unwelcome and offensive sexual harassment, allowed the harassment to continue, and
conspired with defendants Alarcon, Argueta and Fernandez to have Ms. Zelaya transferred and
terminated from her employment.

78.    Defendant UNICCO's actions described above constitute unlawful harassment

12

against Ms. Zelaya in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e-2(a).

79.     Defendant UNICCO's unlawful discrimination damaged Ms. Zelaya's health and

caused her substantial pain, suffering, and emotional distress.

80.     Defendant UNICCO's conduct, in reckless disregard for Ms. Zelaya's federally-

protected civil rights, is outrageous.

81.     Defendant UNICCO's violations of Title VII directly and proximately caused Ms.

Zelaya loss of income and other economic benefits, job search costs, and the loss of future

employment opportunities, impairment of her future earning capacity, and damage to her

professional reputation.

## COUNT TWO
### DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE ANN. § 2-1402.11 ET SEQ., AGAINST DEFENDANTS UNICCO, ALARCON, ARGUETA AND FERNANDEZ

82.     Plaintiff incorporates paragraphs 1 through 81, as though stated here.

83.     Under the D.C. Human Rights Act, it is unlawful for an employer to "discriminate

against any individual, with respect to his compensation, terms, conditions, or privileges of

employment, including promotion; or to limit, segregate, or classify his employees in any way

which would deprive or tend to deprive any individual of employment opportunities, or

otherwise adversely affect his status as an employee," on the basis of sex. D.C. Code Ann. § 2-

1402.11(a)(1).

84.     Defendant Alarcon subjected Ms. Zelaya to repeated and severe sexual

harassment and unwanted sexual touching which were unwelcome and offensive to her. He

made her fearful for her own safety and for the safety of her unborn child when she was at work,

causing her to hide from him.

85.    Defendants Argueta and Fernandez conspired with defendant Alarcon to subject Ms. Zelaya to sexual harassment and sexual touching.

86.    Defendant UNICCO failed to correct the sexual harassment, allowed the harassment to continue, and conspired with defendants Alarcon, Argueta and Fernandez and other UNICCO officers to have Ms. Zelaya transferred and terminated.

87.    Defendants' actions described above constitute unlawful harassment against Ms. Zelaya, in violation of the District of Columbia Human Right Act, D.C. Code Ann. § 2-1402.11(a).

88.    Defendants' unlawful discrimination damaged Ms. Zelaya's health and caused her substantial pain, suffering, emotional anxiety and stress.

89.    Defendants' violations of the D.C. Human Rights Act directly and proximately caused Ms. Zelaya loss of income and other economic benefits, job search costs, and the loss of future employment opportunities, impairment of her future earning capacity, and damage to her professional reputation.

## COUNT THREE
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3 ET SEQ., AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE ANN. § 2-1402.61 ET SEQ., AGAINST DEFENDANT UNICCO

90.    Plaintiff incorporates paragraphs 1 through 89, as though stated here.

91.    Under the D.C. Human Rights Act, it is "an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under" the District of

14

Columbia Human Rights Act.  D.C. Code § 2-1402.61.

92.    Under Title VII, it is unlawful to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

93.    Defendant UNICCO retaliated against Ms. Zelaya as a result of her refusal to submit to defendant Alarcon's severe, unwelcome and offensive sexual advances and her complaints about defendant Alarcon's harassment.

94.    Defendant UNICCO interfered with Ms. Zelaya's work by monitoring her actions and creating trumped up disciplinary actions, and conspired to have Ms. Zelaya transferred and terminated.

95.    Defendant UNICCO's actions constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), and the District of Columbia Human Right Act, D.C. Code Ann. § 2-1402.61.

96.    Defendant UNICCO's retaliatory actions damaged Ms. Zelaya's health and caused her substantial pain and suffering, humiliation and emotional distress.

97.    Defendant UNICCO's violation of the D.C. Human Rights Act directly and proximately caused Ms. Zelaya loss of income and other economic benefits, job search costs, and the loss of future employment opportunities, impairment of her future earning capacity, and damage to her professional reputation.

