**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
BLANCA ZELAYA                                 )
                                              )
           Plaintiff,                         )
                                              )
v.                                            )     Civil Action No. 1:07-cv-02311-RCL
                                              )
UNICCO SERVICE COMPANY, *et al.*,             )
                                              )
           Defendants.                        )
_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**IN OPPOSITION TO DEFENDANT UNICCO SERVICE COMPANY'S**
**MOTION TO DISMISS**

Plaintiff Blanca Zelaya, through undersigned counsel, respectfully submits this

Memorandum of Points and Authorities in Opposition to Defendant UNICCO Service

Company's Motion to Dismiss Counts Two, Three and Five of Complaint (March 5, 2008)

("Def. Mot.").

Defendant UNICCO Service Company ("UNICCO") has not moved to dismiss Counts

One and Four, which set forth claims for discrimination on the basis of sex in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and for aiding and

abetting in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 et

seq. ("DCHRA"), respectively, or the portion of Count Three that sets forth claims for unlawful

retaliation in violation of Title VII.

This is an action for egregious sexual harassment, sex discrimination, and retaliation in

violation of Title VII and the DCHRA.  This is also an action for Defendant's intentional

interference with Plaintiff's contractual relations arising from Defendant's wrongful interference

with Plaintiff's opportunity to work for another company.

This Court should deny Defendant's Motion to Dismiss Counts Two and Three because under § 2-1403.16 of the District of Columbia Code, as amended, Plaintiff's DCHRA claim was timely filed.  As set forth in more detail below, Defendant's support for its argument to the contrary stems from cases decided prior to these amendments.

This Court should deny Defendant's Motion to Dismiss Count Five because the well-pled allegations in Plaintiff's Complaint ("Compl.") state a claim for tortious interference with prospective contractual relations.  As described in more detail below, Defendant's argument to the contrary misconstrues the law.

## I.  <u>FACTUAL BACKGROUND</u>

Plaintiff worked for Defendant UNICCO as a custodian at 1200 K Street in Washington, D.C., starting in 2004.  Compl. ¶ 9.  Throughout her employment, Defendant's agents subjected Plaintiff to egregious and systematic sexual harassment.  When Plaintiff complained, Defendant retaliated against her.  Plaintiff was pregnant when Defendants began sexually harassing and retaliating against her, and the Defendants' actions caused Plaintiff extreme emotional and physical stress, resulting in the premature birth of her son.  <u>Id</u>. ¶ 14.

On or about January 4, 2005, Defendant UNICCO promoted Defendant Carlos Alarcon to the position of Building Operations Manager at 1200 K Street.  <u>Id</u>. ¶ 13.  As Manager, Defendant Alarcon supervised Ms. Zelaya.  <u>Id</u>.  Almost immediately after he became Plaintiff's supervisor, Defendant Alarcon began making offensive and unwelcome sexually explicit comments and sexual advances toward her, including running his hands down her back or against her shoulders and repeatedly commenting on her appearance.  <u>Id</u>. ¶ 15.

Throughout the Spring of 2005, Defendant Alarcon repeatedly cornered Ms. Zelaya in a storage room while she was working.  <u>Id</u>. ¶¶ 16-17.  Once he had trapped her in the storage

room, Defendant Alarcon would hug her and put his hands on her body.  Id.  On one occasion in March of 2005, Defendant Alarcon cornered Ms. Zelaya in the storage room and told her he found pregnant women "hot" and "horny," and that if she did not have someone who could satisfy her sexually that he would be happy to do it for her.  Id. ¶ 17.

Defendant Alarcon's sexual advances made Ms. Zelaya extremely uncomfortable and fearful for her safety and the safety of her unborn child.  Id. ¶ 19.  She made clear to Defendant Alarcon that his sexual advances were offensive and unwelcome, and that if he did not stop touching her and making comments about her body, she would report him to UNICCO supervisors.  Id. ¶ 17.  Defendant Alarcon ignored her protests and made clear to her that he would continue to harass her because Defendant UNICCO's attorneys would protect him.  Id.

UNICCO employees at 1200 K Street regularly witnessed Defendant Alarcon's sexual harassment of Plaintiff.  Id. ¶ 20.  Indeed, other employees would warn Plaintiff when Alarcon was in the building, so that she could hide from him.  Id.  In the Spring of 2005, Alarcon enlisted the support of UNICCO's Site Manager, Oscar Argueta, to monitor Ms. Zelaya's actions and whereabouts.  Id. ¶ 21.  In collaboration with Defendant Alarcon, Defendant Argueta unsuccessfully attempted to have Plaintiff terminated.  Id. ¶ 22.

During the last trimester of Ms. Zelaya's pregnancy, in March of 2005, UNICCO retaliated against her for protesting Defendant Alarcon's advances by cutting off her health insurance. Id. ¶¶ 24, 27.  When Ms. Zelaya informed Defendant Alarcon that her health insurance had been cancelled, he said there was nothing he could do to restore her coverage.  Id. ¶ 25.  In April of 2005 Plaintiff's union representative requested that UNICCO restore Plaintiff's health insurance, but Defendant ignored the request.  Id. ¶ 26.  Ms. Zelaya paid for most of her medical expenses out-of-pocket during the last stages of her pregnancy, because UNICCO did

not restore her health coverage. <u>Id</u>. ¶ 29.

The stress from Defendants' harassment took a severe toll on Ms. Zelaya's health during and after her pregnancy. <u>Id</u>. ¶ 28. As a result, starting on May 18, 2005, she took extended leave from her job and gave birth to her child prematurely. <u>Id</u>. ¶ 28.

Ms. Zelaya returned to work in August of 2005, after recovering from the difficult birth of her child. Defendant Alarcon resumed his campaign of sexual harassment. <u>Id</u>. ¶ 31. Ms. Zelaya again repeatedly told Defendant Alarcon that his advances were unwelcome and offensive, but he continued his comments and advances, and warned her that he would fire her if she reported him. <u>Id</u>. ¶¶ 31, 33.

Defendant Alarcon also enlisted the help of Defendant Carlos Fernandez, another UNICCO employee at 1200 K Street, to harass Plaintiff. On March 15, 2006, Defendant Fernandez issued trumped-up disciplinary notices claiming that a resident of the building had complained about Ms. Zelaya's work. <u>Id</u>. ¶¶ 35-37. The notices were utterly false and clearly intended to harass and retaliate against Plaintiff. The customer who allegedly complained later wrote a letter denouncing the contents of the disciplinary notices and complimenting Plaintiff's work, but Defendant Fernandez refused to revoke the disciplinary notices. <u>Id</u>. ¶¶ 39, 40.

Defendant Alarcon's harassment continued throughout the Spring of 2006. On one occasion he told Ms. Zelaya that he thought she had a "pretty ass" and it was "too bad" it was not his. <u>Id</u>. ¶ 41-45. He also told her to keep her mouth shut about the harassment, and again warned her that he would have her fired if she did not accede to his sexual advances. <u>Id</u>. Defendants Fernandez and Alarcon continued to pressure Plaintiff and threaten her with further retaliation if she complained. <u>Id</u>.

