**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                    )
BLANCA ZELAYA                                          )
                                                                    )
                     Plaintiff,                                 )
                                                                    )
v.                                                                 )          Civil Action No. 1:07-cv-02311-RCL
                                                                    )
UNICCO SERVICE COMPANY, *et al.*,          )
                                                                    )
                     Defendants.                            )
_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
IN OPPOSITION TO DEFENDANTS OSCAR ARGUETA AND CARLOS FERNANDES'
MOTION TO DISMISS**

        Plaintiff Blanca Zelaya, through undersigned counsel, respectfully submits her

Memorandum of Points and Authorities in Opposition to Defendants Oscar Argueta and Carlos

Fernandes' Motion to Dismiss Counts Two and Four of the Complaint (May 12, 2008) (Doc. No.

12) ("Def. Mot.").  This is an action for egregious sexual harassment, sex discrimination, and

retaliation in violation of Title VII and the District of Columbia Human Rights Act ("DCHRA").

        This Court should deny Defendants' Motion to Dismiss Counts Two and Four because

under § 2-1403.16 of the District of Columbia Code, as amended, Plaintiff's DCHRA claim was

timely filed, since the one year statute of limitations was tolled while her complaint was pending

with the District of Columbia Office of Human Rights ("DCOHR").  As set forth in more detail

below, Defendants' support for their argument to the contrary stems from cases decided prior to

these amendments.

**I.    FACTUAL BACKGROUND**

        Plaintiff worked for Defendant UNICCO as a custodian at 1200 K Street in Washington,

D.C., starting in 2004.  Compl. ¶ 9.  Throughout her employment, Defendants subjected Plaintiff

to egregious and systematic sexual harassment.  When Plaintiff complained, Defendants

retaliated against her.  Plaintiff was pregnant when Defendants began sexually harassing and

retaliating against her, and the Defendants' actions caused Plaintiff extreme emotional and

physical stress, resulting in the premature birth of her son.  Id. ¶ 14.

On or about January 4, 2005, Defendant UNICCO promoted Defendant Carlos Alarcon to

the position of Building Operations Manager at 1200 K Street.  Id. ¶ 13.  As Manager,

Defendant Alarcon supervised Ms. Zelaya.  Id.  Almost immediately after he became Plaintiff's

supervisor, Defendant Alarcon began making offensive and unwelcome sexually explicit

comments and sexual advances toward her, including running his hands down her back or

against her shoulders and repeatedly commenting on her appearance.  Id. ¶ 15.

Throughout the Spring of 2005, Defendant Alarcon repeatedly cornered Ms. Zelaya in a

storage room while she was working.  Id. ¶¶ 16-17.  Once he had trapped her in the storage

room, Defendant Alarcon would hug her and put his hands on her body.  Id.  On one occasion in

March of 2005, Defendant Alarcon cornered Ms. Zelaya in the storage room and told her he

found pregnant women "hot" and "horny," and that if she did not have someone who could

satisfy her sexually that he would be happy to do it for her.  Id. ¶ 17.

Defendant Alarcon's sexual advances made Ms. Zelaya extremely uncomfortable and

fearful for her safety and the safety of her unborn child.  Id. ¶ 19.  She made clear to Defendant

Alarcon that his sexual advances were offensive and unwelcome, and that if he did not stop

touching her and making comments about her body, she would report him to UNICCO

supervisors.  Id. ¶ 17.  Defendant Alarcon ignored her protests and made clear to her that he

would continue to harass her because Defendant UNICCO's attorneys would protect him.  Id.

UNICCO employees at 1200 K Street regularly witnessed Defendant Alarcon's sexual

harassment of Plaintiff.  Id. ¶ 20.  Indeed, other employees would warn Plaintiff when Alarcon was in the building, so that she could hide from him.  Id.  In the Spring of 2005, Alarcon enlisted the support of UNICCO's Site Manager, Defendant Oscar Argueta, to monitor Ms. Zelaya's actions and whereabouts.  Id. ¶ 21.  In collaboration with Defendant Alarcon, Defendant Argueta unsuccessfully attempted to have Plaintiff terminated.  Id. ¶ 22.

During the last trimester of Ms. Zelaya's pregnancy, in March of 2005, Defendants UNICCO and Alarcon retaliated against her for protesting Defendant Alarcon's advances by cutting off her health insurance. Id. ¶¶ 24, 27.  When Ms. Zelaya informed Defendant Alarcon that her health insurance had been cancelled, he said there was nothing he could do to restore her coverage.  Id. ¶ 25.  In April of 2005 Plaintiff's union representative requested that UNICCO restore Plaintiff's health insurance, but Defendants ignored the request.  Id. ¶ 26.  Ms. Zelaya paid for most of her medical expenses out-of-pocket during the last stages of her pregnancy, because UNICCO did not restore her health coverage.  Id. ¶ 29.

The stress from Defendants' harassment took a severe toll on Ms. Zelaya's health during and after her pregnancy.  Id. ¶ 28.  As a result, starting on May 18, 2005, she took extended leave from her job and gave birth to her child prematurely.  Id. ¶ 28.

Ms. Zelaya returned to work in August of 2005, after recovering from the difficult birth of her child.  Defendant Alarcon resumed his campaign of sexual harassment.  Id. ¶ 31.  Ms. Zelaya again repeatedly told Defendant Alarcon that his advances were unwelcome and offensive, but he continued his comments and advances, and warned her that he would fire her if she reported him.  Id. ¶¶ 31, 33.

Defendant Alarcon also enlisted the help of Defendant Carlos Fernandes, another UNICCO employee at 1200 K Street, to harass Plaintiff.  On March 15, 2006, Defendant

Fernandes issued trumped-up disciplinary notices claiming that a resident of the building had complained about Ms. Zelaya's work. Id. ¶¶ 35-37. The notices were utterly false and clearly intended to harass and retaliate against Plaintiff. The customer who allegedly complained later wrote a letter denouncing the contents of the disciplinary notices and complimenting Plaintiff's work, but Defendant Fernandez refused to revoke the disciplinary notices. Id. ¶¶ 39, 40.

Defendant Alarcon's harassment continued throughout the Spring of 2006. On one occasion he told Ms. Zelaya that he thought she had a "pretty ass" and it was "too bad" it was not his. Id. ¶ 41-45. He also told her to keep her mouth shut about the harassment, and again warned her that he would have her fired if she did not accede to his sexual advances. Id. Defendants Fernandes and Alarcon continued to pressure Plaintiff and threaten her with further retaliation if she complained. Id.

On April 14, 2006, Iva Burwood, a Human Resources representative from UNICCO, met with Plaintiff to discuss Defendant Alarcon's harassment. Id. ¶ 46. Ms. Burwood does not speak Spanish and Ms. Zelaya has limited English proficiency, but Ms. Burwood refused to provide an interpreter or to allow Ms. Zelaya's attorney to be present. Id. ¶¶ 47-48. It became clear that Ms. Burwood intended to sweep Plaintiff's complaints under the rug. Ms. Burwood repeatedly asked Ms. Zelaya if she had told the truth about Defendant Alarcon's harassment, and told Ms. Zelaya that she would get in trouble if she had lied. Id. ¶ 49.

Defendant UNICCO's retaliation escalated after Plaintiff's meeting with Ms. Burwood, and became even worse after Plaintiff filed a discrimination complaint against the Defendants with the D.C. Office of Human Rights ("DCOHR") on April 14, 2006. Id. ¶ 50. Even after Plaintiff informed Defendant UNICCO that she was represented by counsel, Defendant harassed Plaintiff by attempting to meet with her without her attorney present. Id. ¶¶ 54-58.

Defendant UNICCO's retaliation culminated in its termination of Ms. Zelaya by transferring her to another building, where Defendant knew it would soon lose the maintenance contract.  Id. ¶¶ 63-64.  Indeed, shortly after Defendant transferred Plaintiff to the new building, Defendant lost its contract on the building, and a new company, Cavalier, took over the contract. Id. ¶ 66.  Cavalier then constructively discharged Plaintiff by offering her a work schedule that was too late in the day to allow her to take care of her son, even though other positions were available.  Id. ¶¶ 68-69.  Upon information and belief, Defendants made false and defamatory statements about Plaintiff, which caused Cavalier to offer the untenable work schedule, thereby constructively discharging her.  Id.

