IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLANCA ZELAYA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:07-cv-02311 RCL |
| ) | |
| UNICCO SERVICE COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT CARLOS ALARCON'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant Carlos Alarcon ("Defendant"), by and through undersigned counsel, hereby files this Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [Doc. 18] ("Plaintiff's Opposition"). For the reasons set forth below and in Defendants' Motion to Dismiss, Plaintiff's Opposition fails to overcome the basic premise set forth in Defendants' Motion: the Court should dismiss the Complaint as to this Defendant in its entirety because, on the face of the Complaint, her claims under the District of Columbia Human Rights Act ("DCHRA") were filed outside the limitations period and because she has not, and cannot, plead any other cause of action against this Defendant.

   A. **Standard of Review**

While the Court does accept well pled facts as true when deciding whether to dismiss a claim, "[t]he court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Browning v. Clinton,* 352 U.S. App. D.C. 4, 292 F.3d 235, 242 (D.C. Cir. 2002). "Although a complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do.'" *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted). Where allegations "have not nudged [plaintiff's] claims from conceivable to plausible, [the] complaint must be dismissed." *See id.* at 1974. On the facts recited, Plaintiff has failed to state plausible claims that are timely, therefore the Court should dismiss the Complaint.

### B. Plaintiff's Court Complaint Was Not Timely Filed

The Court should dismiss Plaintiff's DCHRA claims because she filed a Complaint in court after the one year limitations period had passed. In her opposition, Plaintiff argues her Complaint is timely, both because she is entitled to the benefit of a "continuing violation" analysis and because this Court should follow the newly issued decision of the District of Columbia Court of Appeals in *Estenos v. PAHO/WHO Federal Credit Union*, 2008 WL 2605060 (July 3, 2008) to find that the tolling provision in D.C. Code § 2-1403.16(a) does apply to her claim. These arguments do not protect her claim. It is untimely and should be dismissed.

#### 1. This Court need not treat *Estenos* as controlling.

Taking the second argument first, Defendant recognizes that the *Estenos* decision holds that the tolling provision of § 2-1403.16(a) does apply to preserve the claim of a claimant like Plaintiff who elects to withdraw her claim and refile it in court. As set out in Defendant's opening brief, this decision is plainly at odds with cases such as *Kamen v. Int'l Bhd. of Elec. Workers*, 505 F. Supp. 2d 66, 75-76 (D.D.C. 2007) and *Coleman v. Potomac Electric Power Co.*, 310 F.Supp.2d 154, 157 (D.D.C.), aff'd., 2004 WL 2348144, 2004 U.S. App. LEXIS 21820 (D.C. Cir. 2004), which were decided well after the 1997 amendments to the DCHRA added the tolling provision and plainly must have taken that language into account in reaching the opposite conclusion.

Accordingly, this court is not bound to follow, *Estenos*. It is at odds with the recent *Coleman* District Court and Appellate decisions, the latter, of course, a decision of the Court of Appeals for the District of Columbia Circuit (albeit unpublished), and with the decision of a different panel of the DC Court of Appeals, in *Anderson v. United Safe Deposit Co.*, 552 A.2d 859, 863 (D.C. 1989).[1] As made clear by the advance copy of *Estenos* attached to Plaintiff's brief, the opinion has not yet been released for publication and is still subject to revision or withdrawal.[2] In sum, this court may reach its own decision as to the meaning and application of the tolling provision, and it should continue to follow the precedent of this bench.[3]

**2. Plaintiff failed to name this defendant as a Respondent in her sworn DCOHR Charge of Diecrimination.**

Even if *Estenos* governs, Plaintiff's Complaint must fail because none of the acts she seeks to rely upon were tolled by the filing of a claim with the Office of Human Rights or the EEOC in the first instance, and none that are actionable occurred within one year prior to the filing of her Complaint.

