**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| BLANCA ZELAYA | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )    **Civil Action No. 07-02311 (RCL)** |
| | ) |
| UNICCO SERVICE COMPANY, | ) |
| CARLOS ALARCON, | ) |
| CARLOS FERNANDES, and | ) |
| OSCAR ARGUETA | ) |
| | ) |
|     **Defendants.** | ) |

_____)

## MEMORANDUM OPINION

This matter comes before the Court on defendant UNICCO Service Company's ("UNICCO") "Motion to Dismiss Counts Two, Three and Five of Complaint" [4], defendants Argueta and Fernandes's "Motion to Dismiss Complaint" [12], and defendant Alarcon's "Motion to Dismiss Complaint" [16].  Upon full consideration of the motions, the oppositions and replies thereto, the applicable law, and the entire record herein, the Court finds, for the reasons set forth below, that defendant UNICCO's motion to dismiss will be DENIED in part and GRANTED in part, defendants Argueta and Fernandes's motion to dismiss will be GRANTED, and defendant Alarcon's motion to dismiss will be DENIED.

## I.    BACKGROUND

Plaintiff Blanca Zelaya worked for defendant UNICCO as a custodian providing cleaning services at 1200 K Street in Washington, D.C., starting in 2004.  (Compl. ¶ 9. )  Plaintiff alleges that from January 2005 until November 2006, UNICCO discriminated and/or retaliated against

her based on her gender, and defendant Carlos Alarcon sexually harassed her, with the assistance of defendants Oscar Argueta and Carlos Fernandes, leading to a hostile work environment.  *(See generally id.* ¶¶ 15-60.)

With respect to the actions of individual defendants, plaintiff alleges that her problems at UNICCO began shortly after January 4, 2005, when UNICCO promoted Alarcon to the position of Building Operations Manager at 1200 K Street.  (*Id.* ¶ 13.)  As Manager, Alarcon supervised plaintiff.  *(Id.*)  According to plaintiff, almost immediately after becoming supervisor, defendant Alarcon began making offensive and unwelcome sexual comments and sexual advances toward her while she was pregnant.  (*Id.* ¶ 15.)

Plaintiff alleges that from January 2005 and continuing until April 2006, Alarcon subjected plaintiff to an extensive campaign of explicit comments, sexual propositions, unwanted touching, harassment, and other retaliatory job-related conduct after she refused his advances. (*See generally id.* ¶¶ 15-60.)  Plaintiff further alleges that Alarcon enlisted the support of the other individual defendants on his behalf.  Specifically, Alarcon first involved Argueta to "monitor" plaintiff, and to seek a reason to fire her during "spring 2005," activities that ended soon thereafter when Argueta was reassigned.  (*See id.* ¶¶ 21-23.)  These are the last, and only, acts attributed to Argueta by the complaint.

Plaintiff alleges that the stress from defendants' harassment negatively impacted her health both during and after her pregnancy. (*Id.* ¶ 28.)  As a result, starting on May 18, 2005, she took extended leave from her job and gave birth to her child prematurely.  (*Id.*)

Thereafter, beginning at some point after August 2005 when plaintiff returned to work following the birth of her son, Alarcon allegedly enlisted Fernandes to monitor plaintiff, and he is

alleged to have participated in harassment by: giving her disciplinary notices; eliminating her

break; and trying to drive her to a meeting with a human resources officer about her complaints

of harassment, all during the period from March – May, 2006. (*See id.* ¶¶ 34, 35, 45, 56.)

Plaintiff filed a discrimination complaint with the District of Columbia Office of Human

Rights ("DCOHR") on April 18, 2006, listing UNICCO as the respondent and attaching her

signed declaration, the first paragraph of which reads as follows:

> I, Blanca Zelaya, this 14th day of April, 2006, am submitting this
> declaration in support of my *claims against the UNICCO Services
> Company* ("UNICCO") for sexual harassment, creation of a hostile
> work environment, and retaliation in violation of Title VII of the Civil
> Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42
> U.S.C. § 2000e et seq., *and against UNICCO and Carlos Alarcon,
> Operations Manager*, for sexual harassment, sex discrimination, and
> unlawful retaliation in violation of the District of Columbia Human
> Rights Act ("DCHRA"), D.C. Code §§ 1-2501 et seq. (emphasis
> added).

