UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BLANCA ZELAYA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-2311 (RCL) |
| UNICCO SERVICE COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on plaintiff Blanca Zelaya's Motion to Compel [43]. Upon consideration of the motion, the opposition and reply thereto, and the entire record herein, the Court concludes that plaintiff's motion should be denied with respect to Document Request No. 12 and Interrogatory No. 6 with conditional leave to file an renewed motion to compel. Furthermore, plaintiff's motion will be granted with respect to all of the requested privilege log documents, except for privilege log document 20, and plaintiff will be granted conditional leave to file a renewed motion to compel.

**I.     BACKGROUND**

Plaintiff Blanca Zelaya brought this action against her former employer UNICCO Service Company and her former supervisor Carlos Alarcon. She alleges discrimination and retaliation against her based on her gender. (*See generally* Compl. ¶¶ 15–60.) In the motion before the Court, she seeks to compel production of documents she requested from defendants during discovery. (Pl.'s Mem. of P. & A. [43-1] at 1.)

Two groups of documents are currently at issue. First, plaintiff's Interrogatory No. 6 and Document Request No. 12 demand all claims of gender discrimination against UNICCO and its employees from January 1, 2004 until the time of the discovery request, January 9, 2009. (Pl.'s First Req. for Produc. of Docs. [43-3] at 5, 12; Pl.'s First Set of Interrogs. [43-4] at 4, 8–9.) In their response of February 27, 2009, defendants objected to plaintiff's request as overbroad. (Defs.' Resps. to Req. for Produc. [43-5] at 15–16; Defs.' Resps. to Interrogs. [43-6] at 23–25). The parties subsequently agreed to limit discovery of gender discrimination claims to UNICCO's East Region, which includes the area where plaintiff was employed, Washington, D.C. (Defs.' Opp. [44] at 5; Pl.'s Reply [47] at 13.) They also limited the temporal scope of discovery to the term of plaintiff's employment with UNICCO. (*Id.*) Defendants submitted supplemental responses on May 8, 2009 (Defs.' Supplemental Resps. to Req. for Produc. [43-7]), in which they produced what they claim are the only three allegations of sexual harassment that conform to the parties' discovery agreement. (Defs.' Opp. [44] at 8.)

Plaintiff now desires company-wide complaints, in particular those that were handled in whole or in part by supervisors in UNICCO's Boston headquarters. (Pl.'s Mem. of P. & A. [43-1] at 13–14.) Additionally, defendants redacted names from the three claims they produced, and plaintiff requests unredacted versions of those documents. (Pl.'s Reply [47] at 14.) The parties have engaged in discussion via letter and telephone conference to resolve the disputes at issue here. (Letters between Counsel [43-9]; Defs.' Opp. [44] at 5 n.4.) Defendants object that plaintiff's request is overbroad and encompasses irrelevant material. (Defs.' Opp. [44] at 6–9.) They further argue that plaintiff's request violates their existing discovery limitation agreement. (*Id.* at 5–6.)

The second area of dispute encompasses sixteen documents over which defendants assert the attorney-client privilege.[1] (Pl.'s Mem. of P. & A. [43-1] at 1, 9–12.)

## II.   DISCUSSION

### A. Interrogatory No. 6 and Document Request No. 12

*1. Legal Standard*

Federal Rule of Civil Procedure 26(b) sets forth the applicable standard for permitting discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1).

Thus, the "general rule in legal actions is to favor broad disclosure." *CFTC v. McGraw-Hill Cos.*, 390 F. Supp. 2d 27, 31 (D.D.C. 2005). Absent a valid claim of privilege or an unduly burdensome request, "[a] request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001)).

The parties frame their arguments within the inquiry of whether "other supervisor" evidence—evidence of "discrimination [against non-parties] at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff"—is relevant in this case and therefore discoverable.

---

[1] Plaintiff also demanded production of defendant Alarcon's personnel file from an earlier period of employment with UNICCO and attachments to e-mails produced by UNICCO. (Pl.'s Mem. of P. & A. [43-1] at 2.) She has since withdrawn these demands. (Pl.'s Reply [47] at 1 n.1.)

