**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BLANCA ZELAYA | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-02311 (RCL) |
| | ) | |
| UNICCO SERVICE COMPANY, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on defendant UNICCO Service Company's ("UNICCO") and defendant Carlos Alarcon's "Motion [51] for Partial Summary Judgment". Upon full consideration of the motion, the opposition and reply thereto, the applicable law, and the entire record herein, the Court finds, for the reasons set forth below, that defendants' motion for partial summary judgment will be DENIED in part and GRANTED in part.

## I.     BACKGROUND

Plaintiff Blanca Zelaya worked for defendant UNICCO as a custodian providing cleaning services at 1200 K Street in Washington, D.C., starting in 2004. (Compl. ¶ 9.) Plaintiff alleges that from January 2005 until November 2006, UNICCO discriminated and retaliated against her based on her gender, and defendant Carlos Alarcon sexually harassed her, creating a hostile work environment. (Compl. ¶¶ 15-60.)

With respect to the actions of individual defendants, plaintiff alleges that her problems at UNICCO began shortly after January 4, 2005, when UNICCO promoted Alarcon to the position of Building Operations Manager at 1200 K Street. (Compl. ¶ 13.)

As Manager, Alarcon supervised plaintiff. (Compl. ¶ 13.) According to plaintiff, almost immediately after becoming supervisor, defendant Alarcon began making offensive and unwelcome sexual comments and sexual advances toward her while she was pregnant. (Compl. ¶ 15.)

Plaintiff alleges that from January 2005 and continuing until April 2006, Alarcon subjected plaintiff to an extensive campaign of explicit comments, sexual propositions, unwanted touching, harassment, and other retaliatory job-related conduct after she refused his advances. (Compl. ¶¶ 15-60.) Plaintiff further alleges that Alarcon facilitated the revocation of her health insurance benefits and enlisted the support of other individuals on his behalf. Specifically, Alarcon first involved Oscar Argueta to "monitor" plaintiff, and to seek a reason to fire her in early 2005. (Compl. ¶¶ 21-23.) She subsequently took extended leave from her job, beginning of May 18, 2005, and gave birth to her child. (Compl. ¶¶ 21-23.)

Thereafter, beginning at some point after August 2005 when plaintiff returned to work following the birth of her son, Alarcon allegedly enlisted Carlos Fernandes to monitor plaintiff. He allegedly issued inaccurate disciplinary notices, eliminated her break, and attempted to drive her to a meeting with a human resources officer about her complaints of harassment. (Compl. ¶¶ 34, 35, 45, 56.)

Plaintiff filed a discrimination complaint with the District of Columbia Office of Human Rights ("DCOHR") on April 18, 2006, listing UNICCO as the respondent and attaching her signed declaration. The first paragraph reads as follows:

> I, Blanca Zelaya, this 14th day of April, 2006, am submitting this declaration in support of my *claims against the UNICCO Services Company* ("UNICCO") for sexual harassment, creation of a hostile work environment, and

> retaliation in violation of Title VII of the Civil Rights Act
> of 1964, as amended by the Civil Rights Act of 1991, 42
> U.S.C. § 2000e et seq., *and against UNICCO and Carlos
> Alarcon, Operations Manager*, for sexual harassment, sex
> discrimination, and unlawful retaliation in violation of the
> District of Columbia Human Rights Act ("DCHRA"), D.C.
> Code §§ 1-2501 et seq. (emphasis added).

(DCOHR Compl. Form; Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. A [13-2].) The

DCOHR complaint was cross-filed with the Equal Employment Opportunity Commission

("EEOC"). (Compl. ¶ 74.) The charge of discrimination generated during this process

was sent via certified mail to UNICCO on April 28, 2006, lists UNICCO as the employer

that discriminated against the plaintiff, and under the section allowing for description of

the particulars of the charge, only generically refers to a singular "Respondent's Building

Operations Manager (Male)." (DCOHR Charge of Discrimination; Defs.' Reply to Pl.'s

Opp'n to Defs.' Mot. to Dismiss, Ex. 1 [14-2].)

    In addition, plaintiff alleges that UNICCO retaliated against her in July 2006 by

denying her time off to attend a mediation of her claims by DCOHR. (Compl. ¶

58.) On November 9, 2006, UNICCO assigned plaintiff to a position at another building.