## COUNT FOUR
### AIDING AND ABETTING IN VIOLATION OF
### THE D.C. HUMAN RIGHTS ACT, D.C. CODE § 2-1402.62
### AGAINST DEFENDANTS ALARCON, ARGUETA AND FERNANDEZ

98.    Plaintiff incorporates, as though restated here, each of the allegations in

15

paragraphs 1 through 97 above.

99.    Under the D.C. Human Rights Act, it is "an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so."  D.C. Code Ann. § 2-1402.62.

100.    Defendants Alarcon, Argueta, and Fernandez, as described above, aided and abetted defendant UNICCO in retaliating against Ms. Zelaya based on her complaints about sexual harassment.

101.    Defendants Alarcon's, Argueta's and Fernandez's conduct were a direct and proximate cause of the injuries and damages to Ms. Zelaya, including loss of income and other economic benefits, loss of future employment opportunities, impairment of her future earning capacity, damage to her professional reputation, substantial pain and suffering, emotional distress, and humiliation.

## COUNT FIVE
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS AGAINST DEFENDANT UNICCO

102.    Ms. Zelaya incorporates as though restated each of the allegations set out in paragraphs 1 through 101.

103.    Upon information and belief defendant UNICCO made defamatory statements about Ms. Zelaya to Cavalier.

104.    Defendant UNICCO's false and defamatory statements about Ms. Zelaya caused Cavelier to deny Ms. Zelaya a job that was comparable to the job she previously held.

105.    Upon information and belief, defendant UNICCO intentionally interfered with Ms. Zelaya's prospective contractual relations with Cavalier by making defamatory statements about her, and did so to injure Ms. Zelaya in her employment and ensure Cavelier would not give

16

her a comparable position.

106.    Defendant UNICCO's actions in interfering with Ms. Zelaya's prospective
employment with Cavelier were taken without justification, and for the specific purpose of
harming Ms. Zelaya.

107.    Defendant UNICCO's interference with Ms. Zelaya's future business
opportunities was done with malice, ill will, in bad faith, and with specific intent to harm Ms.
Zelaya.

108.    Defendant UNICCO's actions caused Ms. Zelaya loss of income and benefits,
damage to her professional reputation, pain and suffering, and emotional distress.

## REQUESTED RELIEF

WHEREFORE, plaintiff respectfully prays this court for the following relief:

1.    Award frontpay in an amount to be determined;

2.    Award compensatory damages to plaintiff in an amount to be determined, but in
no event less than $1,000,000;

3.    Award punitive damages to plaintiff in an amount to be determined, but in no
event less than $1,000,000;

4.    Order defendant UNICCO to institute policies to train managers and supervisors
to comply with the DCHRA and Title VII, and to discipline managers and supervisors who
violate the DCHRA and Title VII;

5.    Order defendant UNICCO to inform employees about their rights under the
DCHRA and Title VII, and to institute effective policies to allow employees to report violations
of the DCHRA and Title VII;

6.    Award plaintiff reasonable attorneys' fees and costs; and

17

7.    Order such other relief as this court deems just and proper.

Respectfully submitted,

Lynne Bernabei # 938936
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

David Wachtel # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Emily Read # 492773
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorneys for Blanca Zelaya

DATED: December 21, 2007

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLANCA ZELAYA | ) |
| Plaintiff | ) |
| v. | ) |
| UNICCO SERVICE COMPANY | ) Civil Action No._____ |
| CARLOS ALARCON | ) |
| OSCAR ARGUETA | ) |
| CARLOS FERNANDEZ | ) |
| Defendants. | ) |

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Lynne Bernabei  # 938936
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

David Wachtel  # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

19

Emily Read  # 492773
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorneys for Blanca Zelaya

DATED: December 21, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Blanca Zelaya | UNICCO Service Company, Carlos Alarcon, Oscar Argueta, and Carlos Fernandez |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | District of Columbia | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) District of Columbia NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Lynne Bernabei, Esq. Bernabei & Wachtel, PLLC 1775 T Street, N.W. Washington, D.C. 20009 (202) 745-1942 | Vanessa A. Eustace, Esq. |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

O 2 U.S. Government Defendant

O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. Antitrust | O B. Personal Injury/ Malpractice | O C. Administrative Agency Review | O D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. General Civil (Other) | OR | O F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ◉ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

An action for sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** No less than 1 million dollars<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE December 21, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.