On April 14, 2006, Iva Burwood, a Human Resources representative from UNICCO, met

with Plaintiff to discuss Defendant Alarcon's harassment.  Id. ¶ 46.  Ms. Burwood does not

speak Spanish and Ms. Zelaya has limited English proficiency, but Ms. Burwood refused to

provide an interpreter or to allow Ms. Zelaya's attorney to be present.  Id. ¶¶ 47-48.  It became

clear that Ms. Burwood intended to sweep Plaintiff's complaints under the rug.  Ms. Burwood

repeatedly asked Ms. Zelaya if she had told the truth about Defendant Alarcon's harassment, and

told Ms. Zelaya that she would get in trouble if she had lied.  Id. ¶ 49.

Defendant UNICCO's retaliation escalated after Plaintiff's meeting with Ms. Burwood,

and became even worse after Plaintiff filed a discrimination complaint with the D.C. Office of

Human Rights ("DCOHR") on April 14, 2006.  Id. ¶ 50.  Even after Plaintiff informed

Defendant that she was represented by counsel, Defendant harassed Plaintiff by attempting to

meet with her without her attorney present.  Id. ¶¶ 54-58.

Defendant UNICCO's retaliation culminated in its termination of Ms. Zelaya by

transferring her to another building, where Defendant knew it would soon lose the maintenance

contract.  Id. ¶¶ 63-64.  Indeed, shortly after Defendant transferred Plaintiff to the new building,

Defendant lost its contract on the building, and a new company, Cavalier, took over the contract.

Id. ¶ 66.  Cavalier then constructively discharged Plaintiff by offering her a work schedule that

was too late in the day to allow her to take care of her son, even though other positions were

available.  Id. ¶¶ 68-69.  Upon information and belief, Defendants made false and defamatory

statements about Plaintiff, which caused Cavalier to offer the untenable work schedule, thereby

constructively discharging her.  Id.

Plaintiff's April 14, 2006 DCOHR complaint had been cross-filed with the Equal

Employment Opportunity Commission ("EEOC").  Id. ¶ 50.  Plaintiff withdrew the Complaint

from DCOHR on November 21, 2007 and requested a Right to Sue Notice from the EEOC,

which the EEOC issued on December 5, 2007.  On December 21, 2007, Plaintiff filed this complaint.

## II. <u>STANDARD OF REVIEW.</u>

A motion to dismiss for failure to state a claim upon which relief can be granted is viewed with disfavor and is rarely granted.  <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all of the factual allegations in the complaint.  <u>Erickson v. Pardus</u>, 551 U.S. __, 127 S. Ct. 2197, 2200 (2007) (per curiam); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. __, 127 S. Ct. 1955, 1964-65 (2007).  The court construes the complaint liberally in the plaintiff's favor and grants the plaintiff the benefit of all inferences that can be derived from the facts alleged.  <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994); <u>see also</u> <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002); <u>Sparrow v.United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the Plaintiff.  <u>Doe</u>, 753 F.2d at 1102.  There is no probability of success requirement at the pleading stage.  <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1965, but "something beyond ... mere possibility ... must be alleged[.]"  <u>Id</u>. at 1966.  The facts alleged in the complaint merely "must be enough to raise a right to relief above the speculative level," <u>id</u>. at 1965, or sufficient "to state a claim for relief that is plausible on its face."  <u>Id</u>. at 1274.

## III. <u>LEGAL ARGUMENT.</u>

### A.     **Ms. Zelaya timely filed her DCHRA claims in this Court.**

Plaintiff's charge of discrimination, which she filed with the DCOHR on April 14, 2006, tolled the running of the statute of limitations on her allegations of discrimination that occurred within the year prior to date she filed the charge.  The statute of limitations began to run again

when the DCOHR granted her request to withdraw her charge from the administrative process on

November 14, 2007.  She filed suit five weeks later, on December 21, 2007.  Plaintiff's

complaint therefore incorporates all of UNICCO's numerous discriminatory and retaliatory acts

after June 21, 2005.

Earlier discriminatory and retaliatory acts are also within the scope of this lawsuit

because the continuing violations doctrine applies to Plaintiff's hostile work environment claims.

See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  Under Morgan, the

continuing violations theory applies when the defendant's unlawful conduct "is composed of a

series of separate acts that collectively constitute one 'unlawful employment practice.'"  Id. at

117.  The claim's "very nature involves repeated conduct," and it is based on the "cumulative

effect of individual acts."  Id. at 115.

The D.C. Court of Appeals adopted the Morgan continuing violations analysis in Lively

v. Flexible Packaging Ass'n, 830 A.2d 874 (D.C. 2003), which also construed the D.C. Human

Rights Act.  The Lively Court concluded that the continuing violations theory applies when the

plaintiff is subjected to "one unlawful employment practice" continuing over time, id. at 890,

and that a single act occurring within the limitations period is enough to make "'the entire time

period'" count "'for the purposes of determining liability.'"  Id. (quoting Morgan, 536 U.S. at

117.

Here, Defendants' sexual harassment campaign began when Defendant UNICCO hired

Defendant Alarcon, and ended when Plaintiff no longer worked for Defendant UNICCO.

Therefore, any one of the Defendants' numerous harassing and retaliatory acts occurring after

June 21, 2005 is enough to make "'the entire time period of the hostile environment'" count "'for

the purposes of determining liability.'"  Id.

**1.    The DCHRA provides for tolling during the administrative process.**

From its inception until 1997, the DCHRA provided a one year statute of limitations.

Employees could file administrative charges, but filing an administrative charge had no effect on

the statute of limitations for a civil action.  See Historical and Statutory Notes to D.C. Code § 2-

1403.16 (formerly cited as D.C. Code 1981 § 1-2556).

In the Human Rights Amendment Act of 1997 (Act 12-143), the D.C. Council amended

the DCHRA to add a tolling provision during the DCOHR administrative process.  In 2002 that

provision was further amended to provide for tolling during any administrative process, whether

before DCOHR or EEOC.  The private right of action provision now states in relevant part:

> A private cause of action pursuant to this act shall be filed in a court of
> competent jurisdiction within 1 year of the unlawful discriminatory
> practice, or the discovery thereof   . . . The timely filing of a complaint
> with the Office… **shall toll the running of the statute of limitations
> while the complaint is pending**.

D.C. Code § 2-1403.16(a) (formerly codified as D.C. Code 1981 § 1-2556(a)) (emphasis added).

Therefore, Plaintiff's charge of discrimination with the DCOHR tolled the statute of limitations

on all of her allegations of discrimination that occurred within the year prior to date she filed the

charge.

Defendant wrongly relies on cases decided before the DCHRA was amended to argue

that Plaintiff's DCHRA claims are time barred.  Specifically, Defendant relies on five cases

decided before the DCHRA was amended on October 23, 1997.  Def. Mot. at 6, citing Anderson

v. United Safe Deposit Co., 552, A.2d 859 (D.C. 1989); Davis v. Potomac Elec. Power Co., 449

A.2d 278 (D.C. 1982); Katradis v. Dav-El of Washington, D.C., 846 F.2d 1482 (D.C. Cir. 1988);

Weiss v. Int'l Bhd. Of Elec. Workers, 759 F. Supp. 144 (D.D.C. 1990); and Clifton v. Fed. Nat'l

Mortgage Ass'n, 1998 WL 419741 (D.D.C. 1998).[1]  These pre-amendment cases are irrelevant to this Court's analysis.