Plaintiff's April 14, 2006 DCOHR complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 50.  Plaintiff withdrew the Complaint from DCOHR on November 21, 2007 and requested a Right to Sue Notice from the EEOC, which the EEOC issued on December 5, 2007.  On December 21, 2007, Plaintiff filed the Complaint in this matter.

## II. **STANDARD OF REVIEW.**

A motion to dismiss for failure to state a claim upon which relief can be granted is viewed with disfavor and is rarely granted.  Doe v. United States Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all of the factual allegations in the complaint.  Erickson v. Pardus, 551 U.S. __, 127 S. Ct. 2197, 2200 (2007) (per curiam); Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1964-65 (2007).  The court construes the complaint liberally in the plaintiff's favor and grants the plaintiff the benefit of all inferences that can be derived from the facts alleged.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see

also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Sparrow v.United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the Plaintiff. Doe, 753 F.2d at 1102. There is no probability of success requirement at the pleading stage. Bell Atlantic Corp., 127 S. Ct. at 1965, but "something beyond ... mere possibility ... must be alleged[.]" Id. at 1966. The facts alleged in the complaint merely "must be enough to raise a right to relief above the speculative level," id. at 1965, or sufficient "to state a claim for relief that is plausible on its face." Id. at 1274.

### III. LEGAL ARGUMENT.

#### A. Ms. Zelaya named Defendants Argueta and Fernandes in her charge of discrimination.

Plaintiff filed her initial charge of discrimination with the DCOHR on April 14, 2006. The DCOHR's "Complaint Form" does not provide a space to list individual respondents, but states that the factual portion of the complaint should "list… the name(s) of the person(s) who discriminated against you…" See Exhibit A at 6 (Plaintiff's Complaint Form and accompanying Declaration of Blanca Zelaya, dated April 14, 2006). Plaintiff specifically and repeatedly named Defendants Argueta and Fernandes in the declaration attached to her initial charge and in the subsequent amendments to that charge. See, e.g., id., Declaration of Blanca Zelaya at ¶¶ 5, 8. Defendants' assertion that Argueta and Fernandes were not named as respondents is therefore plainly wrong. Def. Mot. at 3, 8.

#### B. Ms. Zelaya timely filed her DCHRA claims in this Court.

Plaintiff's April 14, 2006 charge tolled the running of the statute of limitations on her allegations of discrimination that occurred within the year prior to date she filed the charge. The statute of limitations began to run again when the DCOHR granted her request to withdraw her

charge from the administrative process on November 14, 2007. She filed suit five weeks later,

on December 21, 2007. Plaintiff's complaint therefore incorporates all of the Defendants'

numerous discriminatory and retaliatory acts after June 21, 2005.

Earlier discriminatory and retaliatory acts are also within the scope of this lawsuit

because the continuing violations doctrine applies to Plaintiff's hostile work environment claims.

See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). Under Morgan, the

continuing violations theory applies when the defendants' unlawful conduct "is composed of a

series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at

117. The claim's "very nature involves repeated conduct," and it is based on the "cumulative

effect of individual acts." Id. at 115.

The D.C. Court of Appeals adopted the Morgan continuing violations analysis in Lively

v. Flexible Packaging Ass'n, 830 A.2d 874 (D.C. 2003), which also construed the D.C. Human

Rights Act. The Lively Court concluded that the continuing violations theory applies when the

plaintiff is subjected to "one unlawful employment practice" continuing over time, id. at 890,

and that a single act occurring within the limitations period is enough to make "'the entire time

period'" count "'for the purposes of determining liability.'" Id. (quoting Morgan, 536 U.S. at

117.

Here, Defendants' sexual harassment campaign began when Defendant UNICCO hired

Defendant Alarcon, and ended when Plaintiff no longer worked for Defendant UNICCO.

Therefore, any one of the Defendants' numerous harassing and retaliatory acts occurring after

June 21, 2005 is enough to make "'the entire time period of the hostile environment'" count "'for

the purposes of determining liability.'" Id.

**1.  The DCHRA provides for tolling during the administrative process.**

From its inception until 1997, the DCHRA provided for a one year statute of limitations. Employees could file administrative charges, but filing an administrative charge had no effect on the statute of limitations for a civil action.  See Historical and Statutory Notes to D.C. Code § 2-1403.16 (formerly cited as D.C. Code 1981 § 1-2556).

In the Human Rights Amendment Act of 1997 (Act 12-143), the D.C. Council amended the DCHRA to add a tolling provision during the DCOHR administrative process.  In 2002 that provision was further amended to provide for tolling during any administrative process, whether before DCOHR or EEOC.  The private right of action provision now states in relevant part:

> A private cause of action pursuant to this act shall be filed in a court of competent jurisdiction within 1 year of the unlawful discriminatory practice, or the discovery thereof  . . . The timely filing of a complaint with the Office… **shall toll the running of the statute of limitations while the complaint is pending**.

D.C. Code § 2-1403.16(a) (formerly codified as D.C. Code 1981 § 1-2556(a)) (emphasis added). Therefore, Plaintiff's charge of discrimination with the DCOHR tolled the statute of limitations on all of her allegations of discrimination that occurred within the year prior to date she filed the charge.

This Court, citing Griffin, recently recognized that "the one-year limitations period is tolled when a complaint is pending before the District of Columbia Office of Human Rights." Bailey v. Verizon Communications, Inc., --- F.Supp.2d ----, Civil Action No. 07-1494 (RCL), 2008 WL 1723960, at *4 (D.D.C.) (April 14, 2008).

Defendants wrongly rely on cases decided before the DCHRA was amended to argue that Plaintiff's DCHRA claims are time barred.  Specifically, Defendants rely on five cases decided before the DCHRA was amended on October 23, 1997.  Def. Mot. at 5, citing Anderson v.

8

United Safe Deposit Co., 552, A.2d 859 (D.C. 1989); Davis v. Potomac Elec. Power Co., 449 A.2d 278 (D.C. 1982); Katradis v. Dav-El of Washington, D.C., 846 F.2d 1482 (D.C. Cir. 1988); Def. Mot. at 7, citing Weiss v. Int'l Bhd. of Elec. Workers, 759 F. Supp. 144 (D.D.C. 1990); Clifton v. Fed. Nat'l Mortgage Ass'n, 1998 WL 419741 (D.D.C. 1998).  These pre-amendment cases are irrelevant to this Court's analysis.

Defendants also cite Kamen v. Int'l Bhd of Elec. Workers, 505 F. Supp. 2d 66 (D.D.C. 2007) and Coleman v. Potomac Electric Power Co., 2004 WL 2348144 (D.C. Cir. 2004) affirming 310 F. Supp. 2d 154 (D.D.C. 2004).  In both cases, the courts mistakenly relied on the same pre-1997 precedent Defendants use here, specifically Anderson, and incorrectly held that the DCHRA statute of limitations was not tolled during the administrative process.  Coleman is an unreported summary affirmance.  Plaintiff Coleman was pro se in this Court and in the D.C. Circuit.  Coleman v. Potomac Electric Power Co., Civ. Act. No. 1:03CV01202 (D.D.C.).  Coleman has been cited for this point exactly once, in Kamen.  505 F. Supp. 2d at 76.

The unambiguous language of the DCHRA is clear, and courts have repeatedly held that the DCHRA's statute of limitations is tolled during the pendency of a claim before an administrative agency.  See, generally, Aigret v. Compass Group North America, Inc., et al., C.A. No. 01-CA-1650 (D.D.C. April 15, 2004) (attached hereto as Exhibit B); Estenos v. PAHO/WHO Federal Credit Union, 131 Daily Wash. L. Rptr. 537 (D.C. Super. Ct. Mar. 19, 2003) (attached hereto as Exhibit C).

### 2.  Voluntary withdrawal of a complaint does not eviscerate the protection of tolling.

Once filed, a DCHRA charge can end in one of three ways: (1) the employee can withdraw the complaint; (2) the DCOHR can dismiss the complaint for administrative convenience; or (3) the DCOHR can reach a conclusion on the merits of the complaint.  D.C.

Code § 2-1403.16(a). If the DCOHR reaches a conclusion on the merits, the employee can

appeal to the D.C. Court of Appeals but cannot obtain a trial <u>de novo</u>. D.C. Code § 2-1403.14

(authorizing judicial review of DCOHR decisions in accordance with D.C. Code § 2-510(a):

"The Court shall hear and determine all appeals upon the exclusive record for decision before the

Mayor or the agency."). However, if the complaint is terminated in either the first or second

ways, the employee is entitled to trial <u>de novo</u>. D.C. Code § 2-1403.16(a) ("where the [DCOHR]

has dismissed such complaint on the grounds of administrative convenience, or where the

complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if

no complaint had been filed.").