As to her failure to file a claim against this Defendant, Plaintiff offers no citation to authority in support of her argument that she is entitled to the benefits of tolling even though she failed to name him as a "Respondent" in her DCOHR Charge of Discrimination. *See* Plaintiff's Opposition at 7. Instead, she asks the court to conclude that this Defendant is a "Respondent" because she identified him by name in the declaration that she provided to the DCOHR when she

---

[1] Defendant recognizes (as noted in his opening brief) that *Anderson* was decided before the statutory amendment relied upon by Plaintiff. However, the case was not distinguished by the *Estenos* court, it has not been overruled, and its logic remains sound. *See Anderson* at n. 11 and cases cited therein (to the effect that because the DCHRA does not require administrative exhaustion and a plaintiff may seek her remedy in court *ab initio*, no purpose is served by tolling during the pendency of an administrative claim period).

[2] In addition, Counsel was informed by the Clerk's Office of the Court of Appeals that appellee filed a Peition for Rehearing En Ban on July 17, 2008, and the Court has directed appellant to file an opposition on or before August 6, 2008.

[3] In this regard, Defendant respectfully refers to the discussion of this point in his opening brief and to the Reply brief of Defendants Fernandes and Argueta [Doc. 14] at 2-4.

submitted her Complaint Form.

Notably, Plaintiff' appended her Complaint Form and her declaration to her Opposition brief, but chose not to include the actual DCOHR Charge of Discrimination that was filed and served. A copy is appended to this Reply as Exhibit A.[4] It is signed and sworn by Plaintiff, as is customary. The document confirms that only Defendant UNICCO was identified by Plaintiff as a Respondent to her charges and, importantly, that only Defendant UNICCO was placed on notice and offered the statutory opportunity to mediate by service of the charge on it as an identified Respondent.[5]

> **3. Plaintiff is not entitled to the benefit of a continuing violation theory because all alleged continuing harassment ended more than one year before she filed.**

The Supreme Court held, unambiguously, that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In contrast, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to the hostile environment takes place within the statutory time period." *Id.* Thus, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable `unlawful employment practice.'" *Id.* at 114, 122 S.Ct. 2061 (emphasis added). "There is simply no indication that the term `practice'

---

[4] The Court may properly take notice of the Charge of Discrimination without converting Defendants' Motion into a motion under Rule 56, both because the Charge is specifically referenced in the Complaint and because it is a public record. *See, e.g., Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) (contract essential to claims for relief could be considered even though not attached to complaint); *Faibisch v. University of Minnesota*, 304 F.3d 797, 802-03 (8th Cir. 2002) (court could consider EEOC charge in deciding motion for judgment on pleadings, as court may rely on matters of public record); *Rosenbaum v. TravelByUs.com Ltd.*, 299 F.3d 657, 661-662 (7th Cir. 2002) (court properly relied on employment agreement that formed integral component of claim without conversion of motion); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (insurance contract referred to in complaint and attached to motion to dismiss properly considered without conversion of motion).

[5] Defendant further notes that the Complaint Form appended to Plaintiff's Opposition includes a section specifically intended to identify the Respondent (see page 2, item 2). Only UNICCO is listed.

converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* at 111, 122 S.Ct. 2061. In short, merely labeling acts as related or part of an ongoing practice or campaign of harassment is not sufficient. In this case, it is clear from the Complaint that the alleged unwanted remarks and sexual conduct ended when Plaintiff lodged her Complaint in April 2006. Any alleged "harassment" thereafter, if not in fact *only* retaliation as a matter of law, was of a separate character. This "harassment" itself ended no later than Plaintiff's transfer to a new building on or about November 9. Thereafter, the only act of any kind she alleges to have been "harassment" or "retaliation" ("defaming" her to her new employer) took place in April 2007, after her employment with UNICCO had already ended.

In interpreting *Morgan* in an analogous case where the plaintiff attempted to leverage the Supreme Court's holding as to harassment with related, discrete acts of retaliation, this court has stated: "*Morgan* teaches that discrete claims of retaliation that are time-barred do not become timely by alleging one timely retaliatory act related to earlier, untimely, retaliatory acts. [citation omitted] 'While [Mr. Coleman] alleged that he suffered from numerous ... retaliatory acts ... only incidents that took place within the timely filing period are actionable.'" *Coleman v. Potomac Electric Power Co.*, 310 F.Supp.2d 154, 158 (D.D.C.), aff'd., 2004 WL 2348144, 2004 U.S. App. LEXIS 21820 (D.C. Cir. 2004) (interpreting and quoting *Morgan* at 114). The *Coleman* court likewise held that the Morgan analysis and rule should be applied to claims under the DCHRA. *Id.* at 159.