(DCOHR Complaint Form; Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. A [13-2].) The DCOHR

complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

(Compl. ¶ 74.) The charge of discrimination generated during this process was sent via certified

mail to UNICCO on April 28, 2006, lists UNICCO as the employer that discriminated against the

plaintiff, and under the section allowing for description of the particulars of the charge, only

generically refers to a singular "Respondent's Building Operations Manager (Male)." (DCOHR

Charge of Discrimination; Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. 1 [14-2].)

In July 2006, the plaintiff further alleges that defendant Fernandes helped UNICCO

retaliate by denying her time off to attend a mediation of her claims by DCOHR. *(See* Compl. ¶

58.) On November 9, 2006, UNICCO assigned plaintiff to a position at another building. (*Id.* ¶

63.)  Plaintiff alleges that Fernandes was one of the company employees who met with her to inform her of the transfer. (*Id*.)  This is the last act attributed to Fernandes by the complaint.

Plaintiff alleges that UNICCO's retaliation culminated in terminating the plaintiff by transferring her to another building, where she claims UNICCO knew it would soon lose the maintenance contract. (*Id*. ¶¶ 63-64.)  On April 23, 2007, shortly after defendant UNICCO transferred the plaintiff to the new building, UNICCO lost the contract on the building, such that the plaintiff was no longer employed by UNICCO as of that date. (*See id.* ¶ 66.)  A new company, Cavalier, took over responsibility for cleaning the building and offered the plaintiff a position, which she turned down. *(See id.* ¶¶ 66, 69.)  However, the plaintiff alleges Cavalier constructively discharged her by offering her a work schedule that was too late in the day to allow her to take care of her son, even though other positions were available. (*Id.* ¶¶ 68-69.) Plaintiff alleges that, upon information and belief, defendants UNICCO and Alarcon made false and defamatory statements about the plaintiff, which caused Cavalier to offer her the untenable work schedule, so she would be compelled to leave. (*Id.*)  Plaintiff states that Cavalier should have offered her a different position because she had more seniority than the two other employees at the work site who held daytime positions like her.[1] (*Id.* ¶ 68.)

Plaintiff withdrew the complaint she had previously filed with DCOHR on November 14, 2007 and requested a Right to Sue Notice from the EEOC, which the EEOC issued on December 5, 2007. (*Id.* ¶ 74.)  On December 21, 2007, plaintiff filed the complaint in this matter.  The

---

[1] This allegation appears to be a reference to the rights plaintiff may have enjoyed pursuant to the Collective Bargaining Agreement applicable to her as between the Service Employees International Union Local 82 and commercial office building cleaning contractors such as Cavalier and UNICCO.

complaint consists of five counts as follows: (1) Title VII discrimination against defendant

UNICCO; (2) DCHRA discrimination against defendant UNICCO and its individual employees,

defendants Alarcon, Argueta, and Fernandes; (3) Title VII and DCHRA retaliation against

defendant UNICCO; (4) DCHRA aiding and abetting of defendant UNICCO's retaliation by

defendants Alarcon, Argueta, and Fernandes; and (5) intentional interference with prospective

contractual relations against defendant UNICCO.  Defendants' motions for dismissal target the

inadequacy of the DCHRA claims in Counts II, III, and IV and the intentional interference with

prospective contractual relations claim in Count V.

## II.     ANALYSIS

### A.     Rule 12(b)(6) Motion to Dismiss Standard

Defendants move to dismiss for failure to state claims upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When considering a motion

under Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to

state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955, 1974 (2007).  The complaint need only set forth a short and plain statement of the claim,

giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park*

*Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  This Court must construe the allegations and facts in the complaint in the light

most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be

derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing

*Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  However, the Court need

not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth

in the complaint.  *Kowal*, 16 F.3d at 1276.  Nor must the court accept as true the plaintiff's legal

conclusions.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Alexis v. District of Columbia*, 44

F. Supp. 2d 331, 336-37 (D.D.C. 1999).

Generally, when a court relies upon matters outside the pleadings, a motion to dismiss

must be treated as one for summary judgment and disposed of pursuant to Rule 56.  *See* Fed. R.