3

*Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S. Ct. 1140, 1143 (2008) (assessing relevance under Federal Rules of Evidence 401 and 403); *see* FED. R. CIV. P. 26(b)(1). Whether "other supervisor" evidence is relevant "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint*, 128 S. Ct. at 1147. Other factors to be considered are "whether such past discriminatory behavior by the employer is close in time to the events at issue in the case [and] whether the same decisionmakers were involved . . . ." *Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008).

Within the "other supervisor" evidence inquiry lies the question of whether, in a non-class action employment discrimination suit, the plaintiff may obtain discovery of information from outside the unit that employed her. The decision in *Owens v. Sprint* sets forth the relevant standard:

> In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit. Discovery may be expanded from the Plaintiff's employing unit, however, if the plaintiff can show the requested information is "particularly cogent" to the matter or if the plaintiff can show a "more particularized need for, and the likely relevance of, broader information." *Owens*, 221 F.R.D. at 654 (citing *Heward v. W. Elec. Co.*, No. 83-2293, 1984 WL 15666, at *6 (10th Cir. July 3, 1984); *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995)); *accord Prouty v. Nat'l R.R. Passenger Corp.*, 99 F.R.D. 545, 547 (D.D.C. 1983).

2. *Relevance and Scope of Document Request No. 12* and *Interrogatory No. 6*

Plaintiff demands all complaints of gender discrimination made against UNICCO or its employees during the five years prior to plaintiff's discovery request.[2] Defendants

---

[2] Document Request No. 12 demands "[a]ll formal and informal complaints, charges, concerns, grievances, allegations, and/or reports of gender discrimination, including sexual harassment, or retaliation made

lodge three objections. First, they object to the request's scope. This case, they argue, deals only with interactions between one supervisor and one employee, and plaintiff cannot show "particularized need for, and the likely relevance of" claims from outside the East Region. (Defs.' Opp. [44] at 8 n.5 (quoting *Owens*, 221 F.R.D. at 654.) They also oppose the temporal scope of plaintiff's request, which encompasses the five years from January 1, 2004 to the time of the request. Finally, they object that plaintiff has impermissibly expanded the scope of her theory of the case to require further discovery. (Defs.' Opp. [44] at 7–8.) Although the latter two objections pose no bar to discovery, the Court finds that plaintiff has thus far failed to demonstrate that claims from outside the East Region are "particularly cogent" to her case. But because some of the documents over which defendants claim privilege may tend to demonstrate the relevance of this "other supervisor" evidence, plaintiff will be granted conditional leave to filed a renewed motion to compel once the Court determines whether those documents are in fact privileged.

### a. First Objection: Plaintiff Requests Irrelevant Material

Defendants object to Interrogatory No. 6 and Document Request No. 12 on grounds that plaintiff's claim relates to sexual harassment by one employee and that harassment claims at other UNICCO worksites are irrelevant. (*Id.* at 6, 8.) They also

---

against defendants or their current or former employees, divisions, departments or offices, including internal complaints, Equal Employment Opportunity Commission or District of Columbia Office of Human Rights [c]harges, complaints filed with state agencies, including the Commonwealth of Massachusetts Commission Against Discrimination, and complaints filed in a state or federal court." (Pl.'s First Req. for Produc. of Docs. [43-3] at 12.) Interrogatory No. 6 is almost identical to the foregoing and also demands that UNICCO "[i]nclude in [its] response identification of the person who made the complaint, the alleged discriminatory official named, the location in which the alleged discrimination occurred, documents related to the complaint, and any actions taken by UNICCO Service Company in response to the complaint." (Pl.'s First Set of Interrogs. [43-4] at 8–9.) The information requested is for the time period from "January 1, 2004 to the present." (*Id.* at 4; Pl.'s First Req. for Produc. of Docs. [43-3] at 5.)