(Compl. ¶ 63.) Plaintiff alleges that UNICCO's retaliation culminated in her termination

by transferring her to another building, where she claims UNICCO knew it would soon

lose the maintenance contract. (Compl. ¶¶ 63-64.) On April 23, 2007, UNICCO lost the

contract on the building, and plaintiff was no longer employed by UNICCO as of that

date. (Compl. ¶ 66.)

    A new company, Cavalier, took over responsibility for cleaning the building and

offered plaintiff a position, which she turned down. (Compl. ¶¶ 66, 69.) However,

plaintiff alleges Cavalier constructively discharged her by offering her a work schedule

preventing her from taking care of her son, even though other positions were available. (Compl. ¶¶ 68-69.) Plaintiff alleges that defendants UNICCO and Alarcon made false and defamatory statements about the plaintiff, which caused Cavalier to offer her the untenable work schedule. (Compl. ¶¶ 68-69.) Plaintiff states that Cavalier should have offered her a different position because she had more seniority than the two other employees at the work site who held daytime positions like her.[1] (Compl. ¶ 68.)

Plaintiff withdrew the complaint she previously filed with DCOHR on November 14, 2007 and requested a Right to Sue Notice from the EEOC, which the EEOC issued on December 5, 2007. (Compl. ¶ 74.) On December 21, 2007, plaintiff filed the complaint in this matter. The complaint consisted of five counts as follows: (1) Title VII discrimination against defendant UNICCO; (2) DCHRA discrimination against defendant UNICCO and its individual employees, defendants Alarcon, Argueta, and Fernandes; (3) Title VII and DCHRA retaliation against defendant UNICCO; (4) DCHRA aiding and abetting of defendant UNICCO's retaliation by defendants Alarcon, Argueta, and Fernandes; and (5) intentional interference with prospective contractual relations against defendant UNICCO. The Court dismissed count (5) against defendant UNICCO and all counts against defendants Argueta and Fernandes, and denied defendant Alarcon's Motion to Dismiss. Defendants' motion for partial summary judgment targets counts (3) and (4).

## II.    STANDARD OF LEGAL ANALYSIS

---

[1] This allegation appears to be a reference to the rights plaintiff may have enjoyed pursuant to the Collective Bargaining Agreement applicable to her as between the Service Employees International Union Local 82 and commercial office building cleaning contractors such as Cavalier and UNICCO. (*See* Defs'. Mot. for Partial Summ. J., Ex. C [51-6].)

Defendants request the Court to grant summary judgment on plaintiff's retaliation complaint. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "In assessing whether a genuine issue exists, we 'view the evidence in the light most favorable to the nonmoving party.'" *Porter v. Shah*, 2010 U.S. App. LEXIS 11033 at *7 (quoting *Miller v. Hersman*, 594 F.3d 8, 10 (D.C. Cir. 2010)). A genuine dispute of material fact concerning the lapse in plaintiff's health benefits does not exist; thus, summary judgment on this issue is appropriate.[2]

Retaliation claims are governed by a three-step test established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973). A movant must display that 1) she was part of a protected class; 2) suffered a materially adverse action, and; 3) the adverse action is causally connected to the plaintiff's status within the protected class. *Id.* A materially adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 57 (2006) (other internal quotation omitted), or one resulting in "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Examples of adverse employment actions include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

---

[2] Plaintiff's claim arises from her retaliation claim, not her initial sexual discrimination claim, as defendant asserts. Summary judgment should be granted regardless of whether defendant's motion falls under the auspices of plaintiff's sexual discrimination or retaliation claim.

significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

"If the plaintiff [satisfies the *McDonnell Douglas* test], then the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its action." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)). "If the employer does so, then the court 'need not – and *should not* – decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*." *Id.* (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original)). "The court should proceed to the question of retaliation *vel non*." *Id.* "The court can resolve that question in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of her case." *Id.*

## III.  TIMELINESS OF PLAINTIFF'S CLAIM FOR RETALIATORY DENIAL OF BENEFITS

Plaintiff brings a retaliation claim against defendant for revoking her health insurance benefits. Defendants submit that plaintiff's retaliation claim for lapses of health insurance benefits is time-barred. The Court finds that plaintiff's retaliation claim for benefits lapses exceeds the statute of limitations in Title VII entirely, and exceeds the DCHRA statute of limitations in part.