Defendants also cite Kamen v. Int'l Bhd of Elec. Workers, 505 F. Supp. 2d 66 (D.D.C. 2007) (RMC) and Coleman v. Potomac Electric Power Co., 2004 WL 2348144 (D.C. Cir. 2004) affirming 310 F. Supp. 154 (D.D.C. 2004) (RMC).  In both cases, the courts mistakenly relied on the same pre-1997 precedent Defendants use here, specifically Anderson, and incorrectly held that the DCHRA statute of limitations was not tolled during the administrative process.  Coleman is an unreported summary affirmance.  Plaintiff Coleman was pro se in this Court and in the D.C. Circuit.  Coleman v. Potomac Electric Power Co., Civ. Act. No. 1:03CV01202 (D.D.C.).[2] Coleman has been cited for this point exactly once, in Kamen.  505 F. Supp. 2d at 76.

The unambiguous language of the DCHRA is clear, and courts have repeatedly held that the DCHRA's statute of limitations is tolled during the pendency of a claim before an administrative agency.  See, generally, Aigret v. Compass Group North America, Inc., et al., C.A. No. 01-CA-1650 (D.D.C. April 15, 2004) (attached hereto as Exhibit A); Estenos v.

---

[1]    Defendant incorrectly cites Clifton as having been decided in 1997; in fact, the case was decided in 1998.  The Plaintiff in Clifton withdrew her DCOHR complaint from the administrative process on November 14, 1997, just three weeks after the DCHRA was amended, and the Clifton Court mistakenly based its analysis on the pre-amendment version of the DCHRA.

[2]    Defendant twice cites the recently issued D.C. Court of Appeals decision in Griffin v. Acacia Life Ins. Co., 925 A.2d 564 (D.C. 2007), but not for any reason affecting the outcome of this motion.  Defendant first cites a snippet of Griffin stating that a party must choose between the DCOHR administrative process and court.  It is true that employees must choose, but the statute and Griffin make clear that the choice of an administrative proceeding is terminable. Indeed, Defendant later acknowledges that the statute explicitly allows a party to end the DCOHR process and go to court.  Compare Def. Mot. at 6 with Def. Mot. at 6 (following paragraph) citing D.C. Code § 2-1403.16(a).  Defendant also cites Griffin's holding concerning situations in which a charge is filed with EEOC and then cross-filed with DCOHR.  Def. Mot. at 6-7.  Since Ms. Zelaya filed with DCOHR, that part of the Griffin holding has no bearing here.

PAHO/WHO Federal Credit Union, 131 Daily Wash. L. Rptr. 537 (D.C. Super. Ct. Mar. 19, 2003) (attached hereto as Exhibit B).

> **2.  Voluntary withdrawal of a complaint does not eviscerate the protection of tolling.**

Once filed, a DCHRA charge can end in one of three ways: (1) the employee can withdraw the complaint; (2) the DCOHR can dismiss the complaint for administrative convenience; or (3) the DCOHR can reach a conclusion on the merits of the complaint.  D.C. Code § 2-1403.16(a).  If the DCOHR reaches a conclusion on the merits, the employee can appeal to the D.C. Court of Appeals but cannot obtain a trial de novo.  D.C. Code § 2-1403.14 (authorizing judicial review of DCOHR decisions in accordance with D.C. Code § 2-510(a): "The Court shall hear and determine all appeals upon the exclusive record for decision before the Mayor or the agency.").  However, if the complaint is terminated in either the first or second ways, the employee is entitled to trial de novo.  D.C. Code § 2-1403.16(a) ("where the [DCOHR] has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed.").

The District of Columbia courts have repeatedly held that a plaintiff may elect to bring her DCHRA claim in court once the DCOHR has dismissed it on grounds of administrative convenience or Plaintiff has withdrawn her complaint from the DCOHR.  See, e.g., Kensil v. Union Labor Life Insurance Co., C.A. No. 05-CA-7313, at 3 (D.C. Super. Ct. July 31, 2006); Adams v. Howard University, C.A. No. 00-CA-7610 (D.C. Super. Ct. April 27, 2004) (DCHRA statute of limitations tolled while "complaint is pending before the EEOC"); Aigret, C.A. No. 01-CA-1650 (Exhibit A); Vitikacs v. The American Legion, 2003 WL 22004935 *3, n. 2 (D.C. Super. Ct. June 8, 2003); Estenos, 131 Daily Wash. L. Rptr. 537 (Exhibit B).

Employees were entitled to trial <u>de</u> <u>novo</u> before the 1997 amendments.  <u>See</u>, <u>e.g.</u>, <u>Parker v. National Corp. for Housing Partnerships</u>, 697 F. Supp. 5 (D.D.C. 1988) (aggrieved party who has filed complaint with DCOHR may file complaint in a court of competent jurisdiction only when DCOHR dismisses complaint on ground of administrative convenience or when complainant withdraws complaint before DCOHR renders administrative decision); <u>Held v. National R.R. Passenger Corp.</u>, 101 F.R.D. 420 (D.D.C. 1984) (where employee withdrew discrimination complaint which he had filed with the DCOHR, he was entitled to maintain judicial action); <u>Brown v. Capitol Hill Club</u>, 425 A.2d 1309 (D.C. 1981) (where DCOHR dismisses a complaint on grounds of administrative convenience, or where the complainant withdraws his complaint before an administrative decision is rendered, such person retains the right to file a complaint in court).

The statutory basis for <u>de</u> <u>novo</u> litigation of withdrawn claims is D.C. Code § 2-1403.16(a), which states in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided, that where the [D.C.] Office [of Human Rights] has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed.

Defendant twists the meaning of this sentence to suggest that it is actually an evisceration of the tolling provision.  Def. Mot. at 6-7.  This twisted meaning is utterly illogical.  Tolling is irrelevant to appeals from administrative decisions because the D.C. Court of Appeals has set a thirty (3) day period for filing an appeal.  D.C. Code § 2-510 (D.C. App. Rule 26).  If the tolling provision has no effect when the employee withdraws the complaint, and has no effect when the DCOHR dismisses the complaint for administrative convenience, then the tolling provision is of

no use to anyone.  Plaintiff is aware of no decision, and Defendant has not cited any such

decision adopting Defendant's reading of D.C. Code § 1403.16(a).  As noted above, courts have

repeatedly held  that, to the contrary, the tolling provision is effective.  See, e.g., Vitikacs, 2003

WL 22004935 *3 n. 2; Estenos, 131 Daily Wash. L. Rptr. 537; Adams, C.A. No. 00-CA-7610;

Kensil, C.A. No. 05-CA-7313 at 3.

### 3. Rules of statutory construction also favor allowing Plaintiff's DCHRA claims to go forward.

The meaning of the DCHRA's tolling provision and entitlement to trial de novo is clear.