        The District of Columbia courts have repeatedly held that a plaintiff may elect to bring

her DCHRA claim in court once the DCOHR has dismissed it on grounds of administrative

convenience *or* Plaintiff has withdrawn her complaint from the DCOHR. <u>See</u>, <u>e.g.</u>, <u>Kensil v.

Union Labor Life Insurance Co.</u>, C.A. No. 05-CA-7313, at 3 (D.C. Super. Ct. July 31, 2006);

<u>Adams v. Howard University</u>, C.A. No. 00-CA-7610 (D.C. Super. Ct. April 27, 2004) (DCHRA

statute of limitations tolled while "complaint is pending before the EEOC"); <u>Aigret</u>, C.A. No. 01-

CA-1650 (Exhibit B); <u>Vitikacs v. The American Legion</u>, 2003 WL 22004935 *3, n. 2 (D.C.

Super. Ct. June 8, 2003); <u>Estenos</u>, 131 Daily Wash. L. Rptr. 537 (Exhibit C).

        Employees were entitled to trial <u>de novo</u> before the 1997 amendments. <u>See</u>, <u>e.g.</u>, <u>Parker

v. National Corp. for Housing Partnerships</u>, 697 F. Supp. 5 (D.D.C. 1988) (aggrieved party who

has filed complaint with DCOHR may file complaint in a court of competent jurisdiction only

when DCOHR dismisses complaint on ground of administrative convenience or when

complainant withdraws complaint before DCOHR renders administrative decision); <u>Held v.

National R.R. Passenger Corp.</u>, 101 F.R.D. 420 (D.D.C. 1984) (where employee withdrew

discrimination complaint which he had filed with the DCOHR, he was entitled to maintain

judicial action); <u>Brown v. Capitol Hill Club</u>, 425 A.2d 1309 (D.C. 1981) (where DCOHR

dismisses a complaint on grounds of administrative convenience, or where the complainant

withdraws his complaint before an administrative decision is rendered, such person retains the

right to file a complaint in court).

The statutory basis for <u>de novo</u> litigation of withdrawn claims is D.C. Code § 2-

1403.16(a), which states in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a
> cause of action in any court of competent jurisdiction for damages and such other
> remedies as may be appropriate, unless such person has filed a complaint hereunder;
> provided, that where the [D.C.] Office [of Human Rights] has dismissed such complaint
> on the grounds of administrative convenience, or where the complainant has withdrawn a
> complaint, such person shall maintain all rights to bring suit as if no complaint had been
> filed.

Defendants twist the meaning of this sentence to suggest that it is actually an evisceration of the

tolling provision. Def. Mot. at 6-7. This twisted meaning is utterly illogical. Tolling is

irrelevant to appeals from administrative decisions because the D.C. Court of Appeals has set a

thirty (30) day period for filing an appeal. D.C. Code § 2-510 (D.C. App. Rule 26). If the tolling

provision has no effect when the employee withdraws the complaint, and has no effect when the

DCOHR dismisses the complaint for administrative convenience, then the tolling provision is of

no use to anyone. Plaintiff is aware of no decision, and Defendants have not cited any such

decision, adopting Defendants' reading of D.C. Code § 1403.16(a). As noted above, courts have

repeatedly held that, to the contrary, the tolling provision is effective. <u>See</u>, <u>e.g.</u>, <u>Vitikacs</u>, 2003

WL 22004935 *3 n. 2; <u>Estenos</u>, 131 Daily Wash. L. Rptr. 537; <u>Adams</u>, C.A. No. 00-CA-7610;

<u>Kensil</u>, C.A. No. 05-CA-7313 at 3.

### 3. Rules of statutory construction also favor allowing Plaintiff's DCHRA claims to go forward.

The meaning of the DCHRA's tolling provision and entitlement to trial <u>de novo</u> is clear. But to the extent that the DCHRA's meaning is even arguably ambiguous, this Court should follow the rules of construction providing that, "[w]here two constructions as to the limitations period are possible, the courts prefer the one that gives the longer period in which to prosecute the action… 'If there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge.'" <u>Lively v. Flexible Packaging Assoc.</u>, 830 A.2d 874, 877 (D.C. 2003) (<u>en banc</u>), quoting <u>Simpson v. District of Columbia Office of Human Rights</u>, 597 A.2d 392, 401 (D.C. 1991). District of Columbia courts adopt a construction that favors the complaining party in order to reflect the importance of the civil rights secured by the DCHRA, and the importance of a private suit in helping to fulfill the Act's commitment to civil rights. <u>See</u> <u>Simpson</u>, 597 A.2d at 402; <u>see also</u> <u>Executive Sandwich Shoppe, Inc., v. Carr Realty Corp.</u>, 749 A.2d 724, 731 (D.C. 2000) ("[w]e have specifically stated on several occasions that the DCHRA is a remedial civil rights statute that must be generously construed."). Thus, if this court were to find any ambiguity in the DCHRA's tolling provision and right to trial <u>de novo</u>, it should still construe this provision in Plaintiff's favor and find that her complaint was timely filed.

### IV. <u>CONCLUSION.</u>

This Court must deny Defendants' Motion to Dismiss Counts Two and Four, because Plaintiff's DCHRA claims were timely filed.

Respectfully submitted,


_____/s/_____
Lynne Bernabei  # 938936
David Wachtel  # 427890
Emily Read  # 492773
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorneys for Blanca Zelaya

DATED: May 27, 2008

# COMPLAINT FORM

Information required herein will assist OHR staff to determine the nature and extent of discrimination as defined by the Federal/Local Discrimination Laws. Please complete the following form in its entirety and to the best of your knowledge. This form is subject to review and acceptance by the Office of Human Rights.

*Notice of Non-Discrimination*

*In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Official Code Section 2-1401.01 et seq., (Act) the District of Columbia does not discriminate on the bases of actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, familiar status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence or business. Sexual harassment is a form of sex discrimination, which is also prohibited by the Act. In addition, harassment based on any of the above-protected categories is also prohibited by the Act. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.*

## 1. COMPLAINANT

| | | |
|---|---|---|
| **Date:** 4/14/06 | **OHR Docket No.:** | **EEOC No.:** |

**Name:** Blanca E. Zelaya

**Address:** 655 Girard Street, N.E.

**City/State/Zip:** Washington, DC  20017

**Tel # (H):** 202-529-0278    **Tel # (W):** 202-842-1200

**Race:** Hispanic    **Sex:** Female

**Social Security No.:** 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

The Primary Language Spoken in your household:
_x_Spanish __Amharic __Chinese __Vietnamese __Korean __Other

**Date of Birth:** 09-11-74

**CONTACT PERSON IF YOU CANNOT BE REACHED:**

**Name:** Reina Velasquez

**Address:** 655 Girard Street, N.E.

**City/State/Zip:** Washington, DC  20017

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC  20001
202-727-4559  *Fax 202-727-9589
Complaint Form

1

rev 02/06

| **Tel # (H):** 202-529-0278 | **Tel # (W):** 202-842-1200 |
|---|---|

**IF REPRESENTED BY COUNSEL, PLEASE PROVIDE THE FOLLOWING:**

**Name:** Lynne Bernabei    **Telephone/Fax:** 202-745-1942/202-745-2627

**Address:** 1773 T Street, NW, Washington, DC   20009

*Please note: If you are represented by counsel or retain counsel prior to your scheduled Intake interview, the counsel must either (1) be present with you for the duration of your Intake interview, or (2) withdraw his/her appearance from the interview by submitting a letter to the Office indicating that the interview may take place without his/her representation.

## 2. RESPONDENT

**Name of company or organization:**
UNICCO Service Company

**Name and Title of principal officer (i.e. President, Owner, Human Resources Manager):**
Steven Kletjian, Chairman & CEO

**Nature of Business:**
Facility Services including maintenance and cleaning

**Address:**
275 Grove Street

**City/State/Zip:**
Newton, MA   02466

| **Tel #:** 800-283-9222 | **Fax #:** 617-969-2210 |
|---|---|

## 3. BASIS OF COMPLAINT
### The basis is the reason you were treated differently than others outside of your protected class.