Here, no actionable act in violation of the DCHRA occurred within the time frame of the statute of limitations applicable to Defendant Alarcon. To the extent any did, it was the discrete act of "defaming" plaintiff to Cavalier. Under *Morgan,* because only this act is within the statute of limitations, no other act alleged in the Complaint may be considered for purposes of assessing

liability.  As set out below, Plaintiff's Opposition presents no basis to sustain her claim based on the allegation of "defamation."

### C. Plaintiff Fails to State a Viable Claim of Retaliation Based on her Vague and Conlcusory Allegation that she was Defamed to her new Employer.

Plaintiff contends that her vague, conclusory allegation that someone must have defamed her to the company that replaced UNICCO and hired her (Cavalier) meets the standard for pleading set by *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007).  It does not.  Plaintiff effectively concedes that she has no facts and is speculating.  *See* Opposition at 14-15 (arguing that the only "plausible" explanation for her new employer's failure to offer her the schedule she demanded is that someone must have spoken ill of her, and it is further "highly plausible" that defendants would continue to work together to have a competitor fire her).  Plaintiff's contention notwithstanding, her theory is implausible on its face.

Equally to the point, it is unsupported by any "fact" going to retaliation, save Plaintiff's claim that Defendants transferred her to the new work site knowing that UNICCO would lose the building to Cavalier.  Anything else she offers in support of her claim is speculation (including, but not limited to, speculation as to who spoke to Cavalier, when and what was said) and thus insufficient grounds to permit the claim to go forward.  *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 2004) ("However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations.")

Further, to the extent that any inference could permissibly be drawn, Plaintiff neglects to note that all of the other facts she recites about her being hired by Cavalier then quitting her employment point to an opposite conclusion as highly probable, namely, that she was the odd man out at the 2550 M Street building and, when Cavalier offered her a different job, she chose

not to take it for reasons of her own (see Complaint ¶¶ 65-69). First, the other two employees kept by Cavalier at her preferred job site predated her at the building (she alleges that they were there when she arrived and told her that UNICCO was going to lose its contract, Complaint ¶ 65). Further, it is clear that after assuming control of the building, at some point Cavalier reduced the size of the staff. Specifically, Plaintiff alleges that Cavalier kept two day shift employees, not three (see Complaint ¶ 68). Evidently, it kept the two best workers, the two most favored by its tenant, or the two with most seniority at the site. Any of these scenarios (singly or in combination) shows Plaintiff's theory for what it is: mere speculation unsupported by fact, including, in the final analysis, any fact to suggest how – all other improbable assumptions aside – Defendant would have known her immutable preference for one daytime schedule over another so as to coach Cavalier in what to offer her to ensure she would refuse the new position. The bare allegations of *fact* included in the Complaint "have not nudged [plaintiff's] claims from conceivable to plausible, [the] complaint must be dismissed." *See Twombly.* at 1974.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening memorandum, the Court should grant Defendant Alarcon's Motion in its entirety and dismiss with prejudice Plaintiff's Complaint against him in its entirety.

Dated: July 28, 2008                    Respectfully submitted,

_____/s/_____
Joseph E. Schuler (DC Bar #296269)
JACKSON LEWIS LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
schulerj@jacksonlewis.com
(703) 821-2189 (telephone)
(703) 821-2267 (facsimile)

-8-

*Attorneys for Defendants Carlos Alarcon, Carlos Fernandes, Oscar Argueta and UNICCO Service Company*

# EXHIBIT 1

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of Human Rights

☆ ☆ ☆

Judiciary Square Office
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

Penn Branch Office
3220 Pennsylvania Avenue, SE 1st Fl
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390

April 28, 2006

*Certified Mail*

UNICCO
Attn: Steven Kletjian
275 Grove Street
Newton, MA 02466

Reference:  *Blanca E. Zelaya vs. UNICCO*
Docket No.: 06-248-P (CN)
EEOC No.: 10C-2006-02657

Dear Mr Kletjian:

The above-captioned charge has been assigned to me for investigation. Throughout this phase of the process my role will be that of a neutral, independent fact finder and not an advocate for either party. Please direct all correspondence, questions and/or concerns regarding this matter to me.