Civ. P. 12(d).  However, "where a document is referred to in the complaint and is central to the

plaintiff's claim, such a document attached to the motion papers may be considered without

converting the motion to one for summary judgment."  *Vanover v. Hantman*, 77 F. Supp 2d 91,

98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (citing *Greenberg v. Life Ins. Co. of Va.*,

177 F.3d 507, 514 (6th Cir. 1999)).  In such event, "the defendant may submit an authentic copy

to the court to be considered on a motion to dismiss, and the court's consideration of the

document does not require conversion of the motion to one for summary judgment."  11 James

Wm. Moore et al., *Moore's Federal Practice* § 56.30[4] (3d ed. 1998); *see, e.g., Faibisch v.

University of Minnesota*, 304 F.3d 797, 802-03 (8th Cir. 2002) (court could consider EEOC

charge in deciding motion for judgment on pleadings, as court may rely on matters of public

record); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan

documents that defendant attached to the motion to dismiss part of the pleadings because the

documents were referred to in the complaint and were central to plaintiff's claim for benefits

under the plan).  Here, both the plaintiff's original DCHRA complaint and the actual charge of

discrimination provided to defendant UNICCO fall under this exception because the documents

are integral to the plaintiff's claim and were attached to the parties respective pleadings, and the

Court will consider the specified documents without converting defendants' motion to one for summary judgment.

### B.  Counts II, III, & IV: DCHRA Claims

Defendants UNICCO, Argueta, Fernandes and Alarcon argue plaintiff's DCHRA claims asserted in Counts II, III, and IV ought to be dismissed for failure to state a claim because they are barred by the DCHRA's one-year statute of limitations.  Alarcon further argues he cannot be held individually liable for discrimination and retaliation under the DCHRA because he does not meet the definition of an "employer."  After construing plaintiff's complaint in the light most favorable to her, and for the reasons set forth below, the Court rejects UNICCO and Alarcon's arguments and denies their motions to dismiss the DCHRA claims, but finds that dismissal of Counts II and IV is warranted as to defendants Argueta and Fernandes.

### 1.  Statutory Tolling under the DCHRA

The DCHRA was amended in 1997 to add a tolling provision during the DCOHR administrative process.  In 2002, that provision was further amended to provide for tolling during any administrative process, whether before DCOHR or EEOC.  The private action provision in D.C. Code § 2-1403.16(a) states in relevant part:

> A private cause of action pursuant to this act shall be filed in a court of competent jurisdiction within 1 year of the unlawful discriminatory practice, or the discovery thereof . . . The timely filing of a complaint with the Office . . . *shall toll the running of the statute of limitations while the complaint is pending.* (emphasis added).

In *Estenos v. PAHO/WHO-FCU*, 952 A.2d 878 (D.C. 2008), the D.C. Court of Appeals held that "timely filing [a charge] with the EEOC, of which DCOHR promptly received a copy under the existing [work-share] agreement between the federal and local agencies, sufficed to toll

the statute of limitations period for filing in court." *Id.* at 886.  Consequently, this Court has

recently and repeatedly recognized the effectiveness of this tolling provision.  *See Bailey v.*

*Verizon Comm., Inc.*, 544 F. Supp. 2d 33, 38 (D.D.C. 2008) (Lamberth, J.); *Ware v. Nicklin*

*Associates, Inc.*, 2008 WL 4445633 (D.D.C. 2008);  *Ibrahim v. Unisys Corp*, 2008 WL 4696949

(D.D.C. 2008).

Defendants argue that plaintiff is not entitled to this protection afforded by tolling based

on the statutory language providing for *de novo* litigation of withdrawn claims under D.C. Code

§ 2-1403.16(a), which states in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of competent
> jurisdiction for damages and such other remedies as may be
> appropriate, unless such person has filed a complaint hereunder;
> *provided, that where the [D.C.] Office [of Human Rights] has
> dismissed such complaint on the grounds of administrative
> convenience, or where the complainant has withdrawn a complaint,
> such person shall maintain all rights to bring suit as if no complaint
> had been filed*.  (emphasis added).