5

argue that plaintiff cannot "tie any of the identified discrete acts of other supervisors to [UNICCO's] decision to terminate her employment." (*Id.* at 7 (citing *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1209 n. 15 (D. Kan. 2008).)

*Sprint* establishes that "evidence of an employer's past discriminatory or retaliatory behavior toward other employees may be relevant to whether an employer discriminated or retaliated against a plaintiff." *Elion*, 544 F. Supp. 2d at 8 (citing *Sprint*, 128 S. Ct. at 1147). Under the factors articulated in *Sprint* and *Elion*, plaintiff's request for "other supervisor" evidence exceeds the scope of discoverable information. First, the information sought is not closely related to "plaintiff's circumstances and theory of the case." *Sprint*, 128 S. Ct. at 1147. Plaintiff correctly notes that her case relates not just to a claim of sexual harassment by one employee, but also to UNICCO's alleged complicity in discrimination and retaliation against her. (Compl. ¶ 77; *see* Pl.'s Reply [47] at 14–15.) However, she fails to demonstrate that claims from outside the East Region are "particularly cogent" to her case. *Owens*, 221 F.R.D. at 654. Plaintiff submits several arguments why the Boston headquarters' handling of other discrimination claims is relevant to her case, each of which the Court addresses here:

*i.* First, plaintiff makes the general claim that "other supervisor" evidence may show "a company-wide policy of tolerating or even encouraging discrimination." (Pl.'s Mem. of P. & A. [43-1] at 13.) Although this evidence could fit into plaintiff's theory of the case, *Sprint*, 128 S. Ct. at 1147, it does not address whether the evidence she presents shows a "particularized need" for information from outside her employing unit. *Prouty*, 99 F.R.D. at 547; *Owen*, 221 F.R.D. at 654.

  *ii.* Plaintiff presents several exhibits meant to show that supervisors with company-wide responsibilities were involved in discrimination and retaliation against her. The deposition of Robert Fuller, the property manager of the building where the alleged harassment occurred, indicates that UNICCO employees suggested to him that "in situations like this" transferring plaintiff out of the building "may be the best course of action." (Fuller Tr. [47-4] at 7–8.) However, the two UNICCO employees implicated in that discussion were Iva Lyons and Charles Restivo, respectively the Human Resources ("HR") Director and Senior Operations Manager of the East Region. (*Id.* at 3; Lyons Tr. [47-1] at 3; Doc. No. 794 [47-6] at 2 (listing Iva Lyons as "Director of Human Resources – East Region"); Doc. No. 1781 [47-7] at 2 (listing Charles Restivo as "Senior Director of Operations" with an Arlington, Virginia area code); Defs.' Opp. [44] at 9 (referring to the "East Region's senior director of operations).) Plaintiff does not show that any supervisors from the Boston headquarters were involved in that conversation.

  *iii.* Plaintiff submits a letter from her attorney to UNICCO's in-house counsel in the Boston headquarters that "detail[s] UNICCO's harassment and retaliation following [UNICCO headquarters'] express notification of [plaintiff's] complaints." (Pl.'s Mem. of P. & A. [43-1] at 13; Letter of June 1, 2006 [43-13] at 2–3.) The letter merely reveals that counsel from the headquarters office were in contact with plaintiff's attorney regarding her claim. The alleged misconduct described in the letter involved only employees within the East Region.

  *iv.* Plaintiff submits UNICCO's position statement sent to the D.C. Office of Human Rights for the proposition that "half of the UNICCO officials familiar with the allegations are Boston area based." (Pl.'s Mem. of P. & A. [43-1] at 13; UNICCO

Position Statement [43-14] at 6.)  Defendants rightly point out that the document merely confirms that the appropriate supervisors were notified of the complaint after it was filed. (Defs.' Opp. [44] at 9.)  The letter does not implicate headquarters personnel in discrimination or retaliation against plaintiff.