### A. Plaintiff's Retaliation Claim Concerning Lapses of Insurance Benefits is Time-Barred under Title VII

Defendant contends that plaintiff's retaliation claim concerning lapses of insurance benefits exceeds the 300 day statute of limitations under Title VII of the 1964 Civil Rights Act. 42 U.S.C. § 2000e-5 (2006). When considering the timeliness of a

retaliation claim under Title VII, the charge must be filed with the *EEOC* within 300 days "'after' the unlawful practice 'occurred.'" *AMTRAK v. Morgan*, 536 U.S. 101, 109-10 (2002) (emphasis added). "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" *Id.* at 110.

Plaintiff discovered the first lapse in March 2005 and the second lapse on or about May 27, 2005, indicating that the acts "happened" no later than May 27, 2005. (Zelaya Dep. [64-3] 81:13-17.) Plaintiff's claim, filed on April 18, 2006, must concern alleged retaliatory acts no more than 300 days prior, establishing June 23, 2005 as the critical date.[3] (DCOHR Charge of Discrimination; Defs.' Mot. for Partial Summ. J., Ex. GG [51-35].) Neither discovery falls within the limitations period.

Plaintiff fails to present evidence demonstrating a concrete injury after May 27, 2005, which would permit this Court to hear her claim. *Bazemore v. Friday*, 478 U.S. 385, 395 (1986) (holding that "each week's paycheck that delivered less to a black than to a similarly situated white is a wrong actionable under Title VII" that would extend the limitations period). Accordingly, plaintiff's Title VII claim for retaliatory denial of benefits is time-barred.

Entertaining plaintiff's claim would require the Court to consider defendant's ongoing withholding of plaintiff's benefits until restoration in August 2005. (Defs.' Statement of Material Facts Not in Genuine Dispute ¶ 54.) Defendant compensated plaintiff for erroneously withholding plaintiff's benefits in August 2005, within the

---

[3] Plaintiff dated her discrimination charge April 27, 2006, and defendant submits that establishes the date on which plaintiff filed her claim with the DCOHR. The charge, however, was notarized on April 18, 2006. The Court establishes the critical date based on the date upon which the charge was notarized, *i.e.*, April 18, 2006. Plaintiff's claim, nonetheless, would be time-barred under Title VII and partially time-barred under the DCHRA regardless of whether the Court found April 27, 2006 or April 18, 2006 to be the filing date.

statutory timeframe, but the law does not classify compensation for withheld benefits as a retaliatory act.[4] Such incorporation would condone the continuing violation doctrine, which the *Morgan* Court specifically eschewed.[5] Acts which are not independently discriminatory cannot be used to "pull in the time-barred discriminatory act." *Morgan*, 536 U.S. at 113 (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate, actionable 'unlawful employment practice.'" *Id.* at 114. Plaintiff demonstrates that the last allegedly "retaliatory adverse employment decision" regarding benefits lapses occurred on or about May 27, 2005. Thus, plaintiff had 300 days from the discovery of the second lapse to bring her claim. Plaintiff's retaliation complaint, as it pertains to the two temporary lapses in benefits, is time-barred under Title VII.

### B. Plaintiff's Complaint with the District of Columbia Office of Human Rights is Partially Time-Barred

The statute of limitations for claims before the District of Columbia Office of Human Rights ("DCOHR") is one year. D.C. Code § 2-1403.16. Plaintiff filed her claim with the DCOHR on April 18, 2006, establishing April 18, 2005 as the critical date under the DCHRA. (DCOHR Charge of Discrimination; Defs.' Mot. for Partial Summ. J., Ex. GG [51-35].) The initial lapse, which plaintiff discovered in March 2005, is time-barred;

---

[4] *See, e.g.,* 42 U.S.C. § 2000e-2(a) (classifying "…discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…" as unlawful discrete, discriminatory acts).

[5] The Court rejected an assertion that "the language [of 42 U.S.C. § 2000e] requires the filing of a charge within the specified number of days after an 'unlawful employment *practice*.' 'Practice,' Morgan contend[ed], connotes an ongoing violation that can endure or recur over a period of time…In Morgan's view, the term 'practice' therefore provides a statutory basis for the Ninth Circuit's continuing violation doctrine. This argument is unavailing, however, given that 42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as 'unlawful employment practices' and includes among such practices numerous discrete acts." 536 U.S. at 110-11.

however, the second lapse is timely because it was discovered on or about May 27, 2005, within the limitations period.  (Zelaya Dep. [64-3] 81:13-17; Fawehinmi Aff. [64-1] at 2.)