But to the extent that the DCHRA's meaning is even arguably ambiguous, this Court should

follow the rules of construction providing that, "[w]here two constructions as to the limitations

period are possible, the courts prefer the one that gives the longer period in which to prosecute

the action… 'If there is any reasonable doubt in a statute of limitations problem, the court will

resolve the question in favor of the complaint standing and against the challenge.'"  Lively v.

Flexible Packaging Assoc., 830 A.2d 874, 877 (D.C. 2003) (en banc), quoting Simpson v.

District of Columbia Office of Human Rights, 597 A.2d 392, 401 (D.C. 1991).  District of

Columbia courts adopt a construction that favors the complaining party in order to reflect the

importance of the civil rights secured by the DCHRA, and the importance of a private suit in

helping to fulfill the Act's commitment to civil rights.  See Simpson, 597 A.2d at 402; see also

Executive Sandwich Shoppe, Inc., v. Carr Realty Corp., 749 A.2d 724, 731 (D.C. 2000) ("[w]e

have specifically stated on several occasions that the DCHRA is a remedial civil rights statute

that must be generously construed.").  Thus, if this court were to find any ambiguity in the

DCHRA's tolling provision and right to trial de novo, it should still construe this provision in

Plaintiff's favor and find that her complaint was timely filed.

**B.      Plaintiff has stated a claim for intentional interference with prospective contractual relations.**

This Court must deny Defendant's motion to dismiss Count Five because Plaintiff has pled facts sufficient to state a claim for intentional interference with prospective contractual relations: (1) the existence of a valid business expectancy between Plaintiff and Cavalier; (2) knowledge of the relationship or expectancy on the part of Defendant UNICCO; (3) intentional interference inducing or causing a breach or termination of the expectancy by Defendant UNICCO; and (4) resultant damage to Plaintiff.  See Bennett Enters. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995).

Defendant mistakenly argues that Plaintiff has not alleged facts sufficient to support the third element of the claim, and that Plaintiff cannot meet the third element of the claim because a breach of contract cannot arise out of an at-will employment relationship, and because a constructive discharge is not a breach of contract.

**1.      Plaintiff has alleged that UNICCO's actions caused Cavalier to terminate her employment.**

Plaintiff has specifically alleged that Defendant UNICCO and Defendant Carlos Alarcon made false and defamatory statements about Plaintiff to Cavalier, and that those false and defamatory statements caused Cavalier to constructively discharge Plaintiff.  Compl. at ¶ 68. Cavalier constructively discharged Plaintiff by offering her only a position Cavalier knew she could not accept.  Id. at ¶¶ 67-69.

Even if these were not clear allegations of Defendant's wrongdoing, which they plainly are, this Court must construe the complaint "liberally in the Plaintiffs' favor," granting Plaintiff

13

"the benefits of all inferences that can be derived from the facts alleged." Kowal, 16 F.3d at 1276.

### 2. An intentional interference claim can arise out of an at-will employment relationship.

Plaintiff has stated a claim for intentional interference with prospective contract because she alleges that UNICCO interfered with her "expectancy" of employment with Cavalier, regardless of whether that expected employment was at-will. See Bennett, 45 F.3d at 499 (second and third elements of an intentional interference with prospective contract claim require showing the existence of a "business expectancy"). Because Plaintiff had worked for UNICCO, and Cavalier had taken over UNICCO's cleaning contract and Cavalier offered jobs to her coworkers, Plaintiff had a reasonable expectancy that she would enter into a similar employment relationship with Cavalier.

Defendant claims that an intentional interference claim cannot arise out of an at-will employment situation, Def. Mot. at 4-5, when in fact, the United States Supreme Court has held that at-will employees can state a claim for intentional interference with prospective contractual relations against third parties who interfere with that employment relationship.

In 1998, resolving a circuit split, the Supreme Court held that third-party interference with at-will employment relationships is actionable:

> One who maliciously and without justifiable cause, induces an employer to discharge an employee, by means of false statements, threats or putting in fear, or perhaps by means of malevolent advice and persuasion, is liable in action of tort to the employee for the damages thereby sustained. **And it makes no difference whether the employment was for a fixed term not yet expired or is terminable at the will of the employer.**

Haddle v. Garrison, 525 U.S. 121, 126 (1998) (emphasis added) (quoting T. Cooley, 2 Law of Torts 589-91 (3d ed. 1906)); see also Truax v. Rich, 239 U.S. 33, 38 (1915) ("The fact that the

employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of the authority, the unjustified interference of third persons is actionable although the employment is at will.").

Even prior to the decision in <u>Haddle</u>, the D.C. Court of Appeals had recognized this cause of action, holding that a former at-will employee could bring an intentional interference with contract claim against her former supervisor, where she alleged that the supervisor had acted maliciously in recommending that Plaintiff be fired, on the grounds that the supervisor "was not a party to the contract between [the employer] and [the Plaintiff so that the supervisor] could be found liable for tortious interference with contract." <u>Sorrells v. Garfinckel's Brooks Brothers, Miller & Rhoads, Inc</u>., 565 A.2d 285, 290 (D.C. 1989) (affirming judgment for employee on tortious interference with contract claim).

Defendant, without distinguishing or citing <u>Sorrells</u> or <u>Haddle,</u> rests its entire argument on the D.C. Court of Appeals decision in <u>McManus v. MCI Communications Corp.</u>, 748 A.2d 949, 957 (D.C. 2000). Def. Mot. at 4. <u>McManus</u> does state that at-will employees cannot state tortious interference claims, but it never addresses the Supreme Court's holding that at-will employees <u>can</u> bring these claims. <u>McManus</u> cites only to <u>Bible Way Church v. Beards</u>, 680 A.2d 419, 432-33 (D.C. 1996), decided before <u>Haddle</u>, in which the Court held that an intentional interference with prospective contract claim could not arise out of an at-will employment relationship. The Court did not distinguish or mention its prior holding in <u>Sorrells</u>.

The Supreme Court has made clear that an intentional interference with contract claim can arise out of the defendant's interference with an at-will employment relationship. <u>Truax</u>, 239 U.S. at 38 ("the unjustified interference of third persons is actionable although the employment is

15

at will"); <u>Haddle</u>, 525 U.S. at 126 ("it makes no difference whether the employment was for a

fixed term not yet expired or is terminable at the will of the employer").  This Court should

follow this clear Supreme Court precedent and deny Defendant's Motion to Dismiss Count Five,

because Plaintiff has set forth a claim for Defendant's intentional interference with contract

arising out of her at-will employment relationship with Cavalier.

### 3. An intentional interference claim can arise out of a constructive discharge.

With no citation, Defendant also argues that Plaintiff cannot make out the third element

of her intentional interference claim because Cavalier did not fire her.  Def. Mot. at 4-5.  The fact

that Cavalier constructively discharged Ms. Zelaya – as opposed to firing her outright – is

immaterial to the viability of her intentional interference with prospective contract claim,

because the third element of the claim requires simply that the contract or expectancy have been

breached.  <u>See</u> <u>Bennett</u>, 45 F.3d at 499.