**Do you feel you were discriminated against because of your: (Please check appropriate box and provide detail, if necessary.)**

| | | |
|---|---|---|
| ☐ Race _____ | ☒ Sex ___Female___ | ☐ Age _____ |
| ☐ National Origin _____ | ☐ Religion _____ | |
| ☐ Color _____ | ☐ Disability _____ | ☐ Familial Status* |
| ☐ Source of Income* | ☐ Matriculation | ☐ Marital Status |
| ☐ Personal Appearance | ☐ Genetic Information | ☐ Sexual Orientation |
| ☐ Gender Identity or expression | ☐ Place of Residence or Business* | ☐ Political Affiliation |
| ☐ Family Responsibilities | | |

* Please note: Pursuant to the D.C Human Rights Act of 1977, as amended, the "familial status" and "source of income" bases are applicable only when alleging discrimination in housing, public accommodations and educational institutions. The basis of "place of residence or business" is applicable only if alleging discrimination in housing and public accommodations.

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC  20001
202-727-4559  *Fax  202-727-9589
Complaint Form

2

rev 02/06

## 4. JURISDICTION

☒ Alleged violation occurred in the District of Columbia.

☒ Alleged violation occurred 365 days or less (6 months or less for D.C. Government Employees).

☒ At least 1 employee (More than 15 employees to cross file with EEOC).

☒ You have not commenced any other action, civil, criminal, or administrative in any other forum based on the same unlawful discriminatory practice described herein.

## 5. AREA OF COMPLAINT

☒ Employment          ☐ Public Accommodation          ☐ Educational Institution

☐ Language Access          ☐ DC Family and Medical Leave Act

## 6. ISSUES
### What action was taken that made you feel you were treated differently?

☐ Family Medical Leave      ☐ Promotion      ☐ Transfer      ☐ Demotion      ☐ Discharge

☒ Retaliation      ☒ Sexual Harassment      ☒ Hostile Work Environment      ☐ Failure to Hire

☐ Equal Pay      ☐ Terms and Conditions      ☐ Failure to Accommodate      ☐ Discipline

☐ Denial of Service      ☐ Constructive Discharge      ☐ Admission or Admission Fees      ☐ Discounts

☐ Crowd Capacity      ☐ Personal Identification      ☐ Time of day/event      ☐ Restrictions/Rules

☐ Credit/Insurance      ☐ Complimentary Admission/Guest      ☐ Curriculum

☐ Membership Fee/Dues      ☐ Program Participation

Other: _____

## 7. DISTRICT OF COLUMBIA GOVERNMENT EMPLOYEES OR APPLICANTS

*Please note: Pursuant to §105 of DCMR Title IV, all District Government employees must first consult an agency EEO counselor within 180 days of the alleged discriminatory act prior to filing with the Office of Human Rights, *unless* the District Government employee is alleging unlawful discrimination based on sexual harassment. The Office of Human Rights cannot process a complaint from a current or former District Government employee unless (1) the employee has received an exit letter from his/her agency EEO Counselor; (2) twenty-one days have passed since the matter was called to the attention of the agency's

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC  20001
202-727-4559  *Fax  202-727-9589
Complaint Form                                                                rev 02/06

EEO counselor and no exit letter has been written; or (3) the employee is alleging unlawful discrimination based on sexual harassment.

☐    You have filed an informal complaint with an agency assigned EEO Officer/ Counselor.

Counselor's Name: _____

Counselor's Agency: _____

Counselor's Telephone Number: _____

Date Filed: _____    Date of Exit Letter: _____

## 8. EMPLOYMENT
### Time of Hire, Evaluations, Discipline, Termination

Date of Hire: __2001_____ · Title: __Janitor_____

Salary at time of hire: __$9.50 per hour___

Date of Last Performance Evaluation: __N/A_____

Supervisor/Manager who performed the Evaluation: ____N/A_____

Last Performance Evaluation Rating: ☐Excellent ☐ Good ☐ Fair ☐Poor

Alleged adverse actions taken against you (i.e., written reprimand, suspension, denial of promotion) and the date the action was taken:

Action: __written reprimand_____    Date: __3/15/06_____
Action: __written reprimand_____    Date: __33/15/06_____

☒    **Current** or ☐ **Final** position held with Respondent: __Janitor_____
       Salary: __$10.10 per hour___

What reason did Respondent give for your ☐**termination** or ☐**denial of promotion**:

☐ Work Performance ☐ Attendance ☐ Insubordination ☐ Gross Misconduct

Date of Termination/Denial of Promotion: _____

## 9. PUBLIC ACCOMMODATION/EDUCATIONAL INSTITUTIONS
### (Only complete section if your complaint deals with discrimination against a public accommodation or educational institution.)

Date of alleged incident: _____

Service you requested: _____

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559 *Fax 202-727-9589
Complaint Form

4

rev 02/06

Person who denied your service request:

Name: _____ Title: _____

How is this person different from you (i.e. what is this person's protected basis?):

_____

Have you tried to resolve this matter with the Respondent? If so, please describe with whom you spoke and their response:

_____

_____

_____

_____

## 10. D.C. FAMILY AND MEDICAL LEAVE ACT
### (Only complete section if your complaint deals with FMLA.)

Have you been employed with this company for at least one (1) year and have worked at least one thousand (1,000) hours?
☐ **YES**     ☐ **NO**

Date(s) you requested: _____

Reason you requested: _____

Person who denied your request: _____

Title: _____

Others who have requested leave: _____

_____

How are these persons different from you: _____

_____

Have you tried to resolve this matter with Respondent? If so, please describe with whom you spoke and their response:
Name/Title: _____

_____

_____

_____

_____

_____

_____

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559 *Fax 202-727-9589
Complaint Form                                                            rev 02/06

5

## 11. WITNESSES

List whom you feel can corroborate your experience and provide evidence in your support.

Name: Ramon Alberto Gaitan
Title: Day POrter
Telephone: 202-439-3476
What s/he can attest to: Mr. Alarcon's hostile and aggressive behavior towards Ms. Zelaya.

Name: Sarah LaRose
Title: Manager of Building Security
Telephone: 202-842-1230
What s/he can attest to: Mr. Alarcon's hostile behavior towards Ms. Zelaya. Recent statements made by Mr. Alarcon when he is looking for Ms. Zelaya.

Name: Christine DeSantis
Title: Assistant to Building Manager
Telephone: 202-966-7491
What s/he can attest to: Ms. Zelaya has never had a complaint lodged against her by tenants in the building.

Name: Sharon Cheek
Title: Building Tenant
Telephone: 202-329-4000 x3121
What s/he can attest to: She wrote a letter to building management notifying them that she had not filed any complaints against Ms. Zelaya.

## 12. YOUR COMPLAINT

Describe in detail the incident(s) that led you to file a complaint of discrimination. Please list dates as well as the name(s) of the person(s) who discriminated against you in denying employment, promotion, training, goods, services, educational services, etc. If this is a disability-based complaint, please specify whether an accommodation was requested; the person the request was submitted to and the date Respondent was notified of your disability.

Please see accompanying Declaration.

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559 *Fax 202-727-9589
Complaint Form

6

rev 02/06

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559 *Fax 202-727-9589
Complaint Form

7

rev 02/06

The D.C. Office of Human Rights provides mediation. Mediation is a process in which an acceptable, impartial, third party attempts to assist disputing parties toward a mutual settlement. Two (2) mediators (co-mediators) are assigned to each case as a neutral third party to assist disputants in reaching a mutually acceptable resolution to their problem(s). The mediation process is mandatory and disputing parties design solutions to their own problems.

**Please Note:** In the event the Investigation reveals that your complaint should be dismissed you will receive a letter explaining the reasons for dismissal. Applicable regulations also require the OHR to send a copy of the dismissal notice to the Respondent.

_____          4-14-06
Complainant's Signature                        Date

I, _____, having read the above, state that the responses contained herein are true and correct to the best of my knowledge and belief.

_____
Signature

SUBSCRIBED AND SWORN to before me this _____ day of _____, of 20___.

_____
Notary Signature

My Commission Expires: _____.

## DECLARATION OF BLANCA ZELAYA

I, Blanca Zelaya, this 14th day of April 2006, am submitting this declaration in support of my claims against the UNICCO Services Company ("UNICCO") for sexual harassment, creation of a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., and against UNICCO and Carlos Alarcon, Operations Manager, for sexual harassment, sex discrimination, and unlawful retaliation in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 1-2501 et seq.