In response to the allegations listed in the complaint (enclosed), it is requested that you submit your **notarized position statement**. The position statement should include:

- the correct name and address of the facility named in the charge, along with a description of the services provided;
- a detailed response to each particular of the complaint with any written documentation to support your position;
- copies of all written rules, policies, and procedures relating to the issues raised in the charge.

All affidavits submitted must be **SIGNED, SWORN and NOTARIZED**.

Along with a copy of the complaint, the Office of Human Rights (OHR) is sending you a request for information, which may include interrogatories, requests for documents, notice of witness interviews, and notice of a site visit.

<u>Blanca E. Zelaya vs. UNICCO</u>
Docket No : 06-248-P (CN)
Page –2-

You are required to respond in writing to any interrogatory or request for documents. The deadline for your submission is twenty (20) calendar days from the date of receipt. If you fail to submit the requested information within the allotted time, the OHR may: (1) amend the complaint to add a charge of willful resistance to the OHR's investigatory efforts; or (2) certify the complaint to the D.C. Commission on Human Rights for proceedings, which could result in the revocation of any license you, hold which was issued by the District of Columbia.

Once the investigation process is completed, the OHR will review the entire record and make a determination on whether or not there is probable cause to believe discrimination occurred. The determination will be sent by certified mail to both parties and/or their respective counsel.

If you have any questions or concerns, please call (202) 727-0878 or email me at Michelle.Thomas@dc.gov.

Sincerely,

Michelle D Thomas
Equal Opportunity Specialist/Investigator

Enclosure(s)

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [X] FEPA | 06-248-P(CN) |
| | [X] EEOC | 10C-2006-02657 |

D.C. Office Of Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Blanca E. Zelaya | (202) 529-0278 | 09-11-1974 |

Street Address: 655 Girard Street, N.E., Washington, DC 20017

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNICCO | 500 or More | (800) 283-9222 |

Street Address: 275 Grove Street, Newton, MA 02466

DISCRIMINATION BASED ON (Check appropriate box(es).)
[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03-01-2005    Latest: 03-24-2006
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe I have been discriminated against on the basis of my sex (Female) in the terms, conditions, and privileges of my employment and retaliated against because:

SEXUAL HARASSMENT

Beginning in March of 2005 and ongoing up until March 24, 2006 I have been sexually harassed by Respondent's Building Operations Manager (Male). Almost immediately upon becoming my supervisor, Respondent's Operations Manager began making sexually explicit comments and sexual advances towards me. I immediately informed Respondent's Operations Manager that these comments and advances were offensive to me and unwelcome. The sexual harassment continued despite my complaints.

Respondent's Operations Manager regularly made comments about my body and appearance. In March of 2005 Respondent's Operations Manager told me that he found pregnant women more "hot" and "horny." Respondent's Operations Manager told me that if I did not have someone who could satisfy me sexually, that he would be happy to do it for me.

Throughout this time, Respondent's Operations Manager would regularly touch me in a sexually suggestive manner by rubbing my shoulders and running his hands down my back. This behavior by Respondent's Operations Manager made me extremely uncomfortable and apprehensive about my safety and that of my unborn child.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY — When necessary for State and Local Agency Requirements

~~Hayda Demas~~

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief
SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct

04-27-06  X [signature]

| 04-27-06 | [signature] | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
|---|---|---|
| Date | Charging Party Signature | Charles Teixeira Apr. 18, 2006<br>Notary Public, District of Columbia<br>My Commission Expires 02/28/2011 |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>06-248-P(CN)<br>10C-2006-02657 |
|---|---|---|
| D.C. Office Of Human Rights | | and EEOC |
| State or local Agency, if any | | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On more than one occasion in February and March of 2005, Respondent's Operations Manager led me into a storage room under the pretense that he needed my help to check the inventory supplies, and then proceeded to try to put his hands all over my body.