Plaintiff is correct in noting that the "rights to bring suit as if no complaint had been

filed"-language should not be read to eviscerate the tolling provision.  There are three possible

outcomes with respect to the complaint during the administrative process: (1) a decision subject

to appeal, but with no right to trial *de novo*; (2) dismissal due to administrative convenience with

a right to trial *de novo*; and (3) voluntary withdrawal with a right to trial *de novo*.  Because

tolling is irrelevant to appeals from administrative decisions (due to the 30-day period for filing

an appeal set by the D.C. Court of Appeals), if the tolling provision has no effect when the

employee withdraws the complaint, and has no effect when the DCOHR dismisses the complaint

for administrative convenience, then the tolling provision is useless.  The Court declines to adopt

8

defendants reading of this statute, which would render the tolling provision wholly ineffective with respect to administratively dismissed or withdrawn complaints.

In the instant case, plaintiff filed her complaint with the DCOHR on April 14, 2006 and it was cross-filed with the EEOC. Plaintiff withdrew the DCOHR complaint on November 14, 2007 and requested a right-to-sue letter from the EEOC at that time. Plaintiff received that letter on December 5, 2007, and filed her complaint with this Court on December 21, 2007. As a general matter then, under D.C. Code § 2-1403.16 and the case law discussed *supra*, plaintiff's original DCHRA claim was tolled for statute of limitations purposes between April 14, 2006, when the complaint was filed, and November 14, 2007, when she withdrew the complaint. The Court now proceeds to address the effect of that tolling on the defendants' motions to dismiss the DCHRA claims present in this civil action.

**2. Plaintiff's DCHRA Claims are Not Time-Barred as to UNICCO and Alarcon**

The analysis of the statutory tolling issue presented *infra* dispenses with UNICCO and Alarcon's argument that the DCHRA tolling provision is ineffective due to plaintiff's withdrawal of the DCOHR complaint. As such, plaintiff's initial DCOHR complaint from April 2005 tolled the running of the statute of limitations on her allegations of discrimination that occurred within the year prior to date she filed with the DCOHR. The statute of limitations began to run again when the DCOHR granted her request to withdraw her charge from the administrative process on November 14, 2007. Plaintiff filed suit five weeks later, on December 21, 2007. Plaintiff's complaint therefore incorporates all of UNICCO and Alarcon's numerous alleged discriminatory

and retaliatory acts encompassed in her original DCHRA complaint, as well as the alleged activities of a similar character occurring after that date.

Plaintiff's DCHRA claims as to these defendants are therefore timely filed barring some other applicable grounds for dismissal. UNICCO asserts no other cognizable basis for relief, and Alarcon asserts theories based on: (1) lack of individual liability for DCHRA claims; and (2) lack of identification as a respondent with respect to the original DCOHR complaint and charge. Neither theory requires the court to grant dismissal.

### 3. Plaintiff May Hold Alarcon Individually Liable for DCHRA Claims

Alarcon, as plaintiff's former supervisor, can be held individually liable for discrimination and retaliation under the DCHRA because he meets the definition of an "employer" under governing case law. The D.C. Court of Appeals has interpreted the DCHRA discrimination provisions to apply to a plaintiff's supervisors in their individual capacities. *Wallace v. Skadden, Arps, Slate Meagher & Flom*, 715 A.2d 873, 888 (D.C.1998) (holding that the definition of employer, which includes "'any person acting in the interest of such employer, directly or indirectly,' necessarily includes a partner.") This Court has twice extended this holding to non-partner individual supervisors in other contexts. *See Lance v. United Mine Workers of Am.1974 Pension Trust*, 400 F. Supp. 2d 29, 32 (D.D.C. 2005) (Lamberth, J.); *MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005).

### 4. Plaintiff Identified Alarcon as a Respondent in Her DCOHR Complaint

Alarcon has clearly been designated a respondent for the purposes of plaintiff's claims from their inception – without Alarcon's alleged activities, this suit would not exist. Plaintiff's DCOHR complaint form asks the complainant to list the "name of company or organization" as

the respondent, and plaintiff understandably listed UNICCO.  The complaint form provides

further space to describe the allegations of discrimination, as well as the names of persons

involved in the discrimination.  In that space, plaintiff notes the attachment to the complaint of a

signed, sworn declaration, which expressly states that the document is submitted in support of

Title VII and DCHRA claims against UNICCO and *Alarcon*.