    *v.*  Plaintiff argues that claims from outside the East Region handled by UNICCO's headquarters office may show that "UNNICO [*sic*] likely knew that its treatment of [plaintiff] could result in a finding that its conduct was unlawful," which would entitle her to punitive damages.  (Pl.'s Mem. of P. & A. [43-1] at 13.)  She proceeds on the theory that UNICCO may assert as an affirmative defense that it informed plaintiff of a complaint procedure for discrimination claims.  (*Id.* at 14.) Plaintiff maintains that UNICCO did not post information that would inform her of such a procedure.  If UNICCO knowingly violated laws regarding the posting of employee rights information "even after such requirements had been emphasized" by a conciliation agreement into which UNICCO had entered in Massachusetts (Compl. ¶¶ 70–73), then UNICCO could be held liable for punitive damages.  Everything plaintiff says here is true, but it ignores that plaintiff's own evidence shows East Region supervisors were responsible for ensuring that employee rights information was posted.  (Lyons Tr. [47-1] at 20–25.)  Plaintiff fails to demonstrate the likelihood that any headquarters supervisors were complicit in the alleged failure to post employee rights information.

    *vi.*  Plaintiff submits evidence that UNICCO "failed to give its supervisors and employees sex harassment training" (Pl.'s Reply [47] at 15; Gaitan Tr. [47-3] at 3–4; Soltero Tr. [47-2] at 12–13), but fails to prove that supervisors at UNICCO headquarters were involved in this omission.  The only training-related evidence involving a

headquarters-based supervisor merely establishes that this supervisor, the Equal Employment Opportunity ("EEO") Director, was not aware of any documentation showing that defendant Alarcon had attended a training session. (Soltero Tr. [47-2] at 12–13.) Lack of knowledge about specific documents regarding specific training of a specific employee may establish a less than perfect memory, but it hardly establishes supervisor's knowledge of or complicity in the failure to give such training.

*vii.* Plaintiff argues that UNICCO "apparently failed to investigate a claim of sexual harassment in the workplace for one month to six weeks." (Pl.'s Reply [47] at 15.) The evidence she presents in relation to this claim does not implicate any supervisors in the Boston headquarters. (*See id.* at 15 n.12 and cited exhibits.)

*viii.* Finally, plaintiff submits e-mails and attachments from one of plaintiff's former supervisors and from her building's property manager to UNICCO's in-house counsel and EEO Director. (Doc. No. 794 [47-6] at 2–3; Doc. No. 1784 [47-7] at 5–7.) The first attachment is a memo that in-house counsel "requested," which was sent to plaintiff and reminds employees not to leave their work area during their shift and not to arrive to work later than the established starting time. The second attachment is a letter that provides for plaintiff's transfer to a different building.

It is true that these e-mails were sent to UNICCO supervisors with company-wide responsibilities, but plaintiff again fails to establish that these supervisors had a hand in the alleged discrimination and retaliation against plaintiff. The e-mails are dated August 8, 2004 and October 20, 2004. By that time, plaintiff's discrimination complaint with the D.C. Office of Human Rights had been pending for several months. (Compl. ¶ 50.) It seems far more likely that the company-wide EEO Director and in-house counsel wanted

to stay apprised of any events that might later become relevant to potential litigation. As the Fuller deposition indicates, the decision to transfer plaintiff to a different building appears to have originated with East Region employees. (Fuller Tr. [47-4] at 7–8.)

Plaintiff has not submitted convincing evidence that supervisors beyond the East Region were implicated in discrimination and retaliation against her. Without such evidence, plaintiff cannot show that discrimination claims from outside the East Region are relevant to her theory of the case or that the same decisionmakers were involved. *See Sprint*, 128 S. Ct. at 1147; *Elion*, 544 F. Supp. 2d at 8. Without more, her argument that other claims handled by the Boston office are relevant to her case cannot succeed.