Plaintiff's DCOHR complaint reads, in relevant part, "I gave birth on May 25, 2005 and took two months unpaid leave and paid for much of my medical expenses out-of-pocket because [plaintiff] did not restore my health coverage until August of 2005." (DCOHR Charge of Discrimination; Defs.' Mot. for Partial Summ. J., Ex. GG [51-35].) Plaintiff definitively articulated that her grievance occurred not only in March 2005, but also on or about May 25, 2005.  The aforementioned standards set forth in *Bazemore* and *Morgan* that each retaliatory adverse employment decision constitutes a separate, actionable 'unlawful employment practice'" therefore refute defendants' timeliness claim.  Plaintiff's claim that defendants retaliated against her by withholding benefits on or about May 27, 2005, is not time-barred under the DCHRA.

## IV.   RETALIATORY DENIAL OF BENEFITS

The Court considers only plaintiff's retaliation claim for a lapse in benefits pursuant to the DCHRA because plaintiff's Title VII claim is time-barred.  "The Title VII *prima facie* case analysis established in *McDonnell Douglas v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), has been held to apply to such suits under the District's Human Rights Act."  *Howard Univ. v. Green*, 652 A.2d 41, 45 n.4 (D.C. 1994).  *McDonnell Douglas* and its progeny within our Circuit establish a series of factors to consider when determining whether to grant summary judgment.

Plaintiff claims "it is unlawful for an employer 'to discriminate against any of [its] employees . . . because [she] has made a charge . . . or participated in any manner

in an investigation' of discrimination." *Solis*, 571 F.3d at 1320 (D.C. Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)).

Denial of benefits, as defendant readily admits, adversely impacts protected parties under the DCHRA. (Defs'. Mot. for Partial Summ. J. at 11 (citing *Ellerth*, 524 U.S. at 761).) Plaintiff was denied her health benefits on or about May 27, 2005 because defendant "dropped the ball," according to defendant's union benefits administrator and defendant's employee, Barbara Guldan, and therefore suffered an adverse employment action. (Fawehinmi Aff. [64-1] at 2; Email from Barbara Guldan, UNICCO employee, to James Canavan, UNICCO employee (10/28/2005, 08:47:00 EST), Ex. 8 [64-1].)

The Court, upon finding an adverse employment action, must then resolve whether defendants assert a "legitimate, nondiscriminatory or nonretaliatory reason for each [allegedly retaliatory act],'" *Shah*, 2010 U.S. App. LEXIS 11033 at n.2 (quoting *Brady*, 520 F.2d at 494-95) and "whether a reasonable jury could infer retaliation based on all of the evidence, including 'not only the *prima facie* case but also the evidence the plaintiff offers to attack the employer's proffer for its action and other evidence of retaliation.'" *Id.* at *6 (citing *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010)); *See also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (holding that the question of retaliation should be reduced to whether a reasonable jury could find the defendants' "proffered explanation . . . unworthy of credence").

Defendants offer a nondiscriminatory reason for the challenged action, positing that a "clerical error" caused plaintiff to lose her health benefits on or about May 27, 2005. (Fawehinmi Aff. [64-1] at 2.) Neither party disputes that defendant restored plaintiff's benefits on or about August 1, 2005, and compensated plaintiff for the

expenses she incurred.  (Defs.' Facts ¶ 54.)  Plaintiff's medical bills demonstrate that her insurance carrier reimbursed her for the lapse.  (Dr. Thompson Billing R., Ex. HH [51-36]; Sibley Hospital Billing R., Ex. II [51-37].)  Plaintiff cites an internal UNICCO email admitting that it "dropped the ball" regarding plaintiff's health insurance.  However, a clerical error and "drop[ping] the ball" fail to establish animus and the Court proceeds to the question of retaliation *vel non*.  *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

When the defendant offers a legitimate reason for engaging in the allegedly retaliatory act, the "'central inquiry' for the court is 'whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.'"  *Shah*, 2010 U.S. App. LEXIS 11033  at *12-13 (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226-27 (D.C. Cir. 2008).