Cavalier's constructive discharge of Ms. Zelaya was a breach of her employment

contract.  "[W]hen an employee contracts to fill a particular position, any material change in

duties or significant reduction in rank will constitute a constructive discharge which, if

unjustified, is a breach of contract."  <u>Brock v. Mutual Reports, Inc.</u>, 397 A.2d 149, 152 (D.C.

1979), <u>citing</u> <u>Hayes v. Resource Control, Inc</u>., 365 A.2d 399, 400 (D. Conn. 1976); <u>Rudman v.</u>

<u>Cowles Communications, Inc</u>., 280 N.E.2d 867, 872 (N.Y. 1972).  Here, Ms. Zelaya held a

daytime cleaning position with Defendant UNICCO, which she had every reason to expect

would not change under Cavalier's management.  Indeed, Cavalier's treatment of other union

member employees, like Plaintiff, working at the same building supported her expectation that

Cavalier would grant her the same position.  <u>See</u> Compl. at ¶¶ 65, 68, 69.  Instead, Defendant

UNICCO's defamatory statements caused Cavalier to constructively discharge Plaintiff by

offering her a schedule that constituted a "material change" in her position.  Brock, 397 A.2d at

152.

Furthermore, although the District of Columbia courts have not addressed this precise

issue, federal courts in other jurisdictions have held that a claim for intentional interference with

contract can arise out of a constructive discharge.  See e.g., Goldsmith v. Mayor and City

Council of Baltimore, 987 F.2d 1064, 1072 (4th Cir.1993) (applying constructive discharge

standard for purposes of evaluating the third element of an intentional interference with contract

claim); Soltani v. Smith, 812 F. Supp. 1280, 1299 (D.N.H. 1993) (finding evidence that

government officials knew conduct leading to constructive discharge of state employee was

unlawful at times of acts giving rise to claims of intentional interference with contractual

relations).  This court should similarly find that plaintiff can state a, intentional interference

claim based on constructive discharge.

> **4.  Plaintiff Is Not Required to Plead That Defendant Specifically**
> **Communicated a Request to a third Party to Terminate Plaintiff's**
> **Employment.**

As described above, to state a claim for intentional interference with prospective

contractual relations in the District of Columbia, the Plaintiff must demonstrate four elements:

(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship

or expectancy on the part of the interferer; (3) intentional interference inducing or causing a

breach or termination of the relationship or expectancy; and (4) resultant damage.  See Bennett,

45 F.3d at 499.

Without citation, Defendant argues that Plaintiff must allege "that UNICCO…

communicated with Cavalier a request to terminate," in order to state a claim for intentional

interference with contract.  Def. Mot. at 5.  As the plain language of the four-element claim

demonstrates, not one of the elements requires the Plaintiff to allege that the Defendant "communicated… a request to terminate" the Plaintiff. Def. Mot. at 5.

Even if this Court were to consider defendant's argument, it must still find that plaintiff *has* alleged communication by Defendant UNICCO which caused Cavalier to terminate Plaintiff's employment. Specifically, Plaintiff alleges that Defendant UNICCO and Defendant Carlos Alarcon made false and defamatory statements about Plaintiff to Cavalier, and that those false and defamatory statements caused Cavalier to constructively discharge Plaintiff. Compl. at ¶ 68. Under <u>Bell Atlantic</u>, this well-pled allegation is sufficient to state her intentional interference with prospective contract claim. 127 S. Ct. at 1964-65.

## IV.  <u>CONCLUSION.</u>

This Court must deny Defendant's Motion to Dismiss Count Two and part of Count Three, because Plaintiff's DCHRA claims were timely filed. This Court must further deny Defendant's Motion to Dismiss Count Five, because Plaintiff has properly stated a claim for tortious interference with prospective contract arising from UNICCO's false and defamatory statements to Cavalier.

Respectfully submitted,

_____/s/_____
Lynne Bernabei  # 938936
David Wachtel  # 427890
Emily Read  # 492773
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorneys for Blanca Zelaya

DATED: March 20, 2008

18

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
YVES AIGRET,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )      Civil Action No. 01-1650 (RWR)
                                )
COMPASS GROUP NORTH             )
     AMERICA, INC., et al.,     )
                                )
          Defendants.           )
_____ )
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff Yves Aigret filed an action against defendants

Compass Group North America, Inc., Eurest Food Service and

Compass Group USA, Inc., claiming that defendants violated the

federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601,

et seq. (1998), and discriminated against him on the basis of his

age in violation of the District of Columbia Human Rights Act

("DCHRA"), D.C. Code Ann. § 1-2512 (1981).[1]  Defendants have

moved to dismiss or, in the alternative, for summary judgment on

plaintiff's DCHRA age discrimination claim, arguing that the

DCHRA claim is barred by the statute's one year limitations

period.  In opposition, plaintiff argues that his DCHRA claim was

timely filed in this court because his charge of discrimination,

which was cross-filed with the District of Columbia Office of

_____

[1]    Section 1-2512 was recodified, without material change, at
D.C. Code Ann. § 2-1402.11 (2001).

- 2 -

Human Rights ("DCOHR") when he filed his charge of discrimination

with the Equal Employment Opportunity Commission ("EEOC"),

remained pending before the DCOHR when he filed this lawsuit,

thus tolling the DCHRA's one year statute of limitations.

Because plaintiff's charge of discrimination with the DCOHR

remained pending at the time he filed his complaint in this

court, and plaintiff has not established that he withdrew his

charge of discrimination from the DCOHR before filing suit, his

DCHRA age discrimination claim will be dismissed without

prejudice because the court lacks subject matter jurisdiction

over DCHRA claims that remain pending with the DCOHR.

<u>BACKGROUND</u>

Plaintiff Yves Aigret filed a charge of discrimination with

the EEOC on November 9, 1999, alleging a violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.

§ 621, <u>et</u> <u>seq.</u> (1994).  Plaintiff cross-filed his charge of

discrimination with the DCOHR.  (<u>See</u> Pl.'s Mem. P. & A. in Opp'n

Mot. to Dismiss or, in Alt. Summ. J. ("Pl.'s Opp'n") at Ex. 1

(Declaration of Yves Aigret ("Aigret Decl.")) at Att. 1 (EEOC

Form 5); Defs.' Mem. in Supp. Mot. to Dismiss or, in Alt. Summ.

J. ("Defs.' Mot.") at 2.)  The DCOHR notified the EEOC on

December 20, 1999 that, "[p]ursuant to the worksharing agreement,

[plaintiff's] charge [was] to be initially investigated by the

- 3 -

EEOC." (Aigret Decl. at Att. 5 (EEOC Form 212).)  In its

notification to the EEOC, the DCOHR checked the box on EEOC

Form 212 which acknowledged receipt of plaintiff's charge and

also indicated to the EEOC that the DCOHR did not intend "to

initially investigate the charge." (Id.)  The DCOHR did not

check the box on EEOC Form 212 to indicate that the agency was

dismissing, closing or not docketing plaintiff's age

discrimination charge.  (See id.)