1.    Since 2001, I have been serving as a janitor in the office building at 1200 K Street NW. I was initially employed by P&R Enterprises. UNICCO took over the cleaning contract for the building in December 2004, at which time I became a UNICCO employee. At that time, UNICCO appointed Carlos Alarcon as the building operations manager and supervisor of the two employees responsible for cleaning the building, Ramon Alberto Gaitan and myself.

2.    Almost immediately upon becoming my supervisor, Mr. Alarcon began making sexually explicit comments and sexual advances toward me. These sexual advances and sexual comments, which are offensive and unwelcome, continued, despite my protests. When Mr. Alarcon became my supervisor in December 2005, I was pregnant. He would regularly make comments about my body and my appearance. On one occasion, in March 2005, Mr. Alarcon cornered me in a storage closet, and told me he found pregnant women more "hot" and "horny." He told me that if I did not have someone who could satisfy me sexually that he would be happy to do it for me. Throughout this time, he also touched me in a sexually suggestive manner that made me

extremely uncomfortable, and apprehensive about my safety and that of my unborn child. He frequently ran his hands down my back or against my shoulders. On more than one occasion, in February and March 2005, he led me into a storage room on the pretense that he needed my help to check the inventory supplies, and then proceeded to try to put his hands all over my body.

3.    I always refused Mr. Alarcon's advances and told him that I wanted him to stop touching me and making comments about my body or my appearance. I made it clear to him that his sexual advances were unwelcome and frightening to me. I asked him to be more respectful of me. I made excuses to get away from him when he cornered me and I began hiding from him when I knew he was going to be on-site, because he had made it clear that he was not going to stop harassing me. In March 2005, I told him that if he did not stop, I would report him. He told me that UNICCO had attorneys and I could not prove anything. He also threatened me by telling me that he had the power to get rid of me.

4.    In late March 2005, during the last trimester of my pregnancy, my health insurance company informed me that I was no longer covered because UNICCO had stopped making the payments. When I called Mr. Alarcon to inform him that my health insurance had been cancelled he told me there was nothing he could do for me. The union to which I belong wrote a memo to the company on April 21, 2005 stating that I was entitled to health coverage and requesting that it be immediately restored. *See Memo, attached hereto as Exhibit A.* In May 2005, I asked Mr. Alarcon why my health insurance had been cancelled. He told me "this is happening to you because you did not give in to me" and that he could not help me. UNICCO did not restore my health

2

coverage until August 2005.

5.    In the spring 2005, Mr. Alarcon enlisted, Oscar Argueta, the full-time on site manager at 1200 K Street to monitor me and report back to him. Mr. Argueta tried to set me up for termination, but in the end was removed from his own job because the building manager (who is not a UNICCO employee) intervened on my behalf.

6.    As a result of the stress and anxiety caused by Mr. Alarcon and by UNICCO I faced significant emotional and physical problems including serious complications with my pregnancy. I gave birth on May 25, 2005, three weeks before my expected due date. I took two months unpaid leave and paid for much of my medical expenses out-of-pocket, because UNICCO did not restore my health coverage until August 2005.

7.    Upon my return to work in August 2005, Mr. Alarcon resumed making comments about my appearance and my body. He told me that he still found me beautiful and not fat. He frequently told me that he thought that when women get pregnant they turn fat and ugly, but that he did not see that in my case. I told Mr. Alarcon that his comments were inappropriate and made me uncomfortable, but he would not take me seriously. He once responded that I am prettier when I keep my mouth shut. As recently as March 24, 2006, Mr. Alarcon commented that he thinks I have a "pretty ass." When he arrives in the building he frequently demands from security, "here I am, where is she" or "I am looking for her ass." On these occasions security calls to warn me that he is in the building and looking for me. His comments and sexually-charged behavior have always and continue to make me nervous and cause my great stress and humiliation.

3

8.      He has now turned to relying on the new on-site manager, Carlos Fernandez, to monitor me.  On March 15, 2006 I was issued two progressive discipline notices and told that I would be fired if anything else happened.  The first notice stated falsely that a customer had complained that I was not cleaning the glass doors in the afternoon, and the second notice claimed falsely that I had harassed a customer by confronting her about her complaint.  The allegations against me that formed the basis for the disciplinary notices were false.  Sharon Cheek, the tenant in the building, who allegedly reported the incidents, wrote a letter disavowing any statements attributed to her.  Ms. Cheek wrote: "In closing, [Blanca] has been very responsible with keep (sic) the double doors clean, she is always friendly, reliable and dependable and she have never approached me in a threatening or confrontational manner." *Letter from S. Cheek to R. Fuller (March 20, 2006), attached hereto as Exhibit B.*

9.      I have cleaned the offices at 1220 K Street for over five years and I have never received a disciplinary notice or had a tenant file a complaint against me.  Mr. Alarcon is retaliating against me because I did not give into his sexual advances, asked him to stop, and threatened to report him.  In fact, Mr. Alarcon made it clear that he would seek to have me fired if I did not respond to his sexual advances.

10.     Because of this harassment and retaliation against me, I have suffered a great deal of pain, anxiety, and humiliation.  I have also suffered financially because UNICCO discontinued my health coverage during the last months of my pregnancy.

4

I declare, this 14th of April 2006, that the forgoing is true and correct to the best of my
knowledge, information and belief

BLANCA ZELAYA



**LOCAL 82**

**SEIU**

**Stronger Together**

VALARIE P. LONG
President

JAIME CONTRERAS
Secretary-Treasurer

LOCAL 82
SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO, CLC

www.seiu82.org

Washington, D.C
910 17th Street, N.W.
11th Floor
Washington, D.C. 20006
202.789.8282
Fax: 202.289.4679

Baltimore
609 N. Eutaw Street
Baltimore, MD 21202
410.332.1600
Fax: 410.332.1988

Montgomery County
911 Silver Spring Avenue
Suite 107
Silver Spring, MD 20910
301.562.9301
Fax: 301.562.9617

| Date: | April 21, 2005 |
|---|---|
| To: | Barbara/ Employee Benefits |
| Fax: | 703 527-6402 |
| From: | Vladimir Monge |
|  | SEIU Local 82 |
| Re: | Health Coverage for Blanca Zelaya |

Per our conversation today, I am attaching a copy of the Job History of Blanca Zelaya, SSN 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, according to Union records.

Mrs. Zelaya has been a member of this union since 2001 when she started working for P & R at the same location where she currently works. Unicco took over that building on 12/20/04.

In accordance with the Contract, employees don't lose any benefits already accrued. We are aware that Mrs. Zelaya has already faxed to you copies of her pay stubs from the first months of 2004 which by itself proves that she has been a full time worker long before UNICCO took over that building.

If you need further information please call me at 202 789-8282.

Thank you.

**Zelaya - Exhibit A**

March 20, 2006


Mr. Robert Fuller
Property Manager
Trizec
1200 "K" Street, NW
Washington, DC  20005


Dear Mr. Fuller:

Some disturbing comments concerning your employee Blanca E. Zalaya have come to my attention.  These comments are particular disturbing to me because it is reported that I said these comments; and I would like to clear the record on this situation.

On Wednesday, March 15th your Building Manager along with two other employees from your company were conducting a walk-on site inspection.  The Building Manager inquired to the services received on the 12th Floor.  I commented that the services are very good except that I had a problem with a request I put in twice yesterday.  That request was someone to come up and clean the double glass doors in the Receptionist area, where I am located at.  (Some staff had smeared their fingers on the class doors and it looked pretty messy.)  The reason why my requests went unanswered was according to Tony Harris of FASD, that request was not forwarded to Trizec.  I also stated to the Building Manager that this was very unusual because normally Erica is very reliable and comes up immediately when I have had these requests in the past.

I told the Building Manager that Erica is friendly, dependable and responsible and always does a good job.  In the past I have had trouble with the glass doors being cleaned but since Erica has taken over that responsibility I have not had any problems.  I also told the Building Manager that she always come up and check on the glass doors.  If they need cleaning (because at times they don't), she cleans them.  If they don't need cleaning she inspects the glass irregardless just to make sure.  He stated that that was not good enough that she should clean them irregardless????  I responded back if they don't need cleaning, then why would the glass doors be cleaned?

**Zelaya - Exhibit B**

He inquired about the 3:00 pm cleaning. I told him I wasn't sure if they were cleaned at 3:00 pm. I never noticed. I do know that the doors are spotless throughout the day, so my assumption is that Erica is checking on the glass doors in the afternoon and cleans them. I reiterated to the Building Manager that Erica is very friendly, reliable, and dependable and she is a very responsible worker.