I always refused the advances made by Respondent's Operations Manager and I repeatedly told him that I wanted him to stop touching me and making comments about my body and appearance and that his sexual advances were unwelcome and frightening.

In March of 2005 I told Respondent's Operations Manager that if the sexual harassment did not cease, I would report him. At this point Respondent's Operations Manager told me that Respondent had attorneys and I could not prove anything. Respondent's Operations Manager then threatened me by telling me that he had the power to get rid of me.

In mid April of 2006 I was in the employee's storage room and I reached into a desk drawer to use a dictionary. When I opened the dictionary, I found two unused condoms hidden inside the dictionary. This office is used by both supervisors and regular employees throughout the day. I was surprised to see condoms in the workplace and I felt it was disrespectful to have condoms somewhere that is not under lock and key.

RETALIATION

In late March of 2005, during the last trimester of my pregnancy, my health insurance company informed me that I was no longer covered because Respondent had stopped making the payments. When I informed Respondent's Operations Manager that my health insurance had been cancelled he told me that there was nothing he could do for me. The union to which I belong wrote a memorandum to the company on April 21, 2005 stating that I was entitled to health coverage and requesting that it be immediately restored.

I asked Respondent's Operations Manager why my health insurance had been cancelled, to which he replied, "this is happening to you because you did not give in to me," and that he could not help me. Respondent did not restore my health coverage until August of 2005. I gave birth on May 25, 2005 and took two months unpaid leave and paid for much of my medical expenses out-of-pocket because Respondent did not restore my health coverage until August of 2005.

On March 17, 2006 I was issued two disciplinary warnings by Respondent's Operations Manager. The first falsely stated that a customer had complained that I was not cleaning the glass doors in the afternoon. The second was because Respondent's Operations Manager alleged that a tenant had reported to him that I was harassing her due to the alleged complaint. This was also false, and the tenant in question wrote a letter to the property manager where I work stating that she had never been harassed by me, and included comments praising my work performance and attitude. Respondent's Operations Manager issued these two baseless warnings and threatened to terminate me if I received another warning.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY — When necessary for State and Local Agency Requirements<br>Haydn-Demas |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 04-27-06  x [signature] | |

| 04-27-06 | K. [signature] | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) [signature] |
|---|---|---|
| Date | Charging Party Signature | Apr 18, 2006 |

Charles Teixeira
Notary Public, District of Columbia
My Commission Expires 02/28/2011

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [X] FEPA | 06-248-P(CN) |
| | [X] EEOC | 10C-2006-02657 |

D.C. Office Of Human Rights                                            and EEOC
State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Therefore, I charge Respondent with an unlawful discriminatory act on the basis of my sex in violation of the D.C. Human Rights Act of 1977, as amended, and Title VII of the Civil Rights Act of 1964, as amended. I have not commenced any action, civil, criminal or administrative, based on the above allegations, other than the following: CROSS FILED WITH THE EEOC.

EEOC FORM 131-A (5/01)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| UNICCO<br>275 Grove Street<br>Newton, MA 02466 | **PERSON FILING CHARGE**<br><br>Blanca E. Zelaya<br><br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>10C-2006-02657<br><br>FEPA CHARGE NO.<br>06-248-P(CN) |

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
(See the enclosed for additional information)

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act   [ ] The Equal Pay Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____
                                                    (FEP Agency)

[X] The  D.C. Office Of Human Rights  and sent to EEOC for dual filing purposes
             (FEP Agency)

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII or ADA charge) to investigation this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Apr 18, 2006 | Kenneth L. Saunders,<br>Director | |

Enclosure with EEOC
Form 131 (5/01)

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge -- the records to be retained, and for how long, are as described in Sec 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods -- generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

Section 1602.14  Preservation of records made or kept. . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.