Likewise, the signed, sworn DCOHR charge of discrimination provided to UNICCO lists

UNICCO as the respondent employer that discriminated against plaintiff.  However, in the

section of the document containing the particulars of the complaint, plaintiff details various

conduct by "Respondent's Building Operations Manager (Male)" – a clear reference to the

alleged activities of Alarcon.  Under these circumstances, the Court finds that defendants

UNICCO and Alarcon received adequate notice and the statutory opportunity to mediate by

service of the charges on them as identified respondents such that plaintiff is entitled to equitable

tolling of DCHRA's statute of limitations.

### 5. Plaintiff's DCHRA Claims Against Argueta and Fernandes are Time-Barred Because She Did Not Identify These Defendants as Respondents

Defendants Argueta and Fernandes primarily rely on the aforementioned erroneous

interpretation of the effectiveness of the DCHRA tolling provision as grounds for moving to

dismiss the complaint.  Though the Court rejects that argument as discussed *supra*, it nonetheless

finds that Argueta and Fernandes's motion to dismiss must be granted.

Unlike UNICCO and Alarcon, Argueta and Fernandes were not sufficiently identified as

co-respondents in plaintiff's DCOHR claim or DCOHR charge to effectuate equitable tolling of

the one-year DCHRA statute of limitations provision as to claims against them.  In fact, the only

reference to Argueta or Fernandes in either the DCOHR complaint, attached declaration, or charge of discrimination, is as site managers Alarcon enlisted to "monitor" plaintiff, apart from vague innuendos of conspiring with Alarcon – the only individual expressly charged with DCHRA violations in the declaration – to have plaintiff fired.

These circumstances do not require the Court to apply equitable tolling for plaintiff's DCHRA claims against these defendants because they failed to received adequate notice and the statutory opportunity to mediate by service of the charges against them as identified respondents. The plaintiff's December 21, 2007 complaint alleges no specific facts implicating these defendants in any wrongdoing after December 21, 2006 that would otherwise fall within the applicable one-year statutory period for claims brought under the DCHRA.  Accordingly, plaintiff has failed to state a claim against Argueta and Fernandes in Counts II and IV, and the entirety of the complaint as to these defendants must be dismissed.

 **C.**   **Count V: Intentional Interference with Prospective Contractual Relations**

Defendant UNICCO argues Count V of the complaint ought to be dismissed because the plaintiff fails to state a claim for intentional interference with prospective contractual relations under District of Columbia law.  After construing plaintiff's complaint in the light most favorable to her, and for the reasons set forth below, the Court agrees with UNICCO and grants its motion to dismiss Count V accordingly.

### 1.  Plaintiff Has Failed to State a Claim for Intentional Interference with Prospective Contractual Relations

In order to state a claim for intentional inference with prospective contractual relations (i.e. economic advantage) under District of Columbia law, the plaintiff must plead sufficient facts

to show: (1) the existence of a valid business relationship or expectancy between plaintiff and Cavalier; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage. *See Gross v. Davis*, 2003 U.S. Dist. LEXIS 3427, *9 (D.D.C. 2003), *citing Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). Plaintiff has failed to make the requisite showing to support the first and third elements of the claim.

As a preliminary matter, plaintiff's complaint and subsequent pleadings leave some confusion as to the nature of the *valid* business relationship or expectancy she is asserting in order to satisfy the first element of the claim. Plaintiff's complaint vaguely references her seniority over the other former UNICCO employees Cavalier offered day shift positions to, but does not otherwise plainly state the source of her expectancy. UNICCO suggests the Court may infer from plaintiff's "seniority rights" reference that she had an expectancy as a union member based upon a Collective Bargaining Agreement, and that Cavalier had an obligation to retain employees at the work site based upon the CBA in order of seniority. However, plaintiff never embraces this position in her pleadings, instead choosing to spend the bulk of her efforts arguing the validity of her claim on at-will employment grounds. Regardless, the Court finds that plaintiff's claim is deficient under either theory.