### b. Second Objection: Temporal Scope of Plaintiff's Request

A second factor in determining whether "other supervisor" evidence is relevant is whether the events giving rise to that evidence occurred "close in time to the events at issue" in plaintiff's case. *Elion*, 544 F. Supp. 2d at 8. The Court finds that the temporal scope of plaintiff's request is no bar to discovery. Plaintiff requests all claims from January 1, 2004 to January 9, 2009. (Pl.'s First Set of Reqs. for the Produc. of Docs. [43-3] at 26.) Her period of employment with UNICCO ran from December 2004 to April 2007 (Compl. ¶¶ 10, 69), and she alleges discriminatory and retaliatory acts throughout that period (*see generally id.* ¶¶ 11–69). Discovery of the claims in the year before and two years after plaintiff's employment with UNICCO appears to fall within the acceptable scope of discovery.[3]  *See Owens*, 221 F.R.D. at 655 n.29, 656 (collecting

---

[3] Defendants also object to plaintiff's discovery requests on grounds of UNICCO's size: it has 10,000 worksites and 17,000 employees at any one time. (Defs.' Opp. [44] at 6.) To the extent defendant argues that discovery of company-wide discrimination claims would be unduly burdensome, the Court rejects this argument. The *Owens* court permitted discovery of discrimination claims starting two and a half years

cases).  Defendants object in a conclusory fashion to the temporal scope of discovery and provide no cases that oppose the Court's conclusion.  (Defs.' Opp. [44] at 6.)

### c. Third Objection:  Expansion of Plaintiff's Theory of the Case

Defendants object to Interrogatory No. 6 and Document Request No. 12 on grounds that plaintiff has impermissibly expanded the theory of her case so as to require the broad discovery she has requested.  (Defs.' Opp. [44] at 7–8.)  Defendants rely on the district court case remanded from the Supreme Court's decision in *Sprint*, which noted that the plaintiff in that case had improperly "reinvented the theory of her case" in order to make proper the introduction of certain evidence.  *Mendelsohn*, 587 F. Supp. 2d at 1205 n.5.  Here, defendants ignore that the plaintiff in *Mendelsohn* tried to change her theory of the case after that theory had already been set in stone by the pretrial order.  *Id.*  There have been no developments in this case so far that would similarly make plaintiff's theory of the case completely inflexible.  Furthermore, her theory that decisionmakers with company-wide responsibilities were involved in her termination seems entirely consistent with an allegation she set forth in her original complaint—namely, that UNICCO was complicit in the discrimination and retaliation against her.  (Compl. ¶ 77.)  The Court therefore finds that defendants' third objection is no bar to discovery of company-wide discrimination claims.

### 3. The Parties' Prior Agreement to Limit the Scope of the Request

---

prior to the alleged discriminatory conduct in an organization with 3,000 more employees than UNICCO.  *Owens*, 221 F.R.D. at 653, 656.

Defendants argue that plaintiff's demand for all formal and informal sexual harassment claims against UNICCO and its employees should be denied because the parties previously agreed to limit discovery to the East Region. (Defs.' Opp. [44] at 5–6; Defs.' First Supplemental Resps. [43-7] at 16.) Plaintiff responds that she never waived her right to seek company-wide claims "regardless of what emerged during discovery" (Pl.'s Reply [47] at 13–14), and she submits the information that arose during discovery which prompted her to seek the requested documents.

A weighing of the equities reveals that this agreement should not act as a complete bar to further discovery. It is true that the parties initially agreed to limit discovery of harassment claims to the East Region, but plaintiff claims and defendants do not dispute that she never waived her right to seek company-wide claims regardless of new facts that arose during discovery. (*Id.*) To deny plaintiff the opportunity to follow up on any leads would contravene plaintiff's right to broad discovery, *see* FED. R. CIV. P. 26(b)(1), especially if a lead demonstrates a strong potential to produce relevant evidence.

Defendants also argue that this motion to compel comes "at the close of discovery" and thus should be barred as untimely. (Defs.' Opp. [44] at 2.) This Court extended the discovery period to December 2, 2009 (Order [40] at 1), and plaintiff filed her motion to compel on November 24, 2009 (Pl.'s Mem. of P. & A. [43-1] at 17). Although plaintiff's motion cuts it close, it is noteworthy that much of the evidence on which she relies in her motion did not come to light until very near November 24. Iva Lyons was deposed on November 17, Glisette Soltero on December 2, Ramon Gaitan on November 18, and Robert Fuller on November 24. (Lyons Tr. [44-1] at 1; Soltero Tr.