Two UNICCO agents submitted two separate leave forms on plaintiff's behalf to the UNICCO human resources office.  Oscar Argueta, an agent of UNICCO, submitted a second maternity leave form on plaintiff's behalf with a leave code differing from the original leave form submitted by UNICCO agent Maria Delgado.  (Separation/Leave Form, Exs. 5 & 6 [64-1].)  Argueta unquestionably coded plaintiff's leave form improperly.  (Lyons Dep. [64-3] 94:14-20.)  Argueta's submitted form, however, is dated June 10, 2005, two weeks after plaintiff delivered her child and claims she was denied benefits.  (Separation/Leave Form, Ex. 6 [64-1].)  Plaintiff's basis for claiming that a second retaliatory revocation of benefits occurred rests on Argueta's miscoded form,

asserting that it is a "reasonable inference . . . that Mr. Argueta deliberately miscoded the leave form, which led to the second lapse in [plaintiff's] health benefits." (Mem. of P. & A. in Opp'n to Defs.' Mot. for Partial Summ. J. at 9.) Plaintiff thus fails to present a genuine issue as to the legitimacy of the lapse: Argueta's miscoding on June 10, 2005 could not have caused a lapse in benefits to occur on or about May 27, 2005. No reasonable jury could find that Argueta's submission on June 10, 2005 resulted in a lapse two weeks prior.

Furthermore, plaintiff fails to "produce[] sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff . . ." beyond her assumption that Argueta's miscoded form caused the lapse. *Shah*, 2010 U.S. App. LEXIS 11033 at *12-13 (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226-27 (D.C. Cir. 2008). "'[S]peculations . . . are insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment.'" *Id.* at *18 (quoting *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

Lastly, while defendant UNICCO admits it "dropped the ball" regarding plaintiff's benefits lapse, no evidence of a discriminatory or retaliatory purpose exists, and hospital records reveal that plaintiff was reimbursed for her expenses. (Email from Barbara Guldan, UNICCO employee, to James Canavan, UNICCO employee (10/28/2005, 08:47:00 EST), Ex. 8 [64-1]; Dr. Thompson Billing R., Ex. HH [51-36]; Sibley Hospital Billing R., Ex. II [51-37].) The Court therefore grants defendants' motion for partial summary judgment concerning plaintiff's claim for retaliatory lapses of health insurance benefits.

# V.    **PLAINTIFF'S RETALIATION CLAIM**

Defendants seek summary judgment on several points of plaintiff's retaliation claim. Defendants claim that a change in plaintiff's schedule, an attempt to give plaintiff a ride to a meeting, denial of a day off to attend a DCOHR meeting, assigning a colleague to monitor plaintiff, transferring plaintiff to another locale, and plaintiff's ultimate job loss do not constitute retaliation. For the reasons stated below, the Court partially grants and partially denies defendants' motion.

> A. *Plaintiff's Schedule Change, Defendants' Agent's Request to Drive Plaintiff to a Meeting, Amaya's Presence, and Defendant's Initial Refusal to Permit Plaintiff's Leave Request are not Materially Adverse*

Plaintiff's claims that defendants retaliated against her by removing her fifteen minute break, threatening her employment through a request to attend a meeting, and assigning an employee to monitor her do not satisfy the requisite material adversity to survive summary judgment. Such "minor 'inconveniences and alteration[s] of job responsibilities [do] not rise to the level of adverse action' necessary to support a claim." *Solis*, 571 F.3d at 1321 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002)). "Petty slights and minor annoyances," such as these, are not actionable. *Burlington N.*, 548 U.S. at 68.

## 1.  **Plaintiff's schedule change is not materially adverse**

Plaintiff contends that revocation of her fifteen minute break demonstrates retaliation. Assuming that plaintiff's allegations bear truth, as the Court must do at this stage of the proceedings, defendants retaliated against plaintiff by removing a fifteen minute break. However, revocation of a fifteen minute break is not materially adverse to plaintiff. A materially adverse action is one that "could well dissuade a reasonable

worker from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 57, or one resulting in "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131.

Defendants' revocation of plaintiff's break does not rise to the level of "objectively tangible harm," nor did it significantly impact plaintiff's potential for a promotion or compensation. Defendants maintained a one hour lunch break for plaintiff and simply required plaintiff to engage in the job for which she was hired. Revocation of a break exemplifies a minor inconvenience or petty slight, and defendants were required to provide only a thirty minute break for employees working over six hour shifts under the collective bargaining agreement with the Service Employees International Union. (Defs'. Mot. for Partial Summ. J., Ex. C [51-6] at Art. 3, § 4.) The Court thus considers whether revoking a fifteen minute break could dissuade a reasonable worker from making or supporting a charge of discrimination.