On March 5, 2001, the EEOC issued plaintiff a "Dismissal and

Notice of Rights," informing plaintiff that the EEOC was closing

its file on his charge of discrimination filed with the EEOC.[2]

(See id. at Att.4 (EEOC Form 161).)  Plaintiff filed this lawsuit

on July 30, 2001, claiming that defendants violated the FMLA[3]

when they eliminated his position while he was out on short term

medical leave from May 7 to August 2, 1999, and discriminated

---

[2]    The March 5, 2001 notice was the second dismissal and notice
of rights received by plaintiff.  The EEOC originally issued to
plaintiff a dismissal and notice of rights dated March 2, 2000,
but sometime thereafter revoked and vacated that dismissal.  (See
Aigret Decl. at Att. 2 (EEOC Form 161) and Att. 3 (Fernandez
Ltr.); Pl.'s Opp'n at 2 n.1.)

[3]    Plaintiff's original complaint also asserted a claim under
the District of Columbia Family and Medical Leave Act ("DCFMLA"),
D.C. Code Ann. § 36-1301, et seq. (1981), which defendants also
moved to dismiss asserting that the DCFMLA's one year statute of
limitations barred such a claim.  (See Defs.' Mot. at 5.)
Conceding that argument (see Pl.'s Opp'n at 8), plaintiff amended
his complaint to eliminate the DCFMLA claim.

- 4 -

against him on the basis of his age in violation of the DCHRA
when they offered him in August 1999 the choice of a job
termination or a demotion.

### DISCUSSION

Before a court may address the merits of a complaint, it
must be assured that it has the authority to exercise
jurisdiction over the claims. See Scott v. England, 264 F. Supp.
2d 5, 8 (D.D.C. 2002) (citing Steel Co. v. Citizens for a Better
Env't, 523 U.S. 83, 94-95 (1998)).  "[A] federal court, whether
trial or appellate, has a duty to notice a failure of subject-
matter jurisdiction on its own motion at any time during the
proceedings," Nichols v. Agency for Int'l Dev., 18 F. Supp 2d 1,
3 (D.D.C. 1998) (citing Potomac Passengers Ass'n v. Chesapeak &
O. Ry., 520 F.2d 91 (D.C. Cir. 1975)), and if the court concludes
that it does not have jurisdiction over certain claims, those
claims must be dismissed. See Fed. R. Civ. P. 12(h)(3); National
Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1240 (11th
Cir. 2003) (relying on Rule 12(h)(3) in remanding case to the
district court for dismissal of claims over which the district
court lacked subject matter jurisdiction); cf. Allen v. Rehman,
132 F. Supp. 2d. 27, 29 (D.D.C. 2000) ("[A] court must dismiss a
case *sua sponte* at any time if it concludes that it lacks
jurisdiction over the case."); Boqush v. Passiac Police Dept.,

- 5 -

1989 WL 10604, No. 89-0233, *1 (D.D.C. Jan. 31, 1989) ("[I]f the Court concludes *sua sponte* that it does not have jurisdiction over [a] lawsuit, . . . the case must be dismissed."). Because subject-matter jurisdiction focuses on the court's authority to hear a claim, a court must "conduct a careful inquiry and make a conclusive determination whether it has subject matter jurisdiction or not," 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d ("Wright & Miller") § 1350 (1990), by examining the complaint and, "where necessary, . . . [by] consider[ing] the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).

In August 1999, the DCHRA provided, in relevant part, that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder[.]" D.C. Code Ann. § 1-2556(a).[4] The DCHRA "does not require exhaustion of administrative remedies before pursuit of a

---

[4]    Section 1-2556(a) was recodified, without material change, at D.C. Code Ann. § 2-1403.16(a) (2001).

- 6 -

judicial remedy, but instead 'provides for an *ab initio* election
of remedies.'" Weiss v. International Brotherhood of Elec.
Workers, 729 F. Supp. 144, 146 (D.D.C. 1990) (quoting Anderson v.
United States Safe Deposit Co., 552 A.2d 859, 863 (D.C. 1989)).
"[W]ith certain provisos, the jurisdiction of the [DCOHR] and
this Court are mutually exclusive and a plaintiff must elect
between the filing of a Human Rights Act complaint with the
[DCOHR] and this Court." Hoque v. Roach, 967 F. Supp. 7, 9-10
(D.D.C. 1997); see Weiss, 729 F. Supp. at 146 ("[A] claimant who
files a claim with the [DCOHR] may still file a lawsuit, but only
if the administrative claim is withdrawn prior to the completion
of the [DCOHR's] investigation or if the DCOHR dismisses the
complaint for administrative convenience.") (citations omitted).
Where the DCOHR has dismissed a plaintiff's complaint on the
grounds of administrative convenience, or where the plaintiff has
withdrawn a complaint, the plaintiff maintains all rights to
bring suit as if no complaint had been filed.  See D.C. Code Ann.
§ 1-2556(a).

Defendants concede that a charge of age discrimination filed
with the EEOC by a person in the District of Columbia is cross-
filed with the DCOHR pursuant to a worksharing agreement.  (See
Defs.' Mot. at 2, 4; Aigret Decl. at Att. 1 and Att. 5.)  "When a
worksharing agreement is in effect, claims received by one agency

- 7 -

'shall be deemed received by the other agency . . ..'" <u>Fowler v.
District of Columbia</u>, 122 F. Supp. 2d 37, 42 (D.D.C. 2000)
(quoting 29 C.F.R. § 1626.10(c) (2000)); <u>see</u> 29 C.F.R.
§ 1626.10(c)) (1999).  "Thus, by filing a claim with the EEOC,
the plaintiff commences proceedings with both the EEOC and the
designated state agency . . .." <u>Fowler</u>, 122 F. Supp. 2d at 42;
<u>see</u> <u>Vitikacs v. The American Legion</u>, No. 02-CA-10202, 2003 WL
22004935, *2-3 (D.C. Super. June 8, 2003).

When plaintiff filed his November 9, 1999 charge of
discrimination with the EEOC, and indicated on EEOC Form 5 that
he wanted the "charge filed with both the EEOC and the State or
local agency" (Aigret Decl. at Att. 1), he initiated proceedings
with both the EEOC and the DCOHR.  <u>See</u> 29 C.F.R. §§ 1626.7(c)),
1626.10(c)) (1999).  Unlike the EEOC, which conducted and
completed its investigation of plaintiff's age discrimination
claim under the ADEA (<u>see</u> <u>id.</u> at Att. 4), the DCOHR decided only
that it would not initially investigate plaintiff's charge of age
discrimination.  (<u>See</u> <u>id.</u> at Att. 5.)  The DCOHR did not
determine in December 1999 that it was dismissing, closing or not
docketing plaintiff's charge of age discrimination (<u>see</u> <u>id.</u>), and
defendants offer no evidence to establish that the agency
dismissed plaintiff's charge of age discrimination for
administrative convenience or reached any conclusion on the

- 8 -

merits, whether as a result of the EEOC's investigation[5] or its

own investigation.  Moreover, plaintiff has not offered any

evidence that he withdrew his charge of age discrimination from

the DCOHR.  Because the evidentiary record reflects neither any

final agency action by the DCOHR with respect to plaintiff's

charge of age discrimination, nor plaintiff's withdrawal of his

charge from the DCHOR, plaintiff's age discrimination complaint

remains pending with the DCOHR.[6]  See Vitikacs, 2003 WL 22004935

---

[5]    Also, defendants do not offer any evidence to suggest that
the EEOC informed the DCOHR that the EEOC dismissed plaintiff's
age discrimination claim and the bases for the dismissal, or that
the DCOHR was aware that the federal agency had taken such
action.