Any comments that Erica is not reliable, or that she has not performed satisfactory work in regards to cleaning the double glass doors on the 12th floor, did not come from me.

Also it was bought to my attention that I had made a complaint on Wednesday, March 15th that Erica was harassing me in a non-confrontational way. I liked to clear the record on this. I don't know who called but **I never made that phone call.** I did not speak to anyone at Trizec in regards to this. I am not sure who called and used my name but I can assure you it was not me. Erica has never approached me in a non-threatening way nor do I think she ever will. Her personality does not reflect that kind of characteristic trait.

In closing, Erica has been very responsible with keep the double doors clean, she is always friendly, reliable and dependable and she has never approached me in a threatening or confrontational manner.

If you have any questions, please feel free to give me a call at (202) 326-4000 x3121.

Sincerely,

Sharon D. Cheek

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
                                             )
YVES AIGRET,                                 )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )     Civil Action No. 01-1650 (RWR)
                                             )
COMPASS GROUP NORTH                          )
     AMERICA, INC., <u>et</u> <u>al.</u>,    )
                                             )
          Defendants.                        )
———————————————————— )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Yves Aigret filed an action against defendants

Compass Group North America, Inc., Eurest Food Service and

Compass Group USA, Inc., claiming that defendants violated the

federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601,

<u>et</u> <u>seq.</u> (1998), and discriminated against him on the basis of his

age in violation of the District of Columbia Human Rights Act

("DCHRA"), D.C. Code Ann. § 1-2512 (1981).[1]  Defendants have

moved to dismiss or, in the alternative, for summary judgment on

plaintiff's DCHRA age discrimination claim, arguing that the

DCHRA claim is barred by the statute's one year limitations

period.  In opposition, plaintiff argues that his DCHRA claim was

timely filed in this court because his charge of discrimination,

which was cross-filed with the District of Columbia Office of

———————————————————

[1]     Section 1-2512 was recodified, without material change, at
D.C. Code Ann. § 2-1402.11 (2001).

- 2 -

Human Rights ("DCOHR") when he filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), remained pending before the DCOHR when he filed this lawsuit, thus tolling the DCHRA's one year statute of limitations. Because plaintiff's charge of discrimination with the DCOHR remained pending at the time he filed his complaint in this court, and plaintiff has not established that he withdrew his charge of discrimination from the DCOHR before filing suit, his DCHRA age discrimination claim will be dismissed without prejudice because the court lacks subject matter jurisdiction over DCHRA claims that remain pending with the DCOHR.

<u>BACKGROUND</u>

Plaintiff Yves Aigret filed a charge of discrimination with the EEOC on November 9, 1999, alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, <u>et</u> <u>seq.</u> (1994). Plaintiff cross-filed his charge of discrimination with the DCOHR. (<u>See</u> Pl.'s Mem. P. & A. in Opp'n Mot. to Dismiss or, in Alt. Summ. J. ("Pl.'s Opp'n") at Ex. 1 (Declaration of Yves Aigret ("Aigret Decl.")) at Att. 1 (EEOC Form 5); Defs.' Mem. in Supp. Mot. to Dismiss or, in Alt. Summ. J. ("Defs.' Mot.") at 2.) The DCOHR notified the EEOC on December 20, 1999 that, "[p]ursuant to the worksharing agreement, [plaintiff's] charge [was] to be initially investigated by the

- 3 -

EEOC." (Aigret Decl. at Att. 5 (EEOC Form 212).)  In its notification to the EEOC, the DCOHR checked the box on EEOC Form 212 which acknowledged receipt of plaintiff's charge and also indicated to the EEOC that the DCOHR did not intend "to initially investigate the charge." (Id.)  The DCOHR did not check the box on EEOC Form 212 to indicate that the agency was dismissing, closing or not docketing plaintiff's age discrimination charge.  (See id.)

On March 5, 2001, the EEOC issued plaintiff a "Dismissal and Notice of Rights," informing plaintiff that the EEOC was closing its file on his charge of discrimination filed with the EEOC.[2] (See id. at Att.4 (EEOC Form 161).)  Plaintiff filed this lawsuit on July 30, 2001, claiming that defendants violated the FMLA[3] when they eliminated his position while he was out on short term medical leave from May 7 to August 2, 1999, and discriminated

---

[2]    The March 5, 2001 notice was the second dismissal and notice of rights received by plaintiff.  The EEOC originally issued to plaintiff a dismissal and notice of rights dated March 2, 2000, but sometime thereafter revoked and vacated that dismissal.  (See Aigret Decl. at Att. 2 (EEOC Form 161) and Att. 3 (Fernandez Ltr.); Pl.'s Opp'n at 2 n.1.)

[3]    Plaintiff's original complaint also asserted a claim under the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code Ann. § 36-1301, et seq. (1981), which defendants also moved to dismiss asserting that the DCFMLA's one year statute of limitations barred such a claim.  (See Defs.' Mot. at 5.)  Conceding that argument (see Pl.'s Opp'n at 8), plaintiff amended his complaint to eliminate the DCFMLA claim.

- 4 -

against him on the basis of his age in violation of the DCHRA when they offered him in August 1999 the choice of a job termination or a demotion.

## DISCUSSION

Before a court may address the merits of a complaint, it must be assured that it has the authority to exercise jurisdiction over the claims. See Scott v. England, 264 F. Supp. 2d 5, 8 (D.D.C. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)). "[A] federal court, whether trial or appellate, has a duty to notice a failure of subject-matter jurisdiction on its own motion at any time during the proceedings," Nichols v. Agency for Int'l Dev., 18 F. Supp 2d 1, 3 (D.D.C. 1998) (citing Potomac Passengers Ass'n v. Chesapeak & O. Ry., 520 F.2d 91 (D.C. Cir. 1975)), and if the court concludes that it does not have jurisdiction over certain claims, those claims must be dismissed. See Fed. R. Civ. P. 12(h)(3); National Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1240 (11th Cir. 2003) (relying on Rule 12(h)(3) in remanding case to the district court for dismissal of claims over which the district court lacked subject matter jurisdiction); cf. Allen v. Rehman, 132 F. Supp. 2d. 27, 29 (D.D.C. 2000) ("[A] court must dismiss a case *sua sponte* at any time if it concludes that it lacks jurisdiction over the case."); Bogush v. Passiac Police Dept.,

- 5 -

1989 WL 10604, No. 89-0233, *1 (D.D.C. Jan. 31, 1989) ("[I]f the
Court concludes *sua sponte* that it does not have jurisdiction
over [a] lawsuit, . . . the case must be dismissed.").  Because
subject-matter jurisdiction focuses on the court's authority to
hear a claim, a court must "conduct a careful inquiry and make a
conclusive determination whether it has subject matter
jurisdiction or not," 5A Charles A. Wright & Arthur R. Miller,
<u>Federal Practice & Procedure: Civil 2d</u> ("Wright & Miller") § 1350
(1990), by examining the complaint and, "where necessary, . . .
[by] consider[ing] the complaint supplemented by undisputed facts
evidenced in the record, or the complaint supplemented by
undisputed facts plus the court's resolution of disputed facts."
<u>Coalition for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198
(D.C. Cir. 2003).

In August 1999, the DCHRA provided, in relevant part, that
"[a]ny person claiming to be aggrieved by an unlawful
discriminatory practice shall have a cause of action in any court
of competent jurisdiction for damages and such other remedies as
may be appropriate, unless such person has filed a complaint
hereunder[.]"  D.C. Code Ann. § 1-2556(a).[4]  The DCHRA "does not
require exhaustion of administrative remedies before pursuit of a

---

[4]    Section 1-2556(a) was recodified, without material change,
at D.C. Code Ann. § 2-1403.16(a) (2001).