To the extent that plaintiff attempts to satisfy the first element of her claim on a theory of constructive discharge from an anticipated at-will employment relationship, such an argument is foreclosed by applicable case precedent. Plaintiff invites the Court to rely on *Haddle v. Garrison*, 525 U.S. 121 (1998), to support her assertion of a valid claim for third party

intentional interference with prospective contractual relations where the expectancy involves an at-will employment relationship. The Court declines to do so under these circumstances. The relevant portion of the *Haddle* opinion on which plaintiff relies is not controlling here because, as this Court has previously stated, *Haddle* does not address a claim of tortious interference with a prospective economic advantage analogous to the prospective contractual relations at issue in the instant matter. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp 2d 27, 34 n. 3 (D.D.C. 1999) (Lamberth, J.). Instead, *Haddle* determined that tortious interference with existing at-will employment recognized under Georgia state law qualified as a harm redressable in the context of a conspiracy to interfere with civil rights action brought under 41 U.S.C. § 1985.

Unlike *Haddle's* federal statutory rights posture, District of Columbia law governing the disposition of plaintiff's tort claim, as delineated in *McManus v. MCI Communications Corp.*, 748 A.2d 949, 957 (D.C. 2000) and elsewhere, has consistently failed to recognize a cause of action for intentional interference with prospective contractual relations where the expectancy is based on at-will employment. *See also Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 72-73 (D.D.C. 2005); *Riggs v. Home Builders Institute*, 203 F. Supp. 2d 1, 24-25 (D.D.C. 2002). The D.C. Court of Appeals in *McManus* clarified any confusion over such claims by explaining that it "has never held that an employee can maintain a suit for interference with *prospective advantage* where her expectancy was based on an at-will employment relationship, and we do not do so now." *McManus*, 748 A.2d at 957. Echoing the observations expressed in *Daisley*, the Court recognizes existing D.C. case law has not altogether adequately addressed the precise factual scenario presented here, where a third party former employer is alleged to have interfered with a parties prospective contractual relations with a potential future employer. 372 F. Supp. 2d at 72

14

n.6.  However, the Court does not believe plaintiff's allegations in this case provide an occasion

to make the judicial leap necessary to hold that D.C. law permits a prospective at-will employee

to recover against a third party unrelated to the potential employer based on a theory of

intentional interference with prospective contractual relations.

This is so because plaintiff also fails to satisfy the third element of her intentional

interference with prospective contractual relations claim, regardless of whether or not plaintiff's

expectancy was based on at-will employment or some other rights.  The intentional interference

required for the plaintiff's claim is premised entirely on a defamation allegation that is fatally

deficient under the *Twombly* pleading standard.  At the heart of this claim is plaintiff's nebulous

assertion of "information" and belief defendants UNICCO and Alarcon made false and

defamatory statements to Cavalier that caused the new cleaning contracting company to deny the

plaintiff a work schedule, and therefore a job, comparable to that which she had with UNICCO.

As correctly noted by the defendants, plaintiff fails to offer any information or facts – such as

who spoke to Cavalier, when, and what was said – to inform this belief aside from rank

speculation that the only explanation for Cavalier's failure to offer her a day shift position is that

UNICCO defamed her to its competitor company.[2]  Indeed, plaintiff effectively concedes she has

no facts to support her allegation and is speculating.  (*See* Pl.'s Opp. to Def.'s Mot. to Dismiss at

14-15 [6] (arguing that the only "plausible" explanation for her new employer's failure to offer

her the schedule she preferred is that someone must have spoken ill of her, and it is further

_____

[2] This is not the first time this Court has dismissed tortious interference claims based on libel and slander where the complaint is silent as to the statements that allegedly disparaged plaintiff.  *See Sheppard,* 59 F. Supp. 2d at 21-22.  Moreover, *Sheppard* was decided before the arguably heightened pleading standard applied post-*Twombly*.

15

"highly plausible" that defendants would continue working together in their efforts to have

Cavalier fire her.)) Contrary to the detailed factual allegations her complaint provides in relation

to the other counts, plaintiff's complete reliance on a conclusory defamation allegation to satisfy

the third element of her claim does not raise a right to relief above the purely speculative level, or

"nudge [the] claims from conceivable to plausible," and therefore requires dismissal. *Twombly*,

127 S.Ct. at 1974.

III.   **CONCLUSION**

Upon full consideration of the parties' filings, applicable law, and the record herein, this

Court concludes that defendant UNICCO's Motion to Dismiss Counts II, III, and IV of the

Complaint [4] is GRANTED in part and DENIED in part, defendants Argueta and Fernandes's

Motion to Dismiss [12] is GRANTED, and defendant Alarcon's Motion to Dismiss [16] is

DENIED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on November 26, 2008.