[44-2] at 1; Gaitan Tr. [44-3] at 1; Fuller Tr. [44-4] at 1.) Although none of this testimony persuades the Court that plaintiff has a "particularly cogent" need for company-wide gender discrimination claims, the fact that this crucial part of discovery was "back-loaded" persuades the Court that filing a motion to compel near the end of discovery was not inappropriate.

### *4. Conclusion*

Although plaintiff's demand for all gender discrimination complaints over a five-year period is appropriate as regards the scope of her theory of the case and the temporal scope of her case, she has thus far been unable to show a "particularized need" to expand discovery beyond the East Region. Her motion to compel responses to Interrogatory No. 6 and Document Request No. 12 must therefore be denied. However, upon consideration of defendants' opposition, the Court finds that the inquiry cannot end here. Defendants imply that the EEO Director and in-house counsel gave "advice and counsel to local staff as to decisions considered and made" related to plaintiff's employment. (Defs.' Opp. [44] at 9.) Such advice and counsel has the potential to implicate headquarters-based supervisors in decisions related to plaintiff's termination. Furthermore, defendants assert the attorney-client privilege over some of the documents detailing the nature of that advice. Although plaintiff has so far proffered no evidence showing "particularized need" for discovery of claims beyond the East Region, this does not necessarily mean that such evidence does not exist. Therefore, the Court will grant plaintiff conditional leave to file a renewed motion to compel responses to Interrogatory No. 6 and Document

Request No. 12 once it determines whether defendants have validly asserted privilege over the documents at issue.[4]

### B. Attorney-Client Privilege

*1. Legal Standard*

Defendants invoke the attorney-client privilege to shield certain documents from discovery. In *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984), the Court of Appeals set forth the controlling test for determining whether the privilege attaches:

> "The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Id.* (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950)).

The burden of "presenting sufficient facts to establish the privilege" rests with the party claiming it. *In re Sealed Case*, 737 F.2d at 99. To accomplish this, the claimant must present "affidavits or other competent evidence" that "support[s] each of the essential elements necessary to sustain a claim of privilege." *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000) (Lamberth, J.) (citing *Alexander v. FBI*, 186 F.R.D. 102, 107, 111 (D.D.C. 1998)). The descriptions of the documents over which the privilege is claimed must provide enough information for the court to "determin[e] whether the privilege was properly invoked." *Alexander v. FBI*, 192 F.R.D. at 45.

---

[4] Plaintiff also demands unredacted versions of the three complaints of gender discrimination that UNICCO has produced. (Pl.'s Reply [47] at 14.) She argues that there was never an agreement that these complaints could be produced with names redacted. (*Id.* at 14 n.6.) Defendants present no counterargument, and nothing in the record contradicts plaintiff's argument. Therefore, UNICCO will be ordered to produce unredacted versions of these complaints.

*2. Discussion*

Plaintiff demands production of documents 1, 7, 14, 19, 20, 34, 35, 36, 45, 46, 55, 56, 58, 59, 71, and 73 in defendants' privilege log.  (Pl.'s Mem. of P. & A. [43-1] at 1.) The Court finds that defendants have not provided sufficient information to sustain their burden of proof that the attorney-client privilege properly attaches.  *Alexander*, 192 F.R.D. at 45.  The Court will compel disclosure of all requested privilege log documents, except for document 20.[5]

Defendants have failed to submit "competent evidence" to support their claims of privilege.  They provided a privilege log with short descriptions of the subject matter of each communication (Second Supplemental Privilege Log [44-3]), but "descriptions of the documents are so brief and of such a general nature that they fail to give the court [evidence supporting each of the essential elements necessary to sustain a claim of privilege.]"  *Alexander*, 192 F.R.D. at 45.  Additionally, defendants have provided no sworn statements testifying to fulfillment of the elements required for the privilege.  The one exhibit that defendants present is the deposition of UNICCO's EEO Director, wherein she testifies about her role as a "conduit" for counsel.  (Soltero Tr. [50-1] at 3.) This broad statement of an employee's general duties, however, is not sufficient to support a claim of privilege with the requisite specificity.  As noted by the plaintiff,