Assuming, as plaintiff asserts, that plaintiff and her colleague Ramon Gaitan were the only day porters to lose their break privilege among UNICCO service employees in Washington, D.C., revocation of a break nonetheless would not dissuade a reasonable employee from making a claim. Plaintiff provides no legal justification demonstrating that revocation of a privilege constitutes materially adverse retaliation. Furthermore, plaintiff incurred neither financial detriment nor loss of potential advancement. Lastly, defendants allotted fifteen minutes more than required by the collective bargaining agreement for plaintiff's break. *Id.* Plaintiff's claim does not satisfy the requisite material adversity.

### 2. Defendants' agent's request for plaintiff to accompany him to a meeting is not materially adverse

Plaintiff claims that defendants' agent retaliated against her by threatening her employment with UNICCO and rudely demanding that she accompany him to a meeting with defendants. This Circuit, however, "[has] been unwilling to find adverse actions where the [threatened action] is not actually served." *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (2008). In *Baloch*, the Court of Appeals held that proposed suspensions that defendants never imposed on an employee were not materially adverse. *Id.* Similarly, defendants' agent's threat did not result in UNICCO's termination of plaintiff. A "reasonable worker in [plaintiff's] position would not have taken [defendant's] brief, fleeting, and unadorned verbal statement as an act or threat of retaliation." *Gaujacq*, 601 F.3d at 578. Plaintiff ultimately lost her employment subsequent to defendants' ability to terminate her. Plaintiff's assertion that defendants retaliated against her by sending an agent to escort her to a meeting fails to reach material adversity.

### 3. Defendants' monitoring of plaintiff is not materially adverse

Plaintiff contends that defendants retaliated against her by transferring Ramon Gaitan, one of her colleagues, and assigning UNICCO employee Ruben Amaya to monitor her. She claims that Amaya reported her to their superiors for delivering ice cream to an acquaintance in the building and consequently faced an investigation. For a performance evaluation or investigation to be materially adverse, it must dissuade a reasonable employee from bringing or supporting a claim of discrimination or affect the employee's "position, grade level, salary, or promotion opportunities." *Baloch*, 550 F.3d at 1199. "Petty slights and minor annoyances," such as a temporary monitor, would not

"deter reasonable employee[s] from making a charge of discrimination." *Solis*, 571 F.3d at 1321.

Plaintiff does not produce sufficient evidence that she suffered tangible job consequences resulting from the monitoring that would prevent a reasonable employee from bringing or supporting a discrimination claim. Furthermore, this case does not concern alleged retaliation against Mr. Gaitan and any harm inflicted upon him is non-adjudicable presently. Plaintiff herself demonstrates that no repercussions resulted from the investigation, admitting that her supervisors expressly stated that "if she wants to give [her acquaintance] ice cream, I don't really care" and that such action would not have violated company policy. (Machak Dep. [64-3] 36:6-38:11; Fernandes Dep. [64-3] 183:2-22.) Plaintiff's claim that defendants retaliated against her by assigning a colleague to monitor is not a materially adverse action.

### 4. Defendants' initial denial of plaintiff's leave request is not materially adverse

Defendants' initial denial of plaintiff's leave request and subsequent approval to attend her DCOHR mediation hearing is not an adverse action because defendants failed to refuse plaintiff's request and did not jeopardize plaintiff's "position, grade level, salary, or promotion opportunities" by threatening to refuse her request. *Baloch*, 550 F.3d at 1199. Such an action ostensibly should not deter a reasonable employee from filing a discrimination claim because, ultimately, defendants permitted plaintiff the requested leave without endangering compensatory or advancement potential. To reiterate, a petty slight or annoyance does not rise to the level of an adverse action. *Solis*, 571, F.3d at 1321.