[6]    Defendants' motion to dismiss plaintiff's age discrimination
claim as having been filed beyond the limitations period argues
that the claim did not remain pending before the DCOHR after
December 1999 because the agency did not assume jurisdiction over
plaintiff's charge by initiating an investigation.  (See Defs.'
Mot. at 4.)  To support this argument, defendants rely on the
EEOC's implementing regulations for Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. (2000), and
for the Americans with Disabilities Act of 1990 ("ADA"), 42
U.S.C. § 12101, et seq. (2000).  (See Defs.' Mot. at 4-5 (citing
29 C.F.R. § 1601.13 (1999)).)  The EEOC's Title VII and ADA
implementing regulations contain a provision conferring a 60-day
period of exclusive jurisdiction on the local fair employment
practice agency, here the DCOHR, "to process allegations of
discrimination" under Title VII and the ADA before the EEOC "may
commence processing the allegation of discrimination."  See 29
C.F.R. § 1601.13(a)(1)(ii).  Defendants therefore argue that the
DCOHR's failure to initiate an investigation in the 60-day period
provided by § 1601.13 constituted a waiver of all jurisdiction
over plaintiff's charge of age discrimination.  (See Defs.' Mot.
at 4-5.)  Although a similar argument has been rejected by the
Superior Court of the District of Columbia as being

- 9 -

at *3 ("[N]othing in the statutory language [of the DCHRA]

suggests that a complaint cross-filed with the DCOHR should not

_____

"unjustifiably inflexible and inconsistent with the [DCHRA's]
statutory language and intent," Vitikacs, 2003 WL 22004935 at *3
n.2, even if true, defendants fail to explain how the Title VII
and ADA implementing regulations apply to plaintiff's charge of
age discrimination at issue here, which would be governed by the
EEOC's implementing regulations for the ADEA.

        Unlike the implementing regulations for Title VII and the
ADA, the ADEA implementing regulations do not contain a 60-day
exclusive jurisdiction provision.  Under the implementing
regulations for the ADEA, the EEOC "may process any charge at any
time, notwithstanding provisions for referral to and from
appropriate State agencies." 29 C.F.R. § 1626.9.  And a
complainant may file, and the EEOC may process and investigate, a
charge of discrimination even if the local agency has terminated
its local proceedings.  See id. at § 1626.7 ("[A charge of
discrimination] shall be filed with the [EEOC] or its designated
agent within . . . 300 days of the alleged discriminatory action,
or 30 days after receipt of notice of termination of State
proceedings, whichever is earlier.").  The plain language of the
EEOC's ADEA implementing regulations make clear that the EEOC may
initiate dual agency action at any time, or may conduct its own
investigation, notwithstanding any action taken by a local
agency.  It would be anomalous to find that, whereas the EEOC may
investigate claims of discrimination arising under federal law at
any time, the DCOHR may not do likewise with respect to cross-
filed discrimination claims which implicate local laws.

        Further, because plaintiff asserts a claim for age
discrimination, and not a cause of action under Title VII or the
ADA, a finding that plaintiff's age discrimination claim remained
pending with the DCOHR is not inconsistent with the unpublished
opinion in Griffin v. the Acacia Group, No. 97-2816, 1998 U.S.
Dist. LEXIS 10854 (D.D.C. July 13, 1998), which relied on
Title VII's 60-day deferral period in deciding that the
plaintiff's sex discrimination claim in that case was not pending
before the DCOHR after the EEOC began its investigation.  Id. at
*12-13.  No such deferral period applies to age discrimination
claims.  See 29 C.F.R. § 1626.9.

- 10 -

be deemed to be 'pending' before the DCOHR simply because the EEOC takes the lead in the investigation of the complaint. Common usage and understanding of the term 'pending' is fully consistent with the Court's conclusion that a complaint filed with the DCOHR remains pending before the agency until it is withdrawn, dismissed for administrative convenience, or resolved on the merits."). Accordingly, this court does not have subject matter jurisdiction over plaintiff's DCHRA age discrimination claim. Anderson, 552 A.2d at 863; Hogue, 967 F. Supp. at 9-10; see Weiss, 729 F. Supp. at 146.

Because the court does not have subject matter jurisdiction over plaintiff's DCHRA claim, that claim will be dismissed without prejudice to plaintiff seeking leave when and if appropriate to further amend his complaint to reallege his DCHRA age discrimination claim, and to assert facts which establish its timeliness and the existence of subject matter jurisdiction over that claim in this court.

## CONCLUSION AND ORDER

Plaintiff's charge of age discrimination, cross-filed with the DCOHR on November 9, 1999, remains pending with the DCOHR. Consequently, this court is without subject matter jurisdiction over plaintiff's DCHRA claim. Therefore, it is hereby

- 11 -

ORDERED that defendant's motion to dismiss, or in the
alternative for summary judgment [#3], be, and hereby is, GRANTED
in part.  Count I of plaintiff's amended complaint is hereby
DISMISSED without prejudice.

SIGNED this 15th day of April, 2004.


_____
RICHARD W. ROBERTS
United States District Judge

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JUAN R. ESTENOS,

        Plaintiff,

        v.

PAHO/WHO FEDERAL
    CREDIT UNION,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 01ca9125

Judge Natalia M. Combs Greene

Calendar Eleven

Next Event: None Scheduled

### ORDER

## I.   Introduction

This matter is before the Court on defendant's Motion to Dismiss, filed on February 26, 2002. Defendant argues that plaintiff's claim was not brought within the proper statute of limitations. Plaintiff contends that the statute of limitations was tolled when the Equal Employment Opportunity Commission ("EEOC") cross-filed the complaint with the D.C. Office of Human Rights ("OHR"). Determining the significance of the cross-filing, therefore, is the focus of this Order. Since the timeline of events is important in this case, it shall be briefly reviewed.