- 6 -

judicial remedy, but instead 'provides for an *ab initio* election of remedies.'" Weiss v. International Brotherhood of Elec. Workers, 729 F. Supp. 144, 146 (D.D.C. 1990) (quoting Anderson v. United States Safe Deposit Co., 552 A.2d 859, 863 (D.C. 1989)). "[W]ith certain provisos, the jurisdiction of the [DCOHR] and this Court are mutually exclusive and a plaintiff must elect between the filing of a Human Rights Act complaint with the [DCOHR] and this Court." Hoque v. Roach, 967 F. Supp. 7, 9-10 (D.D.C. 1997); see Weiss, 729 F. Supp. at 146 ("[A] claimant who files a claim with the [DCOHR] may still file a lawsuit, but only if the administrative claim is withdrawn prior to the completion of the [DCOHR's] investigation or if the DCOHR dismisses the complaint for administrative convenience.") (citations omitted). Where the DCOHR has dismissed a plaintiff's complaint on the grounds of administrative convenience, or where the plaintiff has withdrawn a complaint, the plaintiff maintains all rights to bring suit as if no complaint had been filed. See D.C. Code Ann. § 1-2556(a).

Defendants concede that a charge of age discrimination filed with the EEOC by a person in the District of Columbia is cross-filed with the DCOHR pursuant to a worksharing agreement. (See Defs.' Mot. at 2, 4; Aigret Decl. at Att. 1 and Att. 5.)  "When a worksharing agreement is in effect, claims received by one agency

- 7 -

'shall be deemed received by the other agency . . ..'" <u>Fowler v.</u>
<u>District of Columbia</u>, 122 F. Supp. 2d 37, 42 (D.D.C. 2000)
(quoting 29 C.F.R. § 1626.10(c) (2000)); <u>see</u> 29 C.F.R.
§ 1626.10(c)) (1999). "Thus, by filing a claim with the EEOC,
the plaintiff commences proceedings with both the EEOC and the
designated state agency . . .." <u>Fowler</u>, 122 F. Supp. 2d at 42;
<u>see</u> <u>Vitikacs v. The American Legion</u>, No. 02-CA-10202, 2003 WL
22004935, *2-3 (D.C. Super. June 8, 2003).

When plaintiff filed his November 9, 1999 charge of
discrimination with the EEOC, and indicated on EEOC Form 5 that
he wanted the "charge filed with both the EEOC and the State or
local agency" (Aigret Decl. at Att. 1), he initiated proceedings
with both the EEOC and the DCOHR. <u>See</u> 29 C.F.R. §§ 1626.7(c)),
1626.10(c)) (1999). Unlike the EEOC, which conducted and
completed its investigation of plaintiff's age discrimination
claim under the ADEA (<u>see</u> <u>id.</u> at Att. 4), the DCOHR decided only
that it would not initially investigate plaintiff's charge of age
discrimination. (<u>See</u> <u>id.</u> at Att. 5.) The DCOHR did not
determine in December 1999 that it was dismissing, closing or not
docketing plaintiff's charge of age discrimination (<u>see</u> <u>id.</u>), and
defendants offer no evidence to establish that the agency
dismissed plaintiff's charge of age discrimination for
administrative convenience or reached any conclusion on the

- 8 -

merits, whether as a result of the EEOC's investigation[5] or its

own investigation.   Moreover, plaintiff has not offered any

evidence that he withdrew his charge of age discrimination from

the DCOHR.   Because the evidentiary record reflects neither any

final agency action by the DCOHR with respect to plaintiff's

charge of age discrimination, nor plaintiff's withdrawal of his

charge from the DCHOR, plaintiff's age discrimination complaint

remains pending with the DCOHR.[6]   See Vitikacs, 2003 WL 22004935

_____

[5]    Also, defendants do not offer any evidence to suggest that
the EEOC informed the DCOHR that the EEOC dismissed plaintiff's
age discrimination claim and the bases for the dismissal, or that
the DCOHR was aware that the federal agency had taken such
action.

[6]    Defendants' motion to dismiss plaintiff's age discrimination
claim as having been filed beyond the limitations period argues
that the claim did not remain pending before the DCOHR after
December 1999 because the agency did not assume jurisdiction over
plaintiff's charge by initiating an investigation.  (See Defs.'
Mot. at 4.)   To support this argument, defendants rely on the
EEOC's implementing regulations for Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. (2000), and
for the Americans with Disabilities Act of 1990 ("ADA"), 42
U.S.C. § 12101, et seq. (2000).  (See Defs.' Mot. at 4-5 (citing
29 C.F.R. § 1601.13 (1999)).)  The EEOC's Title VII and ADA
implementing regulations contain a provision conferring a 60-day
period of exclusive jurisdiction on the local fair employment
practice agency, here the DCOHR, "to process allegations of
discrimination" under Title VII and the ADA before the EEOC "may
commence processing the allegation of discrimination."  See 29
C.F.R. § 1601.13(a)(1)(ii).  Defendants therefore argue that the
DCOHR's failure to initiate an investigation in the 60-day period
provided by § 1601.13 constituted a waiver of all jurisdiction
over plaintiff's charge of age discrimination.  (See Defs.' Mot.
at 4-5.)  Although a similar argument has been rejected by the
Superior Court of the District of Columbia as being

- 9 -

at *3 ("[N]othing in the statutory language [of the DCHRA]

suggests that a complaint cross-filed with the DCOHR should not

_____

"unjustifiably inflexible and inconsistent with the [DCHRA's] statutory language and intent," <u>Vitikacs</u>, 2003 WL 22004935 at *3 n.2, even if true, defendants fail to explain how the Title VII and ADA implementing regulations apply to plaintiff's charge of age discrimination at issue here, which would be governed by the EEOC's implementing regulations for the ADEA.

Unlike the implementing regulations for Title VII and the ADA, the ADEA implementing regulations do not contain a 60-day exclusive jurisdiction provision. Under the implementing regulations for the ADEA, the EEOC "may process any charge at any time, notwithstanding provisions for referral to and from appropriate State agencies." 29 C.F.R. § 1626.9. And a complainant may file, and the EEOC may process and investigate, a charge of discrimination even if the local agency has terminated its local proceedings. <u>See id.</u> at § 1626.7 ("[A charge of discrimination] shall be filed with the [EEOC] or its designated agent within . . . 300 days of the alleged discriminatory action, or 30 days after receipt of notice of termination of State proceedings, whichever is earlier."). The plain language of the EEOC's ADEA implementing regulations make clear that the EEOC may initiate dual agency action at any time, or may conduct its own investigation, notwithstanding any action taken by a local agency. It would be anomalous to find that, whereas the EEOC may investigate claims of discrimination arising under federal law at any time, the DCOHR may not do likewise with respect to cross-filed discrimination claims which implicate local laws.

Further, because plaintiff asserts a claim for age discrimination, and not a cause of action under Title VII or the ADA, a finding that plaintiff's age discrimination claim remained pending with the DCOHR is not inconsistent with the unpublished opinion in <u>Griffin v. the Acacia Group</u>, No. 97-2816, 1998 U.S. Dist. LEXIS 10854 (D.D.C. July 13, 1998), which relied on Title VII's 60-day deferral period in deciding that the plaintiff's sex discrimination claim in that case was not pending before the DCOHR after the EEOC began its investigation. <u>Id.</u> at *12-13. No such deferral period applies to age discrimination claims. <u>See</u> 29 C.F.R. § 1626.9.

- 10 -

be deemed to be 'pending' before the DCOHR simply because the EEOC takes the lead in the investigation of the complaint. Common usage and understanding of the term 'pending' is fully consistent with the Court's conclusion that a complaint filed with the DCOHR remains pending before the agency until it is withdrawn, dismissed for administrative convenience, or resolved on the merits."). Accordingly, this court does not have subject matter jurisdiction over plaintiff's DCHRA age discrimination claim. Anderson, 552 A.2d at 863; Hogue, 967 F. Supp. at 9-10; see Weiss, 729 F. Supp. at 146.

Because the court does not have subject matter jurisdiction over plaintiff's DCHRA claim, that claim will be dismissed without prejudice to plaintiff seeking leave when and if appropriate to further amend his complaint to reallege his DCHRA age discrimination claim, and to assert facts which establish its timeliness and the existence of subject matter jurisdiction over that claim in this court.

## CONCLUSION AND ORDER

Plaintiff's charge of age discrimination, cross-filed with the DCOHR on November 9, 1999, remains pending with the DCOHR. Consequently, this court is without subject matter jurisdiction over plaintiff's DCHRA claim. Therefore, it is hereby

- 11 -

ORDERED that defendant's motion to dismiss, or in the alternative for summary judgment [#3], be, and hereby is, GRANTED in part.  Count I of plaintiff's amended complaint is hereby DISMISSED without prejudice.

SIGNED this 15th day of April, 2004.


_____
RICHARD W. ROBERTS
United States District Judge

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JUAN R. ESTENOS,

        Plaintiff,

        v.