---

[5] Defendants need not produce document 20.  As they point out, plaintiff failed to confer with defense counsel as to this document pursuant to Local Rule 7(m).  (Defs.' Opp. [44] at 13 n.9; Letter of Nov. 12, 2009 [43-9].)  Plaintiff's reply does not address defendants' argument, and nothing in the record contradicts it.  Therefore plaintiff's motion to compel will be denied as to this document.

"subordinates" of a member of the bar to which the protection attaches may include "any law student, paralegal, investigator or other person acting as the agent of a duly qualified attorney under the circumstances that would otherwise be sufficient to invoke the privilege." (Pl.'s Reply Mem. in Supp. of Mot. to Compel [47] at 2-3 (quoting *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979) (citation omitted).) Neither Ms. Soltero nor Ms. Lyons work for the in-house counsel or are supervised by attorneys; because they are not agents of any attorney, communications to and from them are not within the scope of the privilege. (*See id.* at 3 & n.2.) Also, carbon copying some emails to in-house counsel will not provide the basis for attaching the attorney-client privilege. (*See id.* at 5 (citing *Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.")).)

   Defendants had their opportunity to provide the plaintiff and this Court with the necessary information to sustain a determination that the attorney-client privilege attaches to the requested privilege log documents. Defendants filed the privilege log with this Court two weeks after receipt of the plaintiff's Motion to Compel; they chose to offer general assertions rather than specific indications of privilege. (Def.'s Opp. to Pl.'s Mot. to Compel [44-3] Ex. C (filed on Dec. 8, 2009).) Any allowance of leave for defendants to amend their privilege log to offer more specificity is unwarranted. It will only add delay to these proceedings and likely require another round of motions to compel based on the new Third Supplemental Privilege Log.  In combination with the defendants' attempt to satisfy an attorney-client privilege standard set forth by the Fifth Circuit in *United States v. Robinson*, 121 F.3d 971, 974 (1997), rather than the more stringent

16

governing law for this circuit, *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984), defendants have taken their proverbial one bite at the apple and lost. (*See* Defs.' Opp. to Pl.'s Mot. to Compel [44] at 10; Pl.'s Reply Mem. in Supp. of Mot. to Compel [47] at 5–6.)

In light of the foregoing, the defendants will be ordered to disclose privilege log documents 1, 7, 14, 19, 34, 35, 36, 45, 46, 55, 56, 58, 59, 71, and 73.

### III.   THE ORDERED RELIEF

Plaintiff has failed to present evidence showing a "particularized need" to discover gender discrimination claims beyond UNICCO's East Region, and her motion will be denied with respect to Interrogatory No. 6 and Document Request No. 12. However, defendants have not shown any other bar to discovery of these claims, and evidence establishing a "particularized need" may be present in the documents ordered compelled in this memorandum.  Therefore, plaintiff will be granted conditional leave to file a renewed motion to compel defendants' fulfillment of Interrogatory No. 6 and Document Request No. 12.  For evidence that claims from outside the East Region are "particularly cogent" to plaintiff's case, the renewed motion to compel may rely on the privilege log documents compelled herein or on the unredacted portions of the three complaints that UNICCO must produce.  Finally, because the temporal scope of plaintiff's request is valid, defendants must submit responses to Interrogatory No. 6 and Document Request No. 12 as to the East Region from January 1, 2004 to January 9, 2009 if they have not already done so.

## IV. **CONCLUSION**

For the foregoing reasons, plaintiff's Motion to Compel [43] will be GRANTED in part, and DENIED in part, and plaintiff will be granted conditional leave to file a renewed motion to compel.

A separate order shall issue this date.

**Date**

January 28, 2010.

_____/s/_____
ROYCE C. LAMBERTH
Chief Judge
United States District Court