### B. *Plaintiff Raises a Genuine Issue of Material Fact Concerning Her Transfer from 1200 K Street to 2550 M Street*

Plaintiff alleges that defendants retaliated against her by transferring her to another building under contract with UNICCO. As previously established, plaintiff must establish a *prima facie* case of retaliation by demonstrating that 1) she was part of a protected class; 2) suffered a materially adverse action, and; 3) the adverse action is causally connected to the plaintiff's status within the protected class. *See, e.g., McDonnell Douglas*, 411 U.S. at 802. A materially adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57. Transferring defendant from 1200 K Street to 2550 M Street required plaintiff to sacrifice her seniority, adversely affecting her employment with UNICCO.

### 1. **Plaintiff's transfer was materially adverse**

Defendants transferred plaintiff from 1200 K Street to 2550 M Street in November 2006. Such a reassignment, through which plaintiff sacrificed neither compensation nor benefits, constitutes a lateral transfer. *See Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003). Defendants err in assuming that lateral transfers cannot reach material adversity simply because plaintiff was required to move less than two miles to another building without loss of pay or benefits. *Id.* When employers laterally transfer employees, our Circuit has held that "withdrawing an employee's supervisory duties constitutes an adverse employment action," *id.*, as does "reassignment with significantly different responsibilities." *Forkkio*, 306 F.3d at 1131. Plaintiff's transfer reaches this echelon of material adversity because it could persuade a reasonable employee from bringing or supporting a claim of discrimination.

Plaintiff contends that the transfer was an adverse action because she lost the relationships she fostered with the tenants at 1200 K Street as well as her seniority as a UNICCO employee. The Court first assesses whether losing plaintiff's relationship with the tenants at 1200 K adversely impacted her. The record clearly indicates an array of views concerning plaintiff's work ethic and preferences for her presence as a building employee among the tenants, demonstrating that loss of each of these relationships simply could not adversely impact plaintiff. (*See, e.g.,* Alarcon Dep. 141: 6-14 [64-3]; Cheek Dep. 11:7-12:16 [64-3].) The Court agrees with defendants' interpretation of *Brown v. Brody* that subjective dissatisfaction with working conditions, without more, does not create "materially adverse consequences affecting the terms, conditions, or privileges" of employment that would dissuade a reasonable employee from bringing a claim. *Brown*, 199 F.3d at 457. Additionally, the collective bargaining agreement governs which employees lose assignments when downsizes occur, not the subjective preferences of tenants. (Defs'. Mot. for Partial Summ. J., Ex. C [51-6] at Art. 7, § 1.) Zelaya's lost relationships with the tenants at 1200 K Street, while subjectively detrimental, do not adversely impact her employment.

The Court agrees, however, that loss of seniority resulting from a transfer is a materially adverse action. The collective bargaining agreement reads, in relevant part, "Seniority, by classification, shall be the sole factor in determining the employees' layoff and recall order." (*Id.*) The SEIU and various service employers determine seniority based upon length of service with the employer or service in a building, whichever is longer. Loss of the benefits attached to accrued seniority could dissuade a reasonable employee from bringing a discrimination claim because the employee risks employment

itself whenever faced with a transfer and subsequent downsize.  Losing seniority is

tantamount to a significant forfeiture of an employment benefit, which the Supreme

Court classified as an adverse action.  *Ellerth*, 524 U.S. at 761.  Plaintiff's transfer is

materially adverse.

### 2. Plaintiff's transfer and complaint are causally connected

Defendants contend that plaintiff's discrimination complaint and her transfer to

2550 M Street were not causally connected.  The third facet of the *McDonnell Douglas*

test requires a movant to demonstrate a causal relationship between the retaliatory act and

a protected activity.  411 U.S. at 802.   Defendants claim that the transfer's temporal

proximity to plaintiff's complaint of six months demonstrates a lack of causality, citing

various cases within our Circuit holding that a two or three month gap between an alleged

retaliatory action and a complaint disproves causation.  (Defs.' Mot. for Partial Summ. J.

[51-1] at 21-22.)  Plaintiff's transfer, however, directly resulted from the alleged

retaliatory actions of defendant Alarcon, and ". . . an adverse action following closely on

the heels of a protected activity may in appropriate cases support an inference of

retaliation even when occurring years after the initial filing of charges."  *Jones v.

Bernanke*, 557 F.3d 670, 681 (2009).

Plaintiff alleges that defendant Alarcon issued two false disciplinary notices in

retaliation for her discrimination complaint.  For such a notice to be materially adverse, it

must affect the employee's "position, grade level, salary, or promotion opportunities."