This suit arises from defendant's termination of plaintiff on August 31, 2000. On September 7, 2000, plaintiff filed a charge of discrimination with the EEOC. On September 14, 2000, the EEOC notified defendant that a charge of discrimination had been filed by plaintiff. The notification called for defendant to submit a statement outlining its position on the allegations. On September 14, 2000, the EEOC also transmitted the charge to the OHR. The transmittal indicated that "[p]ursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC." (Pl.'s Opp'n, Ex. B.) On February 20, 2001, the EEOC made a

determination that "there is reasonable cause to believe that Respondent discriminated against the Charging Party because of his national origin, (Hispanic-Peruvian), and subjected him to disparate treatment, in violation of Title VII of the Civil Rights Acts of 1964…" (Pl.'s Opp'n, Ex. G.) The determination further indicated that the EEOC would "endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion." (Pl.'s Opp'n, Ex. G.) On May 31, 2001, the EEOC forwarded a letter to both parties indicating that the informal methods of conciliation had been deemed unsuccessful. (Pl.'s Opp'n, Ex. J.) On September 14, 2001, the EEOC sent plaintiff notice of his right to sue. (Pl.'s Opp'n, Ex. K.) Plaintiff filed suit on December 14, 2001. Under Count I of his complaint, plaintiff sought recovery under the Human Rights Act for the District of Columbia, D.C. Code Ann. § 2-1401.01 *et seq.* (2002). Under Count II, plaintiff sought to recover under Title VII. (Compl.) The case was then removed to the District Court for the District of Columbia. Defendant filed a motion to dismiss on the grounds that it is not an employer under Title VII because it never employed fifteen or more employees during the period in question.[1] The District Court agreed with this argument and granted this motion.[2] The District Court then remanded Count I to this Court for resolution, finding it to be a matter of first impression.

## II.     Analysis

### A.     Applicable Statute of Limitations

Under the law of the District of Columbia, "[a]ny complaint under this chapter shall be filed with the Office within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof…" D.C. Code Ann. § 2-1403.04(a) (2002). The statute of limitations,

---

[1] The relevant section of Title VII defines employer as, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year…" 42 U.S.C. §2000e.

[2] Apparently, the EEOC did not address this threshold issue in its year-long investigation.

therefore, provides a year for filing the complaint. Within the same section of the D.C. Code, an explanation of the filing process is provided:

> Any person or organization, whether or not an aggrieved party, may file with the Office a complaint of a violation of the provisions of this chapter, including a complaint of general discrimination, unrelated to a specific person or instance. The complaint shall state the name and address of the person alleged to have committed the violation, hereinafter called the respondent, and shall set forth the substance thereof, and such other information as may be required by the Office.

D.C. Code Ann. § 2-1403.04 (a)(2002).

### B.     Tolling of the Statute of Limitations

Under the law of the District of Columbia, "[t]he timely filing of a complaint with the Office ... shall toll the running of the statute of limitations while the complaint is pending." D.C. Code Ann. § 2-1403.16(a) (2002).

### C.     Law Applied to the Instant Case

Defendant argues that the Court should read the language "filing of a complaint" strictly and bar plaintiff's claim. The Court finds defendant's position overly formal and inconsistent with the intent of the relevant legislative provisions.

First, it is true that the Court begins the analysis with the presumption that "[t]he words used [in the statute], even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing." *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C. 1989) (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945) (per Learned Hand, J.). The law of the District of Columbia calls for a complaint to be filed with the OHR within one year of the alleged discriminatory conduct. Plaintiff filed a complaint with the EEOC. This complaint was cross-filed with the OHR. The cross-filing essentially satisfied the requirements of a complaint, under D.C. Code Ann. § 2-1403.04(a), by providing the name and address of the alleged perpetrator of the discriminatory

conduct and outlining the alleged discriminatory conduct. Defendant argues that plaintiff did not

actually file a complaint with the OHR and, consequently, the Court should bar his claim as

falling beyond the statute of limitations.

Complimenting the literal approach, however, is the presumption that the language of the

legislation makes manifest the intent of the legislature. The procedures of the EEOC and the

OHR are intended to encourage the informal resolution of discrimination complaints. *See*, e.g.,

42 U.S.C. § 2000e-5(b) (2002); D.C. Code Ann. § 2-1403.06(b) (2002). Indeed, the purpose of

tolling the statute of limitations is to provide the parties with the necessary time to reach an

informal, nonjudicial resolution. Taking note of this fact, the Court is loath to read D.C. Code

Ann. § 2-1403.16(a) in a manner that punishes plaintiff for pursuing the nonjudicial solution

with the federal equivalent of the D.C. Office of Human Rights. It would certainly work an

injustice if these informal procedures were to become a complicated labyrinth of obstacles

whereby the legally unsophisticated party would be stripped of a remedy for failing to appreciate

the nuances of the law. Indeed, it would also be antithetical to the Worksharing Agreement that

the EEOC and the OHR have reduced to writing.

Under the section entitled, "Filing of Charges of Discrimination," the entities resolved

that "[i]n order to facilitate the assertion of employment rights, the EEOC and the [OHR] each

designate the other as its agent for the purpose of receiving and drafting charges…" (Pl.'s

Opp'n, Ex. C at 1.) Further on in the agreement, the entities also agreed that "[n]otwithstanding

any other provision of the Agreement, the [OHR] or the EEOC may request to be granted the

right to initially process any charge." (Pl.'s Opp'n, Ex. C at 5.) As these passages should make

evident, the relationship can best be described as synergistic. Each has agreed to act as the

other's agent. An elaborate system of interconnectedness binds the one agency to the other in an

4

effort to increase their effectiveness. With this in mind, the Court is hesitant to view a filing

with one agency as wholly unrelated and unconnected with the other, thereby effectively

rewriting the Worksharing Agreement.

Moreover, the policy underlying all statutes of limitations is to ensure fairness to

defendants by protecting them from "stale claims in which the defense is hampered by lost

evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v.*

*Railway Express Agency, Inc.*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring in part and

dissenting in part). These concerns are not present in the case at bar. Plaintiff filed his

complaint with the EEOC one week after he was terminated. Defendant was made aware of the

charges against it two weeks after plaintiff's termination and was called upon to investigate the

charges and make its position known to the EEOC.

In sum, for the purposes of triggering the tolling provision, the Court finds that the EEOC

cross-filing satisfies both the intent and the language of D.C. Code Ann. § 2-1403.16(a).

Accordingly, it is this _3rd_ day of _February_, 2003

**ORDERED** that defendant's Motion to Dismiss is hereby DENIED without prejudice.

**SO ORDERED.**

Natalia M. Combs Greene
Associate Judge

Copies to:

Mindy Gae Farber, Esq.
11300 Rockville Pike
Suite 808
Rockville, MD 20852

Kirsten Elizabeth Keating, Esq.
601 13th Street, N.W.

5

Suite 1000 South
Washington, D.C. 20005-3807

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

BLANCA ZELAYA                                  )
                                               )
            Plaintiff,                         )
                                               )
v.                                             )        Civil Action No. 1:07-cv-02311-RCL
                                               )
UNICCO SERVICE COMPANY, *et al.*,              )
                                               )
            Defendants.                        )
_____)

**ORDER**

Upon consideration of Defendant's Motion to Dismiss, Plaintiff's Opposition to

Defendant's Motion to Dismiss, and the entire record herein, it is this _____ day of _____, 2008,

**ORDERED** that the Defendant's Motion to Dismiss shall be, and hereby is, **DENIED**.

_____
Judge Royce C. Lamberth

Copies to:

Lynne Bernabei, Esquire
David Wachtel, Esquire
Emily Brittain Read, Esquire
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124

        *Counsel for Plaintiff Blanca Zelaya*

Joseph E. Schuler, Esquire
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182

        *Counsel for Defendant UNICCO Service Company*