PAHO/WHO FEDERAL
    CREDIT UNION,

        Defendant.

Civil Action No.: 01ca9125

Judge Natalia M. Combs Greene

Calendar Eleven

Next Event: None Scheduled

## ORDER

### I.   Introduction

This matter is before the Court on defendant's Motion to Dismiss, filed on February 26, 2002. Defendant argues that plaintiff's claim was not brought within the proper statute of limitations. Plaintiff contends that the statute of limitations was tolled when the Equal Employment Opportunity Commission ("EEOC") cross-filed the complaint with the D.C. Office of Human Rights ("OHR"). Determining the significance of the cross-filing, therefore, is the focus of this Order. Since the timeline of events is important in this case, it shall be briefly reviewed.

This suit arises from defendant's termination of plaintiff on August 31, 2000. On September 7, 2000, plaintiff filed a charge of discrimination with the EEOC. On September 14, 2000, the EEOC notified defendant that a charge of discrimination had been filed by plaintiff. The notification called for defendant to submit a statement outlining its position on the allegations. On September 14, 2000, the EEOC also transmitted the charge to the OHR. The transmittal indicated that "[p]ursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC." (Pl.'s Opp'n, Ex. B.) On February 20, 2001, the EEOC made a

determination that "there is reasonable cause to believe that Respondent discriminated against the Charging Party because of his national origin, (Hispanic-Peruvian), and subjected him to disparate treatment, in violation of Title VII of the Civil Rights Acts of 1964…" (Pl.'s Opp'n, Ex. G.) The determination further indicated that the EEOC would "endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion." (Pl.'s Opp'n, Ex. G.) On May 31, 2001, the EEOC forwarded a letter to both parties indicating that the informal methods of conciliation had been deemed unsuccessful. (Pl.'s Opp'n, Ex. J.) On September 14, 2001, the EEOC sent plaintiff notice of his right to sue. (Pl.'s Opp'n, Ex. K.) Plaintiff filed suit on December 14, 2001. Under Count I of his complaint, plaintiff sought recovery under the Human Rights Act for the District of Columbia, D.C. Code Ann. § 2-1401.01 *et seq.* (2002). Under Count II, plaintiff sought to recover under Title VII. (Compl.) The case was then removed to the District Court for the District of Columbia. Defendant filed a motion to dismiss on the grounds that it is not an employer under Title VII because it never employed fifteen or more employees during the period in question.[1] The District Court agreed with this argument and granted this motion.[2] The District Court then remanded Count I to this Court for resolution, finding it to be a matter of first impression.

II.    **Analysis**

A.    **Applicable Statute of Limitations**

Under the law of the District of Columbia, "[a]ny complaint under this chapter shall be filed with the Office within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof…" D.C. Code Ann. § 2-1403.04(a) (2002). The statute of limitations,

---

[1] The relevant section of Title VII defines employer as, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year…" 42 U.S.C. §2000e.
[2] Apparently, the EEOC did not address this threshold issue in its year-long investigation.

2

therefore, provides a year for filing the complaint. Within the same section of the D.C. Code, an explanation of the filing process is provided:

> Any person or organization, whether or not an aggrieved party, may file with the Office a complaint of a violation of the provisions of this chapter, including a complaint of general discrimination, unrelated to a specific person or instance. The complaint shall state the name and address of the person alleged to have committed the violation, hereinafter called the respondent, and shall set forth the substance thereof, and such other information as may be required by the Office.

D.C. Code Ann. § 2-1403.04 (a)(2002).

### B.    Tolling of the Statute of Limitations

Under the law of the District of Columbia, "[t]he timely filing of a complaint with the Office … shall toll the running of the statute of limitations while the complaint is pending." D.C. Code Ann. § 2-1403.16(a) (2002).

### C.    Law Applied to the Instant Case

Defendant argues that the Court should read the language "filing of a complaint" strictly and bar plaintiff's claim. The Court finds defendant's position overly formal and inconsistent with the intent of the relevant legislative provisions.

First, it is true that the Court begins the analysis with the presumption that "[t]he words used [in the statute], even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing." *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C. 1989) (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945) (per Learned Hand, J.). The law of the District of Columbia calls for a complaint to be filed with the OHR within one year of the alleged discriminatory conduct. Plaintiff filed a complaint with the EEOC. This complaint was cross-filed with the OHR. The cross-filing essentially satisfied the requirements of a complaint, under D.C. Code Ann. § 2-1403.04(a), by providing the name and address of the alleged perpetrator of the discriminatory

3

conduct and outlining the alleged discriminatory conduct.  Defendant argues that plaintiff did not

actually file a complaint with the OHR and, consequently, the Court should bar his claim as

falling beyond the statute of limitations.

Complimenting the literal approach, however, is the presumption that the language of the

legislation makes manifest the intent of the legislature.  The procedures of the EEOC and the

OHR are intended to encourage the informal resolution of discrimination complaints.  *See*, e.g.,

42 U.S.C. § 2000e-5(b) (2002); D.C. Code Ann. § 2-1403.06(b) (2002).  Indeed, the purpose of

tolling the statute of limitations is to provide the parties with the necessary time to reach an

informal, nonjudicial resolution.  Taking note of this fact, the Court is loath to read D.C. Code

Ann. § 2-1403.16(a) in a manner that punishes plaintiff for pursuing the nonjudicial solution

with the federal equivalent of the D.C. Office of Human Rights.  It would certainly work an

injustice if these informal procedures were to become a complicated labyrinth of obstacles

whereby the legally unsophisticated party would be stripped of a remedy for failing to appreciate

the nuances of the law.  Indeed, it would also be antithetical to the Worksharing Agreement that

the EEOC and the OHR have reduced to writing.

Under the section entitled, "Filing of Charges of Discrimination," the entities resolved

that "[i]n order to facilitate the assertion of employment rights, the EEOC and the [OHR] each

designate the other as its agent for the purpose of receiving and drafting charges…"  (Pl.'s

Opp'n, Ex. C at 1.)  Further on in the agreement, the entities also agreed that "[n]otwithstanding

any other provision of the Agreement, the [OHR] or the EEOC may request to be granted the

right to initially process any charge."  (Pl.'s Opp'n, Ex. C at 5.)  As these passages should make

evident, the relationship can best be described as synergistic.  Each has agreed to act as the

other's agent.  An elaborate system of interconnectedness binds the one agency to the other in an

effort to increase their effectiveness. With this in mind, the Court is hesitant to view a filing with one agency as wholly unrelated and unconnected with the other, thereby effectively rewriting the Worksharing Agreement.

Moreover, the policy underlying all statutes of limitations is to ensure fairness to defendants by protecting them from "stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring in part and dissenting in part). These concerns are not present in the case at bar. Plaintiff filed his complaint with the EEOC one week after he was terminated. Defendant was made aware of the charges against it two weeks after plaintiff's termination and was called upon to investigate the charges and make its position known to the EEOC.

In sum, for the purposes of triggering the tolling provision, the Court finds that the EEOC cross-filing satisfies both the intent and the language of D.C. Code Ann. § 2-1403.16(a).

Accordingly, it is this ___3rd___ day of ___February___, 2003

**ORDERED** that defendant's Motion to Dismiss is hereby DENIED without prejudice.

**SO ORDERED.**

Natalia M. Combs Greene
Associate Judge

Copies to:

Mindy Gae Farber, Esq.
11300 Rockville Pike
Suite 808
Rockville, MD 20852

Kirsten Elizabeth Keating, Esq.
601 13th Street, N.W.

5

Suite 1000 South
Washington, D.C. 20005-3807

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|   |   |   |
|---|---|---|
| BLANCA ZELAYA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-02311-RCL |
| | ) | |
| UNICCO SERVICE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## <u>ORDER</u>

Upon consideration of Defendants Oscar Argueta and Carlos Fernandes' Motion to

Dismiss, Plaintiff's Opposition to Defendants' Motion to Dismiss, and the entire record herein, it

is this _____ day of _____, 2008,

**ORDERED** that the Defendant's Motion to Dismiss shall be, and hereby is, **DENIED**.


_____
Judge Royce C. Lamberth

Copies to:

Lynne Bernabei, Esquire
David Wachtel, Esquire
Emily Brittain Read, Esquire
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124

    *Counsel for Plaintiff Blanca Zelaya*

Joseph E. Schuler, Esquire
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182

    *Counsel for Defendants*