*Baloch*, 550 F.3d at 1199.  Based upon plaintiff's proffer, a jury could reasonably infer

that Alarcon's notices affected plaintiff's position and benefits.  Robert Fuller, the

property manager at 1200 K Street, approved plaintiff's transfer to 2550 M Street because

of unsatisfactory performance reviews he received from UNICCO supervisors. (Fuller Dep. [64-3] 155:9-156:19.) Defendants provide evidence of one isolated incident in which a building tenant complained of plaintiff's performance, which the tenant subsequently retracted. (Cheek Dep. [64-3] 11:7-12:16.) Furthermore, Fuller states that a UNICCO employee suggested the transfer and that he would not have consented to a transfer solely because of the tenant's initial complaint. (Fuller Dep. [64-3] 155:9-156:19.) This raises a reasonable inference that the transfer, motivated by Fuller's professional opinion of plaintiff as formed by UNICCO supervisors, was causally connected to plaintiff's complaint. A dispute of material fact thus exists, and summary judgment concerning defendants' alleged retaliatory notices and transfer is denied.

### 3. Defendants have not offered a legitimate, nonretaliatory reason for transferring plaintiff

Defendants argue that Fuller's issuance of the transfer request legitimizes the transfer as nonretaliatory. If the defendant asserts a "legitimate, nondiscriminatory or nonretaliatory reason for each [allegedly retaliatory act], whether plaintiff 'actually made out a *prima facie* case is . . . irrelevant.'" *Shah*, 2010 U.S. App. LEXIS 11033 at n.2 (quoting *Brady*, 520 F.2d at 494-95). A question of fact exists, however, as to whether UNICCO or Alarcon falsified disciplinary notices and facilitated the reassignment. Fuller claims that a UNICCO employee suggested the transfer and that he ultimately authorized removing plaintiff from 1200 K Street because of professional insufficiencies. (Fuller Dep. [64-3] 111:11-112:21.) A jury may reasonably infer that discipline notices contributed to Fuller's decision, and whether the evaluations were purposely falsified remains a question of fact. Defendants have not offered a legitimate reason for the

transfer; therefore, consideration of whether a reasonable jury could find defendants' actions retaliatory *vel non* falls to the trier of fact.

### C. Plaintiff's Termination may be Causally Connected to Her Complaint

Plaintiff establishes a *prima facie* case against defendants for her job loss because her termination is materially adverse and causally connected to her complaint. Plaintiff's termination at 2550 M Street resulted from the tenant's choice to downsize staff after UNICCO no longer held contract rights with the building. (Cavalier Dep. [51-27] 40:12-20.) Plaintiff posits that she was treated differently than her colleagues because UNICCO offered them the choice of remaining at 2550 M Street as Cavalier employees or moving to another building to remain with UNICCO. (Saravia Dep. [64-3] 25:15-26:11; Zelaya Dep. [64-3] 125:14-126:11, 130:9-22.) Plaintiff claims defendants strayed from industry norm by not providing her the option to remain with Cavalier or transfer to a UNICCO building, and that she would have preferred to remain with UNICCO. (Zelaya Dep. [64-3] 125:17-22; 126:17-21.) A reasonable trier of fact could find that plaintiff's transfer and consequent termination are the result of plaintiff's complaint; therefore, summary judgment concerning plaintiff's retaliation claim for employment loss is denied.

Defendants provide ample evidence that they exerted a good faith effort to procure the contract rights to 2550 M Street. (*See* UNNICO Bid Proposal [51-24]; Defs.' Facts No. 41.) They fulfill their obligation to assert legitimate, nonretaliatory reasons for losing the contract. *Baloch*, 550 F.3d at 1200. Plaintiff's job loss nonetheless follows from defendants' alleged retaliatory transfer, despite defendants' lack of involvement in Cavalier's initial employment offer and ultimate determination not to employ plaintiff. The Court therefore considers plaintiff's retaliation claim *vel non* and finds that a genuine

dispute of material fact exists; thus, the question of whether defendants retaliated against plaintiff by transferring her to another building and her ultimate job loss is left to the jury.

**VI.**    **<u>CONCLUSION</u>**

Upon full consideration of the parties' filing, applicable law, and the record herein, this Court concludes that defendant UNICCO's and defendant Alarcon's Motion for Partial Summary Judgment on Counts 3 and 4 of the Complaint [4] is GRANTED in part and DENIED in part.  A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on August 